**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| **DERRICK A. MILBOURNE, on Behalf of Himself and All Others Similarly Situated,** | |
| Plaintiff, | CIVIL ACTION NO. 3:12-CV-861 |
| vs. | |
| **JRK RESIDENTIAL AMERICA, LLC.** | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK
OF SUBJECT MATTER JURISDICTION**

## I.   OVERVIEW

The court should deny Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction because its Rule 68 offer of judgment fails to offer complete relief to the named plaintiff or to the class.  On November 30, 2012, Derrick Milbourne filed his Class Action Complaint based upon JRK Residential America, LLC's (JRK's) systemic violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* (Doc. 1.)  More specifically, the Complaint alleges routine and pattern violations arising from JRK's use of consumer background reports to make employment decisions.  And for each violation, the Complaint seeks *only* statutory and punitive damages based upon JRK's reckless misconduct.  Compl. ¶¶ 47, 52.  The FCRA also permits Mr. Milbourne to recover his reasonable attorney fees and costs.  *See* 15 U.S.C. § 1681n; Compl. ¶¶ 48, 53.

By letter dated September 10, 2013, emblazoned with "For Settlement Purposes Only," JRK served its Rule 68 offer of judgment containing the following terms: JRK to pay $12,000.00

to Mr. Milbourne, individually, exclusive of prejudgment interest, reasonable attorneys fees, and costs. (Doc. 14-1.) The offer of judgment further states, "the above-referenced amounts, together with any amount the Court may award in prejudgment interest and attorney fees and costs" represents the Defendant's total liability in this action. The offer of judgment provides no relief to the class, and is merely an attempt to limit JRK's exposure to the pending class claims. JRK has moved to dismiss the complaint arguing that the offer of judgment mooted Mr. Milbourne's claim and divested the Court of subject-matter jurisdiction. District courts and the Fourth Circuit have rejected this tactic. Moreover, JRK's underlying legal theories mischaracterize the nature of relief permitted under the FCRA and misinterpret the Supreme Court's recent decision in *Genesis Healthcare Corp. v. Symczyk*, ___ U.S. _____133 S.Ct. 1523 (2013). Indeed, punitive damages under the FCRA are **uncapped**, and the Supreme Court **did not** endorse JRK's use of Rule 68 as a death knell to Rule 23 class claims.

## II.  LAW AND ARGUMENT

### A.  The FCRA is a consumer-oriented statute.

There are few, if any, consumer interests protected by the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq*, that are as important and substantively meaningful as a consumer's right to participate in the use and evaluation of his personal background and public records history for employment. *Dalton v. Capital Assoc. Indus., Inc.,* 257 F.3d 409 (4th Cir. 2001). In addition to requiring employers like JRK to obtain written consent from applicants before obtaining consumer reports for employment purposes, the FCRA imposes additional and more rigorous requirements when using such reports to decline or terminate employment. *See* 15 U.S.C. §1681b(b)(3)(A) (requiring a prospective employer to provide the applicant with a copy of the consumer report it intends to consider before it takes any adverse action *and* a

detailed summary of rights under the FCRA).

As the Fourth Circuit has explained:

> Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S.Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id*. at 36570 (statement of Rep. Sullivan); *see also Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir.1995); *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir.1989); *Hovater v. Equifax, Inc*., 823 F.2d 413, 416-17 (11th Cir.1987). Employers were placing increasing reliance on consumer reporting agencies to obtain information on the backgrounds of prospective employees. Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment. As Representative Sullivan remarked, "with the trend toward ... the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970).

*Dalton,* 257 F.3d at 414.

Against this backdrop, the Third Circuit emphasized the remedial nature of the FCRA:

> Congress also hoped to address a number of related problems, including "the inability at times of the consumer to know he is being damaged by an adverse credit report," the lack of "access to the information in [his] file," the "difficulty in correcting inaccurate information," and "getting [his] version of a legitimate dispute recorded in ... [his] credit file." *Id.* at 3 (1969). "These consumer oriented objectives support a liberal construction of the FCRA," and any interpretation of this remedial statute must reflect those objectives. *Guimond* [*v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995)].

*Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010).

### B. JRK's offer of judgment does not provide full relief to Mr. Milbourne.

According to JRK, it can "reliably determine the maximum overall value of [Mr. Milbourne's] claims" and "JRK formulated its Offer to ensure that that if offered Mr. Milbourne

relief in excess of what he could potentially recover if he ultimately succeeded in proving his claims." (Mem. in Support of Def.'s Motion to Dismiss at 6)(Def.'s Mem.)(Doc. 14.) But JRK's contention is rooted in overly ambitious and incorrect readings of the Supreme Court's holdings in *BMW of N. Am. v. Gore*, 517 U.S. 559 (1996) and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). First, JRK has misinterpreted the decision in *Gore v. BMW* as one that establishes a ceiling of a 5:1 ratio for an award of punitive damages in relation to statutory damages, indeed a ratio in excess of what Mr. Milbourne could lawfully win at trial. (Def.'s Mem. at 4, n.2). Neither *Gore* nor *State Farm* support the proposition that punitive damages are limited to five times compensatory damages, let alone that punitive damages can ***never*** be more than five times greater than compensatory damages. Yet, JRK presumptively concludes that any jury verdict awarding punitive damages greater than five times an award for statutory damages would be automatically subject to remittitur merely because the FCRA limits statutory damages to $1,000.00 per class member.

The Fourth Circuit has rejected just such a "ratio" analysis for small statutory damage FCRA cases. *Saunders v. Branch Banking & Trust, Co.*, 526 F.3d 142, 153-55 (4th Cir. 2008) (affirming an $80,000.00 punitive damage award upon $1,000.00 statutory damages awarded). The Fourth Circuit noted, "[t]he Supreme Court has long recognized that greater ratios [than 10 to 1] may comport with due process, however, when reprehensible conduct results "in only a small amount of economic damages." *Saunders*, at 154 (citing *State Farm*, 538 U.S. at 425); s*ee also Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987) (affirming punitive damage award under FCRA even with zero actual or statutory damages, holding "The award of punitive damages in the absence of any actual damages, in an

4

appropriate case, comports with the underlying deterrent purpose of the FCRA"); *accord Smith v. Res-Care, Inc.*, Civ. Action No. 3:13CV5211, at 9-10, n. 7 (S.D.W.Va. Aug. 28, 2013).

Other circuit courts across the United States have also rejected JRK's approach. In fact, courts almost unanimously permit punitive damages to be awarded in any amount reasonably necessary to punish and deter when (like here) nominal compensatory or statutory damages may be available or awarded. *See, e.g., Lee v. Edwards,* 101 F.3d 805, 811 (2d Cir. 1996) (holding "[b]ecause the compensatory award here was nominal, *any* appreciable exemplary award would produce a ratio that would appear excessive by this measure." (emphasis in original)). Less than six months after the Supreme Court's decision in *State Farm*, the Seventh Circuit affirmed a punitive damage award of $186,000.00 where compensatory damages were only $5,000.00. *See Mathias v. Accor Economy Lodging, Inc.,* 347 F.3d 672 (7th Cir. 2003). Similarly, the Eleventh Circuit affirmed a verdict post-*State Farm* awarding punitive damages of $250,000 where compensatory damages were only $115.05. *Kemp v. Am. Tel. & Tel. Co.,* 393 F.3d 1354,1363-65 (11th Cir. 2004); *see also United Phosphorus, Ltd v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1230 (11th Cir. 2000) ("[T]he 10:1 ratio is not a sacred line in the sand, across which no punitive award may venture without feeling the wrath of an appellate court's constitutional sword."); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1338-39 (11th Cir. 1999) (award of $4.35 million in punitive damages upheld despite 100:1 ratio of punitive to actual damages because "compensatory damages are quite small and a bigger award [was] needed to attract the attention of a large corporation"). Prompted by similar concerns, the Fifth Circuit also suggested that a ratio analysis may be wholly irrelevant where only "nominal" damages (*e.g.*, of $100) are concerned. *See Williams v. Kaufman County*, 352 F.3d 994, 1016 (5th Cir. 2003) ("[W]e agree with the district court that any punitive damages-to-compensatory damages 'ratio analysis'

cannot be applied effectively in cases where only nominal damages have been awarded[.]").

Ignoring binding authority from the Fourth Circuit, JRK instead argues that the Fourth Circuit has yet to address how best to dispose of a case like this one. (Def.'s Mem. at 2, n.1). Relying on the Seventh Circuit's decision in *Rand v. Monsanto Co.*, 926 926 F.2d 596, 598 (7th Cir. 1991), the Defendant urges the court to determine that the offer of judgment provided Mr. Milbourne all the relief he is entitled to, rendering his claims moot, and entitling JRK to judgment in its favor. (Def.'s Mem. at 2, n.1). The Fourth Circuit has expressly held that the *Rand* decision is limited by the facts in that case where the offer of judgment was exactly the damages claimed by the Plaintiff in her answers to interrogatories. *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365 (4th Cir. 2012).

In the alternative, Defendant states that "it does not oppose entry of judgment in Plaintiff's favor based on its Rule 68 offer of judgment." (Def.'s Mem. at 2, n.1)(*citing O'Brien v. Ed Donnelly Enters., Inc.,* 5757 F.3d 567, 574-75 (6th Cir. 2009)). The rationale initially espoused by JRK has since been rejected by the Sixth Circuit. *See Hrivnak v. NCO Portfolio Mgmt.*, --- F.3d ----, 2013 U.S. App. LEXIS 11687, 2013 WL 2476733, *3 (6th Cir. 2013) ("An offer limited to the relief the *defendant* believes is appropriate does not suffice.") The *Hrivnak* court pointed out the discrepancy between the plaintiff's claim for relief and the substance of the defendant's offer of judgment:

> In this case, the defendants did not offer to satisfy *all* of Hrivnak's individual demands. They offered to satisfy just those demands *they* believed were legitimate under state law and the FDCPA. Hrivnak asked for more than $25,000, reasonable attorney's fees and injunctive and declaratory relief. Yet the defendants offered him $7,000 plus costs and attorney's fees. That was it. Reasonable though the defendants' offer may have been (and may still prove to be), the disparity between what they offered and what the plaintiff sought generally will preclude a finding of mootness. Just so here.

*Id.; accord Schlaud v. Snyder,* 717 F.3d 451, 458 n.3 (6th Cir. 2013).

Here, the relief sought by the Plaintiff in the Class Complaint seeks more than money damages, it also seeks: (1) a determination that the action may proceed as a class action under rule 23(b)(1), (2) and (3), (2) designation of the Plaintiff as the class representative and designation of the Plaintiff's counsel as class counsel; (3) issuance of a proper notice to the class at JRK's expense; (4) a declaration that JRK committed multiple, separate violations of the FCRA; (5) a declaration that JRK acted willfully in deliberate or reckless disregard of Plaintiff's rights and obligations under the FCRA; (6) statutory and punitive damages for all class claims, (7) attorney fees, expenses and costs, and (8) granting other and further relief in law or equity as the court may deem appropriate. Compl. ¶¶ A – E. But JRK's offer of judgment provides only $12,000.00 to Mr. Milbourne as well as actual attorneys' fees and costs to be determined by the court. Indeed, JRK offered Mr. Milbourne only what it believed he *should* recover, not what the law *permits* him to recover.

In *Warren v. Sessoms & Rogers, P.A,* the Fourth Circuit held that a plaintiff's non-specific demand for actual damages could not be mooted by an offer of judgment offering $250.00 in actual damages, or an amount determined by the court. 676 F.3d 365, 370. The conditional nature of the offer, standing alone, was sufficient to overcome the defendant's mootness argument; but even so, the court noted that under the Fair Debt Collection Practices Act, actual damages are uncapped. *Id.* at 371 ("The Act, however, places no similar statutory cap on a plaintiff's actual damages, *see id.* § 1692k(a)(1), and Warren sought an unspecified award of actual damages in her amended complaint.") Like the uncapped actual damages under the FDCPA in the *Warren* case, in this case punitive damages are uncapped under the FCRA. Indeed, Mr. Milbourne's unspecified demand for punitive damages cannot be satisfied by JRK's

offer of judgment for what it misinterprets the law to be a cap of five times the available statutory damages. *Id.* ("[A]t this stage of the proceedings, before any evidentiary hearing or judicial fact finding in the district court, we simply cannot hold that Warren could not possibly recover more than $250 if her case proceeded to a jury trial. *See Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.,* 242 F. Supp. 2d 273, 277–78 (S.D. N.Y. 2002) (explaining that, even though defendants offered plaintiff full statutory damages, attorney's fees, costs, and additional $500 to settle FDCPA claim, the court could not, on the basis of a Rule 12(b)(1) motion, determine the existence or amount of actual damages.)").

### C. Defendant's interpretation of Rule 68 is inconsistent with the supervisory requirements of Rule 23(a).

Rule 23(a) allows "members of a class [to] sue or be sued as representative parties on behalf of all members." This rule serves important efficiency and law enforcement functions. "The policy at the very core of the class-action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights[.]" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation omitted). Rule 23 allows for the aggregation of small claims, *id.*, deters wrongdoing through the vindication of legal rights, *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980), and further "efficiency and economy of litigation," *Am. Pipe & Constr.Co. v. Utah*, 414 U.S. 538, 554 (1974). Parties may dismiss or compromise certified class-actions only with court approval. Fed. R. Civ. P. 23(e).

Rule 68(a) provides that "if a timely pretrial offer of settlement is not accepted and the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." *Marek v. Chesny*, 473 U.S. 1, 5 (1985)

(internal quotation marks omitted).  The purpose of Rule 68 "is to encourage settlement and avoid litigation."  *Id.*

      Rules 23 and 68, like all Federal Rules, should be read in harmony.  *Mey v. Monitronics Inter., Inc.*, Civ. No. 5:11CV90, 2012 WL 983766, at *3 (N.D.W.Va. Mar. 22, 2012)(finding that, based on *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (1985), it would be disharmonious under the Rules for a defendant to attempt to "pick off" individual plaintiffs at an early stage by mooting their claims with offers of judgment because it would both disrupt the aggregating role of Rule 23 as well as Rule 68's purpose of avoiding protracted litigation. Therefore, the defendant's pre-certification offer of judgment did not moot the putative class representative's claims so long as there was no undue delay in the filing of a motion for class certification); *see also Castro v. United States*, 310 F.3d 900, 902 (6th Cir. 2002).

      While the incentives created by Rule 68 work effectively to promote a reasonable settlement in an individual action because the potential benefits and costs of further litigation fall on the individual plaintiff, their "application is strained when an offer of judgment is made to a class representative." *Weiss v. Regal Collections*, 385 F.3d 337, 344 (3d Cir. 2004).  Where, as in this case, the settlement offer is intended only to compensate the named plaintiff, the named plaintiff has nothing to gain from further litigation, but is at risk for the imposition of all costs related to litigation on behalf of the class. *Wolff v. Royal Am. Mgt., Inc.*, Civ. No. 12-15981 (11th Cir. 2013)(unpublished)(relying on *Simmons v. United Mortg. & Loan Inv.*, LLC 634 F.3d 754, 766 (4th Cir. 2011) in refusing to apply *Genesis Healthcare* where the offer of judgment did not provide full relief to the plaintiff).   For putative class members, however, the settlement offer has no value.  This places a named plaintiff—who has a "responsibility . . . to represent the collective interests of the putative class," *Roper*, 445 U.S. at 331—in an impossible position,

forced "to weigh her own interests in avoiding personal liability for costs under Rule 68 against the potential recovery of the class." *Zeigenfuse*, 239 F.R.D. at 402 (citing with approval *Janikowski v. Lynch Ford, Inc.*, No. 98-811, 1999 WL 608714 (N.D. Ill., Aug. 5, 1999)).

To avoid these conflicts, the vast majority of courts reject attempts to subvert a pending class action with a Rule 68 offer of judgment, particularly where the offer only addresses the representative plaintiff's claims. For example, the Third Circuit in *Weiss v. Regal Collections*, held that:

> As sound as is Rule 68 when applied to individual plaintiffs, its application is strained when an offer of judgment is made to a class representative.
>
> ***
>
> Allowing defendants to "pick off" putative lead plaintiffs contravenes one of the primary purposes of class action – the aggregation of numerous similar (especially small) claims in a single action. Moreover, a rule allowing plaintiffs to be "picked off" at an early stage in a putative class action may waste judicial resources by stimulating successive suits brought by others claiming aggrievement. This result is contrary to the purpose of Fed. R. Civ. P. 68 as well. *See* 13 Moore's Federal Practice § 68.02[2], at 68-7 (3d ed. 2004) ("The primary purpose of Rule 68 is to promote settlements and avoid protracted litigation.")

385 F.3d at 344-45. This sentiment has been echoed by courts throughout the country, particularly where the offer of judgment offers no relief to the class. *See Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) ("picking off" tactic is "precluded by the fact that before the class is certified … an offer to one is not an offer of the entire relief sought by the suit.");  *see also Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525, 1539 (8th Cir. 1996) (denying a defendant's offer of judgment protects the class representative's responsibilities to the putative class members from being terminated by defendants attempts to pay off the representative's claims); *see also Roper v. Consurve, Inc.*, 578 F.2d 1106, 1110 (5th Cir. 1978) (the "notion that a defendant may short-circuit a class action by paying off the class

representatives … deserves short shrift.").

Following the lead of many circuit courts, district courts have reached the same conclusion. *See Jenkins v. General Collection Co.*, 2007 U.S. Dist. LEXIS 84285 at *8 (D. Neb. 2007) ("Since [defendant's] offer of judgment addressed only [plaintiff's] individual claims, and the offer did not address the class demands, the threat of costs associated with silence in the face of the offer serves no useful purpose at this stage of a potential class action."); *see also Jancik v. Cavalry Portfolio Servs., LLC*, 2007 U.S. Dist. LEXIS 49500 at *11 (D. Minn. 2007) ("allowing defendants to avoid liability merely by winning the race to the courthouse and by proffering settlement offers that have the effect of denying all putative plaintiffs' claims … would be bad policy and would effectively eviscerate the effectiveness of class actions in cases such as this one.); *see also Martin v. Mabus*, 734 F. Supp. 1216, 1222 (S.D. Miss. 1990) ("procedures prescribed by Rule 68 for making an offer of judgment are literally inapplicable because Rule 23(e) requires that court approval be obtained in order for a case to be dismissed or compromised"); *see also Gay v. Waiters' and Dairy Lunchmen's Union*, 86 F.R.D. 500 (N.D. Cal. 1980) (holding Rule 68 inapplicable to class actions).

In *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384 (S.D. Ohio 2008)[1], the court addressed the very issue presented here. There, two plaintiffs filed separate class action complaints against the same defendants. *Id.* at 384. Later in the litigation, the defendants served Rule 68 offers of judgment offering to settle the plaintiffs' claims *on an individual basis*. *Id.* at 385. The court granted the plaintiffs' motion to strike the offer of judgment, finding "[the defendants'] efforts to moot [the] Plaintiffs' claims [to be] unavailing" and stated that "defendants ought not to be able to put class actions to an end by merely tendering *Rule 68* offers

---

[1] The court's decision in *Stewart* was followed in *Hrivnak v. NCO Portfolio Mgmt.*, 2010 U.S. Dist. LEXIS 135426 (N.D. Ohio), *Mabary v. Hometown Bank, N.A.*, 276 F.R.D. 196 (S.D. Tex. 2011), and *Johnson v. U.S. Bank Nat'l Ass'n*, 276 F.R.D. 330 (D. Minn. 2011).

of judgment before the putative class representatives have filed their certification motions." *Id.* at 386.

### D. *Genesis Healthcare* has no applicability here.

JRK relies on the Supreme Court's recent decision in *Genesis Healthcare Corp. v. Symczyk*, ___ U.S. _____133 S.Ct. 1523 (2013). With a broad brush, JRK gives the impression that *Genesis* stands for the proposition that (1) an unaccepted offer of judgment that fully satisfies a plaintiff's claim renders the claim moot; (2) when a plaintiff's claim is rendered moot, the court lacks subject matter jurisdiction; and (3) that because the Plaintiff has not moved for class certification, nor has there been a determination that a class be certified, there is no exception to the mootness doctrine. (Def.'s Mem. at 6). But the Supreme Court never addressed whether the defendant's offer of judgment fully satisfied the plaintiff's individual claim; the plaintiff had failed to challenge mootness on appeal. *Genesis*, at 1524. Specifically, the Court held:

> While the Courts of Appeals disagree whether an unaccepted *Rule 68* offer that fully satisfies a plaintiff's individual claim is sufficient to render that claim moot, ***respondent conceded the issue below and did not properly raise it here***. Thus, this Court ***assumes, without deciding***, that petitioners' offer mooted her individual claim.

*Id.* (emphasis added).

Mr. Milbourne has certainly not conceded mootness here, a critical distinction overlooked by JRK. Worse, JRK mistakenly argues that "JRK's Offer provides Mr. Milbourne with compensation that is equal to or greater than the potential relief he could obtain at trial . . . [a]s a result, Mr. Milbourne lacks a legally cognizable personal stake in the outcome of this case and there is no case or controversy before this court." (Def.'s Mem. at 7). *Genesis* provides no such instruction, and takes care to prevent such misinterpretation by referencing in the syllabus

the plaintiff's failure to raise mootness on appeal.  *Id*.

If this lone distinction does not sufficiently undermine JRK's  argument, the Supreme Court also noted the clear differences between the plaintiff's FLSA collective action, and traditional class actions under Rule 23.  *See Genesis*, 133 S.Ct. at 1524 ("After respondent's individual claim became moot, the suit became moot because she had no personal interest in representing others in the action. To avoid that outcome, respondent relies on cases that arose in the context of Rule 23 class actions, but they are inapposite, both because Rule 23 actions are fundamentally different from FLSA collective actions and because the cases are inapplicable to the facts here.")

At best, *Genesis's* applicability is limited to mootness determinations in collective actions, which are wholly-separate proceedings governed by a statutory framework unlike Rule 23.  Indeed, the Court carefully distinguished its prior decisions protecting Rule 23 class action plaintiffs from defendants' use of Rule 68 as a "pick off" tool.  *Genesis*, 133 S.Ct. at 1525.

JRK's misinterpretation of *Genesis* is especially problematic when there are well-reasoned decisions in recent district court cases within the Fourth Circuit such as *White v. Ally Financial, Inc.*, 2013 U.S. Dist. LEXIS 5667 (S.D. W.Va. Jan. 15, 2013) and *Smith v. Res-Care, Inc.*, Civ. Action No. 3:13CV5211, at 9-10.  In *White*, the Court reasoned that:

> an offer of judgment under Federal Rule of Civil Procedure 68 that affords a named plaintiff in a putative class action complete relief and is made prior to a motion for class certification does not moot the putative class action, as long as the motion for class certification is ultimately timely filed.

*Id*. at *3.

In so holding, Judge Goodwin noted that:

> [t]he United States Supreme Court has held that a named plaintiff has an interest in obtaining a final decision on class certification, separate and distinct from his or her interest in obtaining a final decision on the merits, and sufficient for a

13

federal court to maintain jurisdiction over the case. If such an interest exists, then it must exist at the time the named plaintiff files his or her class action complaint.

*Id*.

In reaching this conclusion, the Court addressed the circuit split on the issue of Rule 68 offers of judgment in context of class actions.  *Id*. at *16-21.  Although he disagreed with some of the courts of appeals' rationales, Judge Goodwin held "that a defendant's complete offer of judgment to a named plaintiff in a putative class action prior to a motion for class certification does not moot the putative class action, as long as the motion for class certification is ultimately filed without undue delay."  *Id*. at *21.  Again, *Genesis* never reached the question whether a Rule 68 offer of judgment that affords complete relief to a plaintiff moots the claim.  *See Genesis*, 133 S.Ct. at *1524. In *Smith v. Res-Care, Inc.,* the court explained that Genesis does not disrupt the Fourt Circuit's decision in *Warren* that if a plaintiff seeks uncapped and unspecified damages, an unaccepted offer of judgment cannot be said to provide full relief.  *Smith*, Civ. No. 3:13cv5211, at 8 (S.D.W.Va. Aug. 28, 2013)

As long as a class certification motion is properly filed, JRK's offer of judgment cannot moot class claims. *See White*, 2013 U.S. Dist. LEXIS 5667 at *3. There has been no Rule 26(f) or 16(b) conference yet, there is no scheduling order, there has been no discovery and the court has yet to establish a class certification motion deadline, it is axiomatic that a premature offer of judgment has no bearing on the mootness of his case.

### III.   CONCLUSION

The court should deny the Defendant's motion to dismiss and find that its offer of judgment under Fed. R. Civ. P. 68 not only fails to offer complete relief to the named Plaintiff in this case, but also that a Rule 68 offer of judgment cannot moot a class action filed pursuant to Fed. R. Civ. P. 23.

Respectfully Submitted,
Derrick A. Milbourne, on behalf of himself and on behalf
of others similarly situated,


_____/s/_____
Susan M. Rotkis, VSB 40693
Leonard A. Bennett, VSB 37523
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, VA 23601
Tel:    757-930-3660
Fax:    757-930-3662
srotkis@clalegal.com
lenbennett@clalegal.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2013, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:


_____/s/_____
Susan M. Rotkis, VSB 40693
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    757-930-3660
Fax:    757-930-3662
srotkis@clalegal.com