IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DERRICK A. MILBOURNE, on behalf of Himself and All Others Similarly Situated

Plaintiff,

v.

JRK RESIDENTIAL AMERICA, LLC,

Defendant

Civil Action No. 3:12-cv-00861

**OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

David G. Barger, Esq.
Virginia State Bar Number 21652
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Telephone: (703)749-1307
Facsimile: (703) 714-8307
Email: bargerd@gtlaw.com

Michael R. Sklaire
Virginia State Bar Number 74354
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Telephone: (703) 749-1308
Facsimile: (703) 714-8308
Email: sklairem@gtlaw.com

Shon Morgan (Admitted *Pro Hac Vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: shonmorgan@quinnemanuel.com

Counsel for JRK Residential America, LLC

**Preliminary Statement**

Plaintiff Derrick A. Milbourne seeks to represent two nationwide classes of individuals who applied to work at JRK Residential America, LLC and authorized background checks. Mr. Milbourne's claims are brought under the Fair Credit Reporting Act and fall into two categories—(1) JRK's alleged failure to provide its "disclosure or authorization form" as a "stand-alone" document, and (2) alleged failures to provide adequate notice of adverse actions. Despite uncontroverted evidence demonstrating JRK's efforts to comply with the labyrinthine requirements of the FCRA, plaintiff has alleged "willful" statutory violations in an attempt to achieve aggregated statutory damages where no actual injuries have occurred.

Mr. Milbourne's motion for class certification suffers three fatal defects. First, Mr. Milbourne cannot satisfy the adequacy requirement of Rule 23(a)—his long criminal history, including a conviction only a few months before this action and being held in contempt of court, reflects his inability to vigorously represent the best interests of the classes or to properly exercise his duties to the absent class members. Second, whether the FCRA's two-year or five-year limitations period applies will depend on individual inquiries into if and when a proposed class member discovered the alleged violation. Third, where a plaintiff seeks statutory remedies that are wholly disproportionate to any harm suffered by the putative class—here, no harm at all—the claims do not satisfy the superiority requirements of Rule 23(b)(3), and class certification should be denied.

**Background**

**Purpose of the FCRA.** The FCRA was enacted with the sole express purpose of requiring "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and

proper utilization of such information. . . ." 15 U.S.C. § 1681(b). Accordingly, Congress implemented procedures that govern the procurement and use of "consumer reports."[1]

**Procuring Consumer Reports.** Section 1681b(b)(2) requires a person procuring a consumer report for employment purposes to make "a clear and conspicuous disclosure . . . in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes," and the consumer must have "authorized in writing . . . the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2). This section permits the disclosure and authorization to appear on the same document, *id.*, and the FTC has also affirmatively stated that some "additional information" can be included in the document, so long as it does not "detract" from its primary purpose. *See* FTC letter dated February 11, 1998 to Karen Coffey ("[S]ome additional information . . . may be included if the information does not confuse the consumer or detract from the mandated disclosure."); *see also* FTC letter dated September 9, 1998 to H. Rowan Leathers ("The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure.")

**Using Consumer Reports.** Section 1681b(b)(3) requires a person "using a consumer report for employment purposes" to provide the consumer "a copy of the report; and a description in writing of the rights of the consumer under this subchapter . . ." before taking an adverse action based in whole or in part on the report. 15 U.S.C. § 1681b(b)(3). The FCRA does not specify the amount of time that must elapse between this notice and the adverse action.

---

[1] "The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . ." 15 U.S.C. § 1681a(d).

**JRK's Procurement and Use of Consumer Reports.** Since 2009, JRK has contracted with U.S. Background Screening to process background checks and adverse action notifications for applicants. *See* Declaration of Mike Moerschbacher ¶ 2 ("Moerschbacher Decl."). U.S. Background Screening has specialized in this business since 1999 and the "majority of [its] staff is comprised of professionals who have devoted their entire careers to Pre-Employment Screening, Human Resources, Public Records Research, and Employment Law."[2] Before implementing its background release form, JRK asked U.S. Background Screening to consult with their "compliance/legal" teams and confirm the legality of the form. Moerschbacher Decl. ¶4, Exh. 1. JRK began using this form only after U.S. Background Screening confirmed it complied with the FCRA. *See id.*

Plaintiff Derrick A. Milbourne applied to work at JRK Residential America in November 2010. When Mr. Milbourne applied, he signed JRK's background check disclosure authorization form. *See* Moerschbacher Decl. ¶ 5, Exh. 2. The form informed Mr. Milbourne that JRK might run a background check as part of his application process, requested his authorization to do so, and explained how he could obtain a copy of the report. *Id.* The form also summarized his other rights under the FCRA. *Id.* JRK then hired Mr. Milbourne on a conditional basis. Because the background check revealed Mr. Milbourne had two misdemeanor convictions, two other misdemeanor charges, and multiple felony charges for assault, battery, and escape, JRK reasonably discontinued Mr. Milbourne's employment, and U.S. Background Screening sent him an adverse action letter. Moerschbacher Decl. ¶ 6, Exh. 3. This letter included a copy of the background check report and a description in writing of his rights under the FCRA. *Id.*

---

[2] http://www.usbscorp.net/about-usbs.php

**Mr. Milbourne's Claims.** Mr. Milbourne now asserts two FCRA claims and seeks to represent two nationwide classes of applicants for jobs at JRK within the five years preceding the Complaint. First, Mr. Milbourne alleges that JRK's simple, two-page background check disclosure and authorization form does not "consist[] solely of the disclosure," in violation of 15 U.S.C. § 1681b(b)(2)(A). Mr. Milbourne also alleges, under 15 U.S.C. § 1681b(b)(3)(A), that JRK failed to provide him with a copy of his background check at least five business days before taking an adverse action.

The "Impermissible Use" putative class would consist of all persons "who applied for an employment position with [JRK] or any of its subsidiaries, . . . as part of this application process were the subject of a consumer report obtained by [JRK] during the five years proceeding [*sic*] the filing of the Complaint, . . . where [JRK] did not advise the consumer in writing, by a standalone document that a consumer report would be obtained for employment purposes and receive the consumer's written consent to same."

The "Adverse Action" class would consist of all such applicants for whom the "consumer report contained a criminal public record or credit item that would disqualify the person from such position under [JRK's] written hiring policies, . . . which consumer was not then approved or hired for the position, . . . and to whom [JRK] did not provide a copy of the consumer report and other disclosures . . . at least five business days before the date the employment decision is first noted in [JRK's] records."

## Legal Standards

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotation and citation omitted). Plaintiff bears the burden to prove all requirements of Rule 23, *see Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001), and

"in case after case," the Fourth Circuit has stressed that "it is *not the defendant* who bears the burden of showing that the proposed class *does not comply* with Rule 23, but that it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) (emphasis in original).

   The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Rule 23(a)(4) states that "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[Cr]iminal records . . . are relevant to the adequacy of a class representative." *Kirkpatrick v. Ironwood Commc'ns, Inc.*, 2006 WL 2381797, at *6 (W.D. Wash. Aug. 16, 2006) (citing Newberg on Class Actions, § 3.36 n. 1–2 (4th ed. 2002)). Although "a criminal record does not automatically disqualify a putative class representative," the record is relevant to the extent it reflects the class representative's ability to represent the proposed class. *See id.*

   In addition to the four Rule 23(a) requirements, "[t]he [plaintiff] must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 133 S. Ct. at 1432. Rule 23(b)(3) "invites a close look at the case before it is accepted as a class action," and establishes two requirements that plaintiff must meet before certifying. *Martin v. Mountain State Univ., Inc.*, 2014 WL 1333251, at *3 (S.D. W. Va. Mar. 31, 2014) (internal quotation and citation omitted). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making a superiority determination, the court must look "from the point of view (1) of the judicial system, (2) of the potential class members, (3) of

the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 760 (3d Cir. 1974).

**Argument**

## I. MR. MILBOURNE IS NOT AN ADEQUATE CLASS REPRESENTATIVE

Mr. Milbourne's extensive criminal history, including an arrest and conviction just a few months before this action, reflects his inability to vigorously represent the best interests of the classes or properly exercise his duties to absent class members. *See Roe v. American Databank*, 3:13-cv-03829-WHA, at *26-27 (N.D. Cal. August 12, 2014) (class certification denied after court determined proposed representative was not adequate due to her lengthy and recent criminal history) (*see* Declaration of Shon Morgan ("Morgan Decl.") ¶ 2, Exh. 1). A public records search on Mr. Milbourne confirms the criminal records reported to JRK and reveals several others. Specifically, Mr. Milbourne has:

- four misdemeanor convictions, including for possession and distribution of controlled drug paraphernalia, reckless driving, obstructing justice, and failure to obey a traffic signal;
- three felony charges, including for assault and battery, escape, and theft/receipt of a stolen firearm;
- four other misdemeanor charges, including two separate charges for marijuana possession and charges for carrying a concealed weapon, failure to yield right-of-way, and driving under suspension;
- five charges for failing to comply with the terms of court orders—including *contempt of court*—and violations of community-based probation program requirements.

Morgan Decl. ¶ 3, Exh. 2. (those charges that were nolle prossed are identified in Exh. 2).

In *Roe v. American Databank*, the Northern District of California recently addressed the adequacy of a proposed class representative for an FCRA suit alleging the same § 1681b(b)(2) claim as Mr. Milbourne, as well as others. *See Roe v. American Databank*, 3:13-cv-03829-WHA, at *11 (N.D. Cal. August 12, 2014) (*see* Morgan Decl. ¶ 2, Exh. 1). Like Mr. Milbourne, the proposed representative in *Roe* had "personal baggage . . . in the form of [a] lengthy and recent criminal history." *Id.* at *26. Among other reasons, the proposed representative in *Roe* was inadequate because "class representatives owe fiduciary duties to absent class members and are responsible for critical litigation decisions on behalf of the class. The class representative selects counsel, responds to discovery, and participates in settlement negotiations, among other duties." *Id.* at *26-27. The court concluded the proposed representative in *Roe* would "be too distracted by her own criminal defense and alcohol-related issues to be able to vigorously represent the best interests of absent class members." *Id.* at *27. As in *Roe*, one of Mr. Milbourne's convictions is very recent, occurring just four months before Mr. Milbourne filed this action. *See id.* The repetitive nature of Mr. Milbourne's criminal history indicates a significant probability that similar problems will arise in the future. Moreover, two of Mr. Milbourne's misdemeanor charges and his most recent conviction were drug-related. Morgan Decl. ¶ 3, Exh. 2. As with Roe's "alcohol-related issues," Mr. Milbourne's drug issues could impair his ability to represent the two proposed classes.

Beyond these issues, Mr. Milbourne's failures to comply with court orders, violations of community-based probation program requirements, and his 2004 contempt of court charge demonstrate his inability to adequately represent the classes. *See id.* Although a class representative will not necessarily be rejected "based solely upon his criminal record," courts in

the Fourth Circuit have recognized the representative's adequacy must also "be assessed in light of their conduct in this *or* previous litigation." *Haywood v. Barnes*, 109 F.R.D. 568, 579 (E.D.N.C. 1986) (emphasis added). "Courts are obligated to carefully scrutinize adequacy of representation in all class actions to ensure the forthrightness and vigor with which the class representative would assert and defend the interests of the class members. " *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 329-30 (D. N.J. 2008). "In determining adequacy of representation, a district court is not confined to specific procedures, and it is proper for the district court to consider all available additional circumstances and facts of a case." *Id.* "The representatives' . . . affirmative personal qualities are relevant to the inquiry." *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 325 (E.D.N.Y. 1982).

Mr. Milbourne's contempt of court charge shows disrespect for the legal process, as do Mr. Milbourne's failures to comply with court orders and his violations of community-based probation program requirements. *See* Morgan Decl. ¶ 3, Exh. 2. In *Green v. Carlson*, the Fifth Circuit affirmed the district court's refusal to grant class certification where the proposed representative had "engaged in a pattern of abuse of the judicial system," holding that this abuse "establishe[d] that he [was] not a person who, under Rule 23, would 'fairly and adequately represent the interest of the class.'" 653 F.2d 1022 (5th Cir. 1981), *cert. denied*, 454 U.S. 944 (1981) (quoting Fed. R. Civ. P. 23). Similarly, here, if Mr. Milbourne cannot adhere to the rules and procedures of the court in criminal actions where his own liberty is at stake, there is no reason to believe he will adequately represent thousands of other individuals unknown to him, where his own financial interest tops at about $1000. *See id.; see also Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985) ("plaintiff's failure to fully comply with reasonable discovery requests . . . indicate that he is not suitable to fulfill the fiduciary obligations of a class

representative."); *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 671 (N.D. Ga. 1975) ("Class action should be denied where it appears that the representative could not serve in a fiduciary capacity because of past misconduct . . ."). Put differently, absent class members would not likely repose any degree of confidence that a jury would or should assess Mr. Milbourne as a proxy for themselves when assessing credibility or the amount of any statutory or punitive damages. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (class representatives must be effective proxies for the absent class members and their claims because it is this "class cohesion that legitimizes representative action in the first place."); *Smith v. Swormstedt*, 57 U.S. 288, 303 (1853) ("In all cases where exceptions to the general rule are allowed, and a few are permitted to sue and defend on behalf of the many, by representation, care must be taken that persons are brought on the record fairly representing the interest or right involved, so that it may be fully and honestly tried.").

## II. INDIVIDUAL INQUIRIES PREDOMINATE WITH PLAINTIFF'S PROPOSED CLASS PERIOD

Mr. Milbourne seeks a class definition that applies a five-year limitations period, citing the FCRA's statute of repose provision. However, § 1681p provides an action must be brought "2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability." 15 U.S.C. § 1681p(1). In *Broccuto v. Experian Info. Solutions*, a FCRA action challenging a consumer reporting agency's failure to respond appropriately to disputed transactions on the consumer's credit report, the court determined the operative limitations triggering event was the date the defendant "fail[ed] to act as the statute mandates" in response to the dispute. *Id.* "Given FCRA's clear wording, a plaintiff must file suit within two years from

the date *that he learns that a credit reporting agency or lender did not act as required by the statute. . . .* " *Id.* (emphasis added).

Based on Mr. Milbourne's allegations, JRK "did not act as required by the statute" when JRK provided each applicant with an allegedly deficient disclosure form before conducting a background check, or when JRK took an adverse action based on the background check without first providing the applicant with the required notice. Here, 368 proposed "Impermissible Use" class members received their allegedly deficient disclosures more than two years before Mr. Milbourne filed the Complaint, and 20 proposed "Adverse Action" class members also fall outside of the two-year window before the Complaint. *See* Moerschbacher Decl. ¶7-8, Exh. 4-5. With regard to these proposed class members, they either (1) knew a FCRA violation occurred when they signed the allegedly deficient forms and/or were informed of an adverse action taken as a result of their background checks, or discovered that a violation had occurred shortly thereafter—triggering the statute of limitations more than two years before the Complaint was filed, or (2) they were not aware of a violation outside of the two-year window or never became aware of a violation. In either case, "it would be difficult to determine exactly when a consumer discovered an FCRA violation," and this would necessarily require individual inquiries into the circumstances of each applicant outside of the two year limitations period. *See Broccuto*, 2008 WL 1969222, at *3 n. 1.

Rule 23(b)(3) states "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The "predominance standard is related to Rule 23(a)(2)'s commonality prerequisite, but it is far more demanding." *Martin*, 2014 WL 1333251, at *3 (citing *Comcast*, 133 S. Ct. at 1432). The issue of whether JRK will have any liability at all with regard to the proposed class members

outside of the two year limitations period will turn entirely on individual inquiries. In *Stand Energy Corp. v. Columbia Gas Transmission Corp.*, the court denied a plaintiff's motion for class certification in part because the record did not "affirmatively reveal that resolution of the statute of limitations defense on its merits [could] be accomplished on a class-wide basis." 2008 WL 3891219, at *20 (S.D. W. Va. Aug. 19, 2008) (quoting *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006) (internal quotation marks omitted)). "This is Plaintiffs' burden to prove as part of their burden to show compliance with Rule 23." *Id.; see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that there are . . . common questions of law or fact, etc."); *Thorn*, 445 F.3d at 321-22 (rejecting plaintiff's argument that defendant "should bear the burden of demonstrating that resolution of [the statute of limitations] defense cannot occur on a class-wide basis.").

In *Stand*, the plaintiffs argued that a disgorgement order "was the first event that put plaintiffs on notice," but the court determined that "defendants cannot be precluded . . . from offering evidence of an earlier trigger," and ultimately concluded , "some plaintiffs may have known within the statutory period while others may not have been alerted until the . . . disgorgement order. . . . These factors require individual inquiry and are not subject to class-wide proof." *Id.* at *20-21. Here, plaintiff has not put forth *any* argument or evidence to support his "burden to show compliance with Rule 23" with regard to the statute of limitations period. *See id.* As in *Stand*, some of the proposed class members here might have learned of a FCRA violation before the two year statutory period "while others may not have been alerted until [later]." *See id.* JRK "cannot be precluded . . . from offering evidence of an earlier trigger." *See id.* Thus, class-defeating individual inquiries predominate with respect to Mr. Milbourne's

assertion of a five-year limitations period. *See id.*; *see also Thorn*, 445 F.3d at 321-22 (affirming district court's denial of class certification in part because defendant's statute of limitations defense required individual inquiries).

## III. ENORMOUS STATUTORY DAMAGES CLAIMS BASED ON TECHNICAL, FORMATTING VIOLATIONS THAT CAUSED NO INJURY DO NOT SATISFY THE SUPERIORITY REQUIREMENTS OF RULE 23(B)(3)

The FCRA contains two separate damages provisions for violations of § 1681b. Section 1681n concerns "willful" violations and allows the consumer to recover "any actual damages sustained by the consumer as a result of the failure *or* damages of not less than $100 and not more than $1,000 . . ." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Section 1681o, on the other hand, concerns "negligent" violations and requires the consumer to prove "actual damages." *Id.* at § 1681o. Here, plaintiff only seeks statutory damages for allegedly "willful" violations and does not allege any actual damages.[3]

**Fourth Circuit Precedent.** Where a plaintiff's remedial theory is based on statutory remedies that are wholly disproportionate to any harm suffered by the putative class—here, no harm at all—certification is frequently denied.[4] Although courts have adopted different views

[3] Nor does plaintiff's certification motion make any attempt to carry his burden under Rule 23 or *Dukes* to establish that certification for actual damages claims would be appropriate. Courts have consistently deemed FCRA background check claims alleging actual damages ill-suited to class treatment because "the issues of liability and individual damages cannot be treated separately and [the determinations of] damages require individual calculation." *Williams v. Telespectrum, Inc.*, 2007 WL 6787411, at *5 (June 1, 2007) (Payne, J.) (citing *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001) ("the need for individualized proof of damages may defeat predominance where proof of damages is essential to liability.")); *see also Dukes*, 131 S. Ct. at 2551 ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23].").

[4] *See, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (class treatment is not superior if "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."); *Wilcox v. Commerce Bank*

whether class actions are the superior vehicle for FCRA actions that seek only statutory damages,[5] the Fourth Circuit has indicated the "district court [may] declare that a device is not superior when a plaintiff class whose members suffered no [actual injury] of any sort still threatens" enormous statutory damages. *See Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 276 (4th Cir. 2010) (Wilkinson, J. concurring). The majority in *Stillmock* did not address this

---

*of Kansas City*, 474 F.2d 336, 341-47 (10th Cir. 1973) (district court did not abuse discretion when it denied class certification for TILA violations case where class members were not harmed and aggregate of statutory damages would be extremely large); *see also Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003) ("the aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions"); *Lester E. Cox Med. Ctr. v. Huntsman*, 408 F.3d 989, 994 (8th Cir. 2005) ("For *de minimis* or technical violations, some courts refuse to award statutory damages."); *Helms v. ConsumerInfo.com, Inc.*, 236 F.R.D. 561, 569-70 (N.D. Ala. 2005) (denying certification because "[t]he damages resulting would be devastating and largely out of proportion with the culpability of Defendant's conduct"); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-51 (N.D. Ill. 2002) (finding class action lacked superiority in part because of due process concerns where statutory damages would be "grossly disproportionate" to any actual damage suffered by plaintiffs); *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (superiority absent where a verdict in favor of the class would result in "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for . . . technical and debatable violation of [a statute]"); *Shields v. First Nat'l Bank of Ariz.*, 56 F.R.D. 442 (D. Ariz. 1972) (same); *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89 (N.D. Cal. 1972) (same). Justice Kennedy's dissent in the *Jerman* case sharply criticizes statutory damages for technical violations in the class action context. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) (citing FCRA and stating "[t]oday's holding [that mistakes of law are not a defense in FDCPA cases] gives new impetus to this already troubling dynamic of allowing certain actors in the system to spin even good-faith, technical violations of federal law into lucrative litigation . . . even where no actual harm has occurred").

[5] *Compare, e.g., Campos v. Choicepoint, Inc .*, 489 (N.D. Ga. 2006) (court determined portion of a proposed class action did not meet the superiority requirement because the statutory damages provision in the FCRA, ranging from $100 to $1,000, combined with the size of the proposed class would make the defendant's potential liability "enormous and completely out of proportion to any harm suffered by the plaintiff.") (quoting *London*, 340 F.3d at 1255 n. 5 (11th Cir. 2003)), *with Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009) ("Although the availability of attorney's fees to litigants is indicative that a class action is by no means the 'only' feasible route for litigants, it remains the superior mechanism here, where there is an inverse relationship between the cost of an individual action relative to the potential recovery, and where meaningful enforcement of the statute through individual consumer litigation is unlikely.").

issue because it was not resolved by the district court. *See Stillmock v. Weis Markets, Inc.*, 2009 WL 595642, at *6 (D. Md. 2009) ("Weis asserts that class certification should be denied on various grounds upon which this Court finds it unnecessary to rely. These include . . . the contention that § 1681n should be held unconstitutional in a class action context."); *see also Stillmock*, 385 F. App'x at 275 ("we express no opinion regarding [Defendant's] additional arguments against class certification which the district court expressly did not address below.").[6]

Before Judge Wilkinson's concurrence in *Stillmock*, this Court addressed a similar argument raised by a FCRA defendant. *See Williams v. LexisNexis Risk Mgmt Inc.*, 2007 WL 2439463, at *9 (E.D. Va. Aug. 23, 2007) (Payne, J.). The Court determined that "the legal premise for [defendant's] argument [was] without merit," relying on Judge Easterbrook's decision in *Murray v. GMAC Mortgage*, 434 F.3d 948 (7th Cir. 2007). In *Murray*, the court viewed denial of class certification as a cap on damages and held that "it is not appropriate to use procedural devices to undermine laws of which a judge disapproves." *Id.* at 954. However, *Murray* overlooked an important principle long recognized by the Fourth Circuit—"[a] district court has broad discretion in deciding whether to certify a class . . . within the framework of Rule 23." *Lienhart v. Dryvlt Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (internal quotation and citation omitted). As many federal courts have recognized—including those that have followed *Murray*—the FCRA does not strip the district court of this discretion: nothing in the FCRA requires nor forbids class adjudication. *See Stillmock*, 385 F. App'x at 276; *see also Chakejian v. Equifax Information Servs.* LLC, 256 F.R.D. 492, 501 (E.D. Pa. 2009) (following *Murray*, but recognizing "the availability of attorney's fees to litigants is indicative that a class action is by no means the 'only' feasible route for litigants"). By determining the district court had used a

---

[6] The case settled before the district court had a chance to address this issue.

"procedural device[] to undermine laws of which a judge disapproves," the *Murray* court ignored that the FCRA does not mandate class treatment for plaintiffs' claims, and denying class certification would not cap the damages available to plaintiffs in individual actions. *See Murray*, 434 F.3d at 954; *see also Stillmock*, 385 F. App'x at 276.

Because the FCRA does not mandate class treatment, the court must examine Rule 23(b)(3)'s requirements "from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant" to determine if a class action is the superior method for adjudication. *See Katz*, 496 F.2d at 760. Rule 23(b)(3) requires that a class action be "superior to other available methods for *fairly* and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

**Defendant's Perspective.** From JRK's perspective, it is clear class treatment is not the best way to fairly adjudicate this matter. Assuming a FCRA violation even occurred, plaintiff has not alleged any actual injury as a result. Nonetheless, plaintiff apparently seeks more than $2 million from JRK in statutory damages, plus punitive damages and attorney's fees and costs. Many courts have found class adjudication an inferior method to address such claims because the possible damage incurred by defendant is grossly disproportionate to the harm suffered by plaintiffs. *See supra*, footnote 4. In *Leysoto v. Mama Mia I., Inc.*, for example, the court held that class treatment was not superior and "to grant the requested class relief would allow [the] Plaintiff, and his counsel, to dangle the Sword of Damocles over Defendant, without any showing of actual economic harm." 255 F.R.D. 693, 699 (S.D. Fl. 2009).[7] Here, although potential damages would not necessarily be annihilative to JRK, they would nonetheless "be

---

[7] The court examined a claim under FACTA, which is a 2003 amendment to the FCRA that shares the same damages provisions.

enormous and completely out of proportion to any harm suffered by the plaintiff." *London*, 340 F.3d at 1255 n. 5. A company faced with such enormous potential liability and mounting legal fees will be strongly influenced to settle for more than a jury might award each class member within the statutory range—a reality evident from the overwhelming number of FCRA class suits settled versus the very few continued to a jury verdict. In the mass tort context, courts have referred to settlements where "class certification creates an insurmountable pressure on defendants to settle" even where the "probability of an adverse judgment is low . . . as judicial blackmail." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746 (5th Cir. 1996); *see also In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995), *cert. denied*, 516 U.S. 867 (1995).

**Present Plaintiff's Perspective.** In contrast, from Mr. Milbourne's perspective, a successful individual action, as opposed to a class, would fully compensate him and his counsel, and there is no issue here of potential future violations. *See Leysoto*, 255 F.R.D. at 699. As in *Leysoto*, JRK has modified its background check procedures, and there is no allegation that they are not FCRA-compliant. *See* Moerschbacher Decl. ¶ 3. Thus, the threat of future violations has been eliminated. *See Leysoto*, 255 F.R.D. at 699. Additionally, plaintiff and his counsel could be fully compensated by the relief received from an individual action.[8] *See id.*

**Plaintiff's Counsel's Perspective.** From the point of view of plaintiff's counsel, an individual suit on behalf of Mr. Milbourne would still provide counsel opportunity to vindicate

[8] In addition to § 1681n's statutory damages provision, § 1681n(a)(3) also allows a successful plaintiff to recover "the costs of the action together with reasonable attorney's fees." Although the *Stillmock* majority concluded there was no basis to believe an individual's ability to recover attorney's fees would result in "enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action," the court did not hold that the plaintiff would not be fully compensated by the damage provisions of § 1681n, nor did the court hold that a class action is always the superior method to resolve such claims. *See Stillmock*, 385 F. App'x at 274-75. This determination was but one factor in the court's superiority determination. Moreover, *Stillmock* is unpublished.

any consumer rights allegedly violated, and, if successful, to recover any attorney's fees and costs from JRK. Thus, no concern exists that plaintiff's counsel would not be compensated for their efforts. *See* 15 U.S.C. § 1681n(a)(3). Although the possibility of a massive contingency payment would no longer be present, this consideration is not relevant to the superiority analysis. *See O'Neill v. City of Philadelphia*, 1992 WL 301261, at *10 (E.D. Pa. 1992) (determining that attorneys for the plaintiff would benefit from denial of class certification because individual action would allow attorneys to determine whether the cause of action was legitimate before expending resources on class management and "the availability of statutory attorney's fees . . . [gave] no reason to doubt the feasibility of plaintiffs continuing their suit."); *see also Perez v. Gov't of Virgin Islands*, 109 F.R.D. 384, 390 (D. V.I. 1986). Thus, plaintiff's counsel will be left in essentially the same position regardless of the decision on certification, in terms of the *relevant* considerations.

**The Public's Perspective.** From the point of view of "the public at large," individual actions are superior to class adjudication. First, as noted, JRK's current procedures are fully compliant with the FCRA, so the threat of future violations has been eliminated. *See* Moerschbacher Decl. ¶ 3. Allowing this type of class action would damage the public because "innocent employees may suffer the catastrophic fallout" of saddling an employer with enormous liability in damages, which would not only decrease the capital available for new hires, but would also impose disproportionately large penalties on employers for minor errors they may make in hiring new employees—in short, this "aggressive use of the class action device is a real jobs killer." *Stillmock*, 385 F. App'x at 276 (Wilkinson, J. concurring).

**Potential Class Members' Perspectives.** Mr. Milbourne's superiority argument looks primarily from the perspective of "the potential class members" and argues (1) "[c]lass members

would never think to bring individual claims because they are unaware their rights have been violated," and (2) the small amount of damages available to an individual plaintiff are not worth pursuing. Mot. at 19-21. The language of § 1681n indicates "that Congress intended statutory damages to be compensatory . . ." *Stillmock*, 385 F. App'x at 277. "Congress provided that a consumer subject to a willful violation of the statute could recover either actual *or* statutory damages, but not both. . . . The fact that statutory damages are available in lieu of actual damages suggests that they too serve to compensate individual consumers for their injuries." *Id.* (citing *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 342 (N.D. Ill. 2002) ("[Section] 1681n(a)(1)(A) clearly and unambiguously allows for actual *or* statutory damages as the measure of *compensatory* damages.")). "Congress also provided for punitive damages in addition to any actual or statutory damages . . . . That Congress did so highlights the fact that statutory damages serve a compensatory, rather than punitive, function . . ." *Id.* The compensatory nature of statutory damages under the FCRA indicates Congress intended these damages to compensate for at least *some* loss. Although some losses may be less tangible, "such as a loss of privacy, heightened risk and anxiety over identity theft, or increased time spent monitoring one's financial security," where a possible class member is completely "unaware their rights have been violated," as plaintiff concedes is the case here, the loss is not just intangible, it is nonexistent. *See id.* To certify a class because it is the best way to include potential members who indisputably suffered no harm and are completely unaware of the alleged violation would extend the FCRA well beyond the compensatory purpose intended by Congress.

Plaintiff's second argument, that damages available to an individual are not worth pursuing, relies on *Murray* and out of circuit cases that have also relied on *Murray*. Mot. at 21 (citing *Murray*, 434 F.3d at 953). In *Stillmock*, the Fourth Circuit addressed this same issue, but

reasoned only that there was no basis to conclude § 1681n(a)(3)'s provision allowing attorney's fees and costs would "result in enforcement of FCRA by individual actions *of a scale comparable to the potential enforcement by way of class action*." *Id.* (emphasis added). This is not contrary to Judge Wilkinson's conclusion that because of § 1681n(a)(3) "[t]hese suits are . . . 'essentially costless' to winning plaintiffs." *Id.* at 282 (quoting *Anderson v. Capital One Bank*, 224 F.R.D. 444, 453 (W.D. Wis. 2004)). Nothing in the court's opinion can fairly be read to mean that individual FCRA actions are not possible nor reasonable to pursue, only that fewer people are likely to pursue them for various reasons—including that many plaintiffs who might be swept into a class action have not been damaged at all. Moreover, this was only one factor in the majority's superiority analysis, and the court expressly declined to consider defendant's disproportionate damages argument because the district court had not addressed it. *See id.* at 274-75. When taking this argument into consideration, the conclusion that individual actions will not result in enforcement on the same scale as a class action weighs *against* certifying the class because such large scale actions are precisely what raise the constitutional issue of disproportionate damages.

Individual actions are, in fact, superior from the point of view "of the potential class members." First, plaintiff filed this action in the Eastern District of Virginia. Although Virginia might be the most convenient forum for him, that will not be the case for other class members. Rule 23(b)(3) sets forth a nonexhaustive list of considerations pertinent to a superiority determination, including "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(D). Of the 63 potential "Adverse Action" class members, only four relate to events in Virginia. *See* Moerschbacher Decl. ¶8, Exh. 5. The 2038 potential "Impermissible Use" class members include only 55 Virginia

applicants.[9] *See id.* at ¶ 7, Exh. 4. Thus, more than 93% of the "Adverse Action" class and more than 97% of the "Impermissible Use" class involve non-Virginia residents. Plaintiff fails to make any effort to demonstrate why these non-residents would prefer the Eastern District of Virginia to their home forums. Indeed, Texas for example has seven times as many "Impermissible Use" class members than Virginia, and almost three times as many "Adverse Action" class members.[10] Texas also has more than twice as many "Impermissible Use" class members than even the next largest state.[11] In *Buford v. H&R Block, Inc.*, the court determined it was "as desirable as [a forum] can be" in part because "there [was] no high concentration of class members in any one forum . . ." 168 F.R.D. 340, 363 (S.D. Ga. 1996), *aff'd sub nom. Jones v. H & R Block Tax Servs.*, 117 F.3d 1433 (11th Cir. 1997). Here, however, that is clearly not the case. Texas has by far the highest concentration of class members.

Additionally, an inherent conflict exists in class actions like this because counsel's fees are determined by the aggregate damages award, not the amount awarded to each class member. *See Strang v. JHM Mortg. Sec. Ltd. P'Ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorney's fees in common fund cases."). Although the possibility of a large class settlement might arguably motivate class counsel to vigorously pursue the highest award possible for all plaintiffs, the reality plays out much differently. Plaintiff's counsel actually has much less motivation to seek a large *per-class member* award where the class is large. This is evident from a review of the settlements reached

[9] JRK disagrees with plaintiff's proposed class definitions, as discussed in Part II.

[10] 405 of the potential "Impermissible Use" class are located in Texas. Eleven members of the potential "Adverse Action" class are located in Texas.

[11] Nebraska has the second most "Impermissible Use" class members with 195.

by Mr. Milbourne's counsel in nearly identical cases. For example, *Pitt v. K-Mart Corp.* and *Shami v. Middle East Broad. Network* involved two class actions filed in the Eastern District of Virginia asserting FCRA claims nearly identical to those here, and Mr. Milbourne's counsel represented both classes. *See* Morgan Decl. ¶ 4, Exh. 3 and ¶ 5, Exh. 4. In both cases, plaintiff's counsel received fees constituting 30% of the total settlement fund. *Id.* However, in *Pitt*, each class member received only \$29.50 or \$50, depending on the timing of their violation, whereas in *Shami*, each class member received \$500. *Id.* Despite the much lower amount awarded each class member in *Pitt*, class counsel received \$900,000 in attorneys' fees, whereas in *Shami* class counsel netted only \$15,150 in fees. *Id.* This was because the *Pitt* class had 64,506 members, making the aggregated settlement pool much larger, whereas the *Shami* class had only 101 members. *Id.* Thus, aggregating potential class members' claims into a single action is not in the best interest of the individual where, as here, there are thousands of potential class members. Of course, potential class members could opt out of the class, but as plaintiff recognizes, most individuals have "little lay knowledge of the complex blanket of FCRA protections," Mot. at 19, and could not say whether a payment of \$29.50 or a payment of \$500 is more appropriate to compensate them where they have suffered no injury. Additionally, any members who opt out would still need to pursue their claims individually.

**Perspective of the Judicial System.** Finally, from the point of view "of the judicial system," while Rule 23 recognizes that a class action may, in fact, be the best way for "efficiently adjudicating the controversy," *see* Fed. R. Civ. P. 23(b)(3), the Rule does not call upon the court to decide only that class adjudication is most efficient, but also that the action can be adjudicated "fairly." *Id.* As discussed, a class action here is not the best vehicle from the perspective of the defendant, the public at large, or the potential class members. And the rights

of the present plaintiff can be protected just as effectively by with an individual suit. Efficiency can also presumably be preserved through individual plaintiffs' use of offensive collateral estoppel. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427 (4th Cir. 2003).

Thus, assessing whether class adjudication is "superior to other available methods for fairly and efficiently adjudicating the controversy" reveals that individual actions, as opposed to class treatment, are superior from the point of view of the defendant, the public at large, and the potential class members, individual actions will leave the present plaintiff and his counsel in essentially the same position, and although the judicial system may benefit from some additional efficiency with class adjudication, this efficiency must be accompanied by fairness for a class action to be superior, and here it is not.

## Conclusion

For the reasons above, JRK respectfully requests that Mr. Milbourne's motion be denied.

DATED:    August 25, 2014                    /s/ David G. Barger

David G. Barger, Esq.
Virginia State Bar Number 21652
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Telephone: (703)749-1307
Facsimile: (703) 714-8307
Email: bargerd@gtlaw.com

Michael R. Sklaire
Virginia State Bar Number 74354
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Telephone: (703) 749-1308
Facsimile: (703) 714-8308
Email: sklairem@gtlaw.com

Shon Morgan (*Pro Hac Vice*)
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Email: shonmorgan@quinnemanuel.com

Counsel for JRK Residential America, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of August, 2014, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to the following:

Leonard Anthony Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com

Casey Shannon Nash
Consumer Litigation Associates PC (Alex)
1800 Diagonal Rd
Suite 600
Alexandria, VA 22314
703-273-7770
Fax: 1-888-892-3512
Email: casey@clalegal.com

Matthew James Erausquin
Consumer Litigation Associates PC (Alex)
1800 Diagonal Rd
Suite 600
Alexandria, VA 22314
703-273-6080
Fax: 888-892-3512
Email: matt@clalegal.com

Susan Mary Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
Fax: (757) 930-3662
Email: srotkis@clalegal.com

Thomas Ray Breeden
Thomas R. Breeden PC
10326 Lomond Drive

Manassas, VA 20109
703-361-9277
Fax: 703-257-2259
Email: trb@tbreedenlaw.com

      /s/

David G. Barger, Esq.
Virginia State Bar Number 21652
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102
Telephone: (703)749-1307
Facsimile: (703) 714-8307
Email: bargerd@gtlaw.com