**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

DERRICK A. MILBOURNE,
on behalf of Himself
and All Others
Similarly Situated,

     Plaintiff,

v.                  Civil Action No.: 3:12cv861

JRK RESIDENTIAL AMERICA, LLC,

     Defendant.

FILED

OCT 3 1 2014

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**MEMORANDUM OPINION**

This matter is before the Court on PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (Docket No. 35). For the reasons set forth below, the motion is granted in part. The Impermissible Use Class and Adverse Action Class are certified pursuant to a class definition that limits the class to those members whose claims arose within the two years before the date on which this action was filed.

**BACKGROUND**

**A.   The Proposed Class and Class Claims**

In PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION (Docket No. 6), Milbourne seeks to certify two

classes.[1]    The   first   class,   which   Milbourne   calls   the

"Impermissible Use Class", is defined as follows:

> All natural persons residing in the United
> States (including all territories and other
> political subdivisions of the United
> States), (a) who applied for an employment
> position with Defendant or any of its
> subsidiaries, (b) as part of this
> application process were the subject of a
> consumer report obtained by Defendant during
> the five years proceeding [sic] the filing
> of the Complaint, (c) where Defendant used a
> form to make its disclosures pursuant to 15
> U.S.C. § 1681b(b)(2) that contained a
> release and/or waiver of the signing
> consumer's claims and/or rights.

Pl.'s Mem. in Sup. of Mtn. for Class Cert., Docket No. 35, at 8-

9.  Count Two of the Class Complaint is asserted on behalf of

this "Impermissible Use Class" and alleges:

- "JRK violated the FCRA by procuring consumer
  reports relating to Plaintiff and other
  Impermissible Use Class members without first
  making proper disclosures and receiving written
  consent in the format required by 15 U.S.C.
  §1681b(b)(2)(A)."
- "The foregoing violations were willful.  JRK
  acted in deliberate or reckless disregard of
  its obligations and the rights of Plaintiffs
  and other Impermissible Use Class members under
  15 U.S.C. §1681b(b)(2)(A)(i)."
- "Plaintiff and Impermissible Use Class are
  entitled to statutory damages of not less than
  $100 and not more than $1,000, and punitive
  damages, for each and every one of these
  violations, pursuant to 15 U.S.C. §1681n."

---

[1] The time span of these classes is limited by an oral motion
made at argument by Milbourne's counsel.  That motion is
discussed below.

- "Plaintiff and the Impermissible Use Class are
  further entitled to recover their costs and
  attorneys' fees, pursuant to 15 U.S.C.
  §1681n(a)(3)."

Class Complaint, Docket No. 1, at ¶¶ 50-53.

The second proposed class, which Milbourne calls the

"Adverse Action Class" is defined as follows:

> All natural persons residing in the United
> States (including all territories and other
> political subdivisions of the United
> States), (a) who applied for an employment
> position with Defendant or any of its
> subsidiaries, (b) as part of this
> application process were the subject of a
> consumer report background check obtained by
> Defendant on or after the date five years
> proceeding [sic] the filing of the
> Complaint, (c) where Defendant's records
> show that the applicant was denied
> employment because of the background check,
> (d) and to whom Defendant did not provide a
> copy of the consumer report and other
> disclosures stated at 15 U.S.C.
> §1681b(b)(3)(A)(ii) at least five business
> days before the date the employment decision
> is first noted in Defendant's records.

Pl.'s Mem. in Sup. of Mtn. for Class Cert., Docket No. 36, at 9.

Count One of the Class Complaint is asserted on behalf of the

"Adverse Action Class" and alleges:

- "JRK used a 'consumer report,' as defined by
  the FCRA, to take adverse employment action
  against Plaintiff and other members of the
  Adverse Action Class."
- "JRK violated the FCRA by failing to provide
  Plaintiff and other Adverse Action Class
  members with a copy of the consumer report that
  was used to take adverse employment action
  against them. See 15 U.S.C. §1681b(b)(3)(A)."

3

- "JRK violated the FCRA by failing to provide Plaintiffs and other Adverse Action Class members with a copy of the consumer report that was used to take adverse employment action against them at least five (5) business days before doing so. See 15 U.S.C. §1681(b)(3)(A)."
- "JRK willfully violated the FCRA, 15 U.S.C. §1681(b)(3)(A)(ii), because it failed to provide Plaintiff and all similarly situated applicants and employees an accurate and current summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on the consumer report."
- "The foregoing violations were willful. JRK acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. §1681b(b)(3)(A)."
- "Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, and punitive damages, pursuant to 15 U.S.C. §1681b."
- "Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §1681n(a)(3)."

Class Complaint, Docket No. 1, at ¶¶42-48.

## B. **JRK's Procurement and Use of Consumer Reports**

JRK is a Delaware limited liability company doing business in Virginia. JRK has a practice of procuring consumer reports for employment purposes and uses those reports in making its hiring decisions. Since 2009, JRK has used the services of U.S. Background Screening to run background checks on those who apply for jobs with JRK. Before JRK implemented its practices, it

4

consulted with U.S. Background Screening's legal and compliance teams with a view to ensuring compliance with the FCRA.   Def.'s Opp. to Pl.'s Mtn. for Class Cert., Docket No. 38, at 4.

Milbourne alleges that, when he applied for a job at JRK in November of 2010, he was asked to, and did, sign a background check disclosure form presented to him by JRK.   That form notified the applicant that JRK might run a background check and requested authorization to do so.   The form also included a liability waiver and release inuring to the benefit of JRK and other related parties.   The form was the "single standard FCRA authorization and disclosure form used by Defendant for the putative class."   Pl's Mem. in Sup. of Mtn. for Class Cert., Docket No. 36, at 6.   Milbourne claims that the form violates The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681b(b)(2)[2], because the disclosure form contained more information than permitted by the statute.   Id. at 3-6.

Milbourne applied, signed the disclosure form at issue, and was hired by JRK on a conditional basis on November 19, 2010.

---

[2] "[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person."

5

JRK received the completed background check results on November 22, 2010 which showed two misdemeanor convictions and several other charges. Because of administrative follow-up and the Thanksgiving holiday, Milbourne's employment was not terminated until December 7, 2010. On December 8, 2010, U.S. Background Screening sent Milbourne an adverse action letter on behalf of JRK. That letter included a copy of the background check report and a description of his FCRA rights. Milbourne alleges that this conduct also violates the FCRA, 15 U.S.C. §1681b(b)(3)(A)[3] which requires that the "employer must provide a copy of the report a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." Beverly v. Wal-Mart Stores, Inc., 2008 U.S. Dist. LEXIS 2266 (E.D. Va. 2008) (internal quotations omitted).

## C.   Class Representative – Derrick A. Milbourne

Derrick A. Milbourne is a Virginia resident who applied for a job with JRK in November 2010. He completed the new hire paperwork, which included the background check form, and was hired on a temporary basis. When his background check was

---

[3] "Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this title, as prescribed by the Bureau under section 609(c)(3)."

returned to JRK, the company terminated him based on its contents. His criminal record is discussed at length later in this opinion.

## CLASS CERTIFICATION DISCUSSION

To obtain class certification, a plaintiff must satisfy the four requirements of Fed. R. Civ. P. 23(a). Additionally, the case must be consistent with at least one of the types of class actions defined in Fed. R. Civ. P. 23(b). Milbourne proposes two different classes for certification; each class must satisfy all of the pertinent requirements.

### A.   Rule 23(a)

Rule 23(a) has four requirements for class certification. They are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998.) The plaintiff bears the burden of proving all requirements of Rule 23. Lienhart v. Dryvit Systs., Inc., 255 F.3d 138, 146 (4th Cir. 2001).

As the Fourth Circuit explained in Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004), district

7

courts are not required "to accept plaintiffs' pleadings when assessing whether a class should be certified." Rather, "the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (quoting Gariety, 368 F.3d at 365). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case," but "[t]he likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper." Id. (internal citations omitted). The Supreme Court of the United States has elaborated on the intersection between class certification and a merits analysis, stating that "frequently the rigorous analysis [required by Rule 23] will entail some overlap with the merits of the plaintiff's underlying claim." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ____, 131 S. Ct. 2541, 2551 (2011). However the Court has also cautioned lower courts that, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut

8

Retirement Plans and Trust Funds, 113 S. Ct. 1184, 1194-95 (2013) (internal citations omitted).

### 1.  Ascertainability of the Proposed Class

Rule 23 states that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(1)(B). This is in addition to the certification requirements listed in Rule 23(a). "The definition of the class is an essential prerequisite to maintaining a class action." Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976); see also Kirkman v. N.C. R. Co., 220 F.R.D. 49, 53 (M. D.N.C. 2004). "The court should not certify a class unless the class description is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" Solo v. Bausch & Lomb Inc., C/A Nos. 2:06-MN-77777-DCN, 2:06-CV-02716-DCN, 2009 WL 4287706, at *4 (D.S.C. Sept. 25, 2009) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1760 (3d ed. 2005)).

In a recent decision, the Fourth Circuit held that "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." EQT Production Co v. Adair, 2014 WL 4070457, at *7 (4th Cir. 2014); see also Wm. Moore et al., 5 Moore's Federal Practice § 23.21[1]

9

(3d ed.) ("A class action is possible only when the class definition provides a court with tangible and practicable standards for determining who is and who is not a member of the class."). "The plaintiffs need not be able to identify every class member at the time of certification. But if class members are impossible to identify without extensive individualized fact-finding or 'mini-trials', then a class action is inappropriate." EQT, 2014 WL 4070457, at *7. Rather, "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." Moore, supra, § 23.21[3][a].

JRK has provided a full list of the potential class members, the dates relevant to their claims, and the documents related to their cases by searching its employment records from the putative class period at issue. Pl.'s Mem. in Sup. of Mtn. for Class Certification, Docket No. 36-5. Thus, both classes are readily ascertainable.

### 2.   Rule 23(a)(1) Numerosity[4]

Rule 23(a)(1) provides that the second of the requirements for a class action is that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No specified number is needed to maintain a class action under Fed. R. Civ. P. 23; [rather], application of the rule is to be considered in light of the particular circumstances of the case . . . ." Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (finding that a class of 18 was sufficient to fulfill the numerosity requirement). "Courts consider a number of factors in considering whether joinder is practicable including the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." Adams v. Henderson, 197 F.R.D. 162, 170 (D. Md. 2000) (internal quotation omitted).

#### a.   The Impermissible Use Class

The list of putative class members whose claims arose within two years of Milbourne's filing, as provided by JRK,

---

[4] Numerosity is evaluated based on the number of potential class members whose claims arose two years or less before the filing of the class complaint. As discussed later in this opinion, Milbourne has moved to amend the class definition and limit the class to a two year, rather than a five year, period. This amended definition decreases the size of each class and the resulting smaller class sizes are discussed here.

contains an exact number of 1670 potential members. Thus, the numerosity requirement is easily satisfied.

>        **b.    The Adverse Action Class**

The list of putative class members whose claims arose within two years of Milbourne's filing, as provided by JRK, contains an exact number of 43 potential members. The list also indicates that class members are not centrally located. For instance, in the year 2013, the potential class members resided in Arizona, Arkansas, Colorado, Florida, Indiana, Nebraska, Ohio, Oklahoma, Tennessee, and Texas. This factor weighs in favor of finding numerosity because the nationwide dispersion makes joinder of all plaintiffs an unwieldy prospect. Additionally, the size of the proposed class, numbering 43, also weighs in favor of finding numerosity. See Cypress v. Newport News Gen's Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (finding that a class of 18 was sufficiently numerous); Newberg on Class Actions §3:11 (6th Ed. 2014) ("[J]oinder is generally deemed practicable in classes with fewer than 20 members and impracticable in classes with more than 40 members.") Thus, the numerosity requirement is satisfied.

### 3.   **Rule 23(a)(2) Commonality**

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2); Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001). The commonality requirement focuses on the claims of the class as a whole, and it "turn[s] on questions of law [or fact] applicable in the same manner to each member of the class." Califano v. Yamasaki, 442 U.S. 682, 701 (1979). To satisfy this requirement, there need be only a single issue common to the class. See Cent. Wesleyan Coll. v. W.R. Grace & Co., 143 F.R.D. 628, 636 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993). In Wal-Mart v. Dukes, the Supreme Court focused on the commonality requirement, stating that:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." This does not mean merely that they have all suffered a violation of the same provision of law.
>
> * * *
>
> [The proposed class members'] claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

131 S. Ct. 2541, 2551 (2011).

13

### a.    The Impermissible Use Class

In order to determine commonality, it is necessary to look at the specific FCRA claim this class asserts. Section 1681b(b)(2) provides that "[A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a <u>clear and conspicuous disclosure has been made</u> in writing to the consumer at any time before the report is procured or caused to be procured, <u>in a  document that consists solely of the disclosure</u>, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person." 15 U.S.C. § 1681b(b)(2) (emphasis added).  JRK has admitted that it has used a standardized waiver and disclosure form for all class members, including Milbourne.  Thus, if Milbourne is able to establish that JRK's waiver did not satisfy Section 1681b(b)(2)'s requirements this issue will be resolved not only in Milbourne's favor, but in the favor of all class members.  Thus, the legality of the forms is of "such a nature that it is capable of classwide resolution" and satisfies the commonality requirement for the Impermissible Use Class. <u>Dukes</u>, 131 S. Ct. at 2551.

The question of willfulness is also a common question. There is no contention that JRK's state of mind as to individual consumers varied in any way. The inquiry hinges on whether JRK's understanding of the particular statutory requirement at issue is "objectively unreasonable," and if so, whether it took a "risk that was so great as to make it highly probable that harm would follow." Safeco Ins. Co. v. Burr, 551 U.S. 47, 69-70 (2007). The behavior of individual plaintiffs' would not bear on this question, and thus JRK's willfulness is "capable of classwide resolution" and also satisfies the commonality requirement. Dukes, 131 S. Ct. at 2551

### b.   The Adverse Action Class

As explained above, in order to determine commonality, it is necessary to look at the specific FCRA claim asserted by this class. 15 U.S.C. §1681b(b)(3)(A) provides that, "...in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this title, as prescribed by the Bureau under section 609(c)(3)." JRK has indicated that its practices were standardized during the class period. Thus, if JRK's actions

15

violated Milbourne's §1681b(b)(3)(A) rights, they also violated other class members' rights as well.   Therefore, the resolution of Milbourne's claim would provide "classwide resolution." Dukes, 131 S. Ct. at 2551.

For the reasons outlined above, the willfulness issue also satisfies the commonality requirement for this class as well.

### 4.   Rule 23(a)(3) Typicality

The Fourth Circuit has described the typicality requirement as follows:

> The typicality requirement goes to the heart of a representative [party's] ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements. The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members. For that essential reason, plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned. But when the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification. In the language of the Rule, therefore, the representative party may proceed to represent the class only if the plaintiff establishes that his claims or defenses are typical of the claims or defenses of the class.

16

Deiter v. Microsoft Corp., 436 F.3d 461, 466-67 (4th Cir. 2006)
(emphasis in original) (internal citations and quotation marks
omitted).   Thus, the appropriate analysis of typicality
"involves[s] a comparison of the plaintiffs' claims or defenses
with those of the absent class members."   Id. at 467.   "To
conduct that analysis, [the district court] begin[s] with a
review of the elements of [the plaintiff's] prima facie case and
the facts on which the plaintiff would necessarily rely to prove
it."   Id.   Then, the district court must determine "the extent
to which those facts would also prove the claims of the absent
class members."   Id.

### a.   The Impermissible Use Class

All members of the proposed class make identical claims
under §1861b(b)(2).   To prove a claim under § 1861(b)(2), as it
is presented here, Milbourne must establish that the disclosure
and waiver form violated the statute; i.e., that the form was
not a document that consisted "solely" of a disclosure because
it contained a release.

Here, JRK admits that it used the same form for the
relevant time frame.   And, it is not disputed that Milbourne and
all class members signed identical forms containing the same
language.   Because there are no factual differences between
claims and the members all raise the same legal issue as

17

Milbourne, there are no factual or legal differences between the class members' claims and Milbourne's claim. Clearly, Milbourne's "interest in prosecuting his own case [would] simultaneously tend to advance the interests of the absent class members." Deiter, 436 F.3d at 466. For the foregoing reasons, the typicality factor is satisfied.

### b. The Adverse Action Class

As stated above, Milbourne's "claim and the claims of class members [do not need to] be perfectly identical or perfectly aligned" in order to satisfy typicality. Deiter, 436 F.3d at 467. Instead, Milbourne's claim must only prove that "his claims or defenses are typical of the claims or defenses of the class." Id. Milbourne satisfies this test. While there are some factual variations between the individual class members' cases (i.e. how many days between adverse action and notification thereof), Milbourne seeks to prove the same claim (non-compliance with §1981b(b)(3)(A)) by using the same offending form as all other class members and will resort to the same source (JRK's personnel records) to do so. In addition, while Milbourne would technically only need to prove that the FCRA requires notice one day before adverse action is taken (as opposed to the five days' notice limitation in the proposed class), his claim is not antagonistic to other class members'

18

claims in this respect.  Rather, Milbourne appears to base his claim on an interpretation on §1681b(b)(3)(A) recently handed down in Reardon v. Closetmaid, 3 U.S. Dist. LEXIS 169821 (W.D. Pa. 2013).  Reardon held that the FCRA was violated when an employer provided an adverse action notification "exactly 4 business days" before the adverse action was taken.  Id. at *43. See Pl.'s Mem. in Sup. of Mtn. for Class Certification, at 7. This legal basis would not only support Milbourne's claims, but also the claims of all other members of the proposed class. Thus, Milbourne's proposed legal standard does not put him at odds with other class members.  That insignificant factual difference does not make Milbourne's claim atypical of the claims of other class members.  For the foregoing reasons, the typicality requirement is satisfied for the Adverse Action Class.

For the reasons previously stated on the issue of willfulness, the issue of JRK's willfulness would also satisfy the typicality requirement as to this class.

### 5.   Rule 23(a)(4) Adequacy of Representation

The requirement for adequacy of representation necessitates that the Court be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This standard is met if "the named

plaintiff has interests common with, and not antagonistic to, the [c]lass' interests; and . . . the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." In re Se. Hotel Props. Ltd. P'ship Investor Litig., 151 F.R.D. 597, 606-07 (W.D.N.C. 1993).

Taking the second part of the standard first, the Court finds that Milbourne's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases. Further, it does not appear that JRK contests Milbourne's counsel's adequacy.

However, Milbourne's adequacy as named plaintiff is contested. JRK argues that Milbourne's criminal record indicates that Milbourne is unable to represent the best interests of absent class members.[5] Def.'s Opp. To Pl.'s Mtn. for Class Certification, Docket No. 38, at 7. In making its argument, JRK relies heavily on a recent opinion from the Northern District of

---

[5] Milbourne's criminal history is detailed in JRK's Opposition to Plaintiff's Motion for Class Certification. See. Docket No. 38. As a summary, Milbourne's records contains: six convictions of a misdemeanor level or below (Possession of Marijuana in 2012, Improper Pass on Right in 2007, Reckless/Dangerous Speed (100 in a 55) in 2007, Obstructing Justice in 2007, Failure to Obey a Traffic Signal in 2006, and a Community Based Program Violation in 2004); eleven charges that resulted in a nolle prosequi; and two charges that were dismissed.

California, Dunford v. Am. DataBank, LLC, 2014 U.S. Dist. LEXIS 111761 (N.D. Cal. 2014).  In American Databank, the court denied a request for class certification after finding that the proposed representative was not adequate because of a lengthy, serious, and recent criminal history and serious apparent addiction problems.

Milbourne has defended his adequacy. First, he argues that "the Fourth Circuit has never adopted the view that a criminal record disqualifies a named plaintiff from being appointed to represent a putative class" and instead has ruled that a criminal record does not automatically disqualify a named plaintiff. Pl.'s Mem. in Sup. of Mtn. for Class Certification, Docket No. 36, at 2.   Second, he argues that "class-representative plaintiffs do not need to be *perfect* only *adequate*" and that he qualifies as such. Id.(emphasis in original).

"The adequacy prerequisite looks to the personal characteristics of the named plaintiffs themselves to see whether they are fit representatives." Karnette v. Wolpoff & Abramson, L.L.P., 2007 WL 922288, at *30 (E.D. Va. 2007). (holding that "a single, decade-old conviction for possession of cocaine, without more, does not make a proposed plaintiff unfit to represent a class" and that "possession of cocaine is not a

21

crime of moral turpitude"). A criminal record can be germane to this inquiry, but there is no precedent that the Court could find or that JRK provides that indicates that a representative is inadequate based upon a criminal record alone. In fact, courts in the Fourth Circuit have adhered to the rule that a representative will not be automatically rejected "based solely upon his criminal record", but that adequacy must be "assessed in light of their [the representatives] conduct in this or previous litigation." Haywood v. Barnes, 109. F.R.D. 568, 579 (E.D.N.C. 1986).

While at a first glance, Milbourne's criminal record may seem lengthy, it is not reason to disqualify him as a named plaintiff for several reasons. First, the vast majority of entries on Milbourne's criminal record occurred more than six years ago. With the exception of his 2012 conviction for marijuana possession, all of Milbourne's criminal charges and convictions occurred before December 26, 2008. Second, the vast majority of entries on Milbourne's criminal record are charges that resulted in either a disposition of nolle prosequi or dismissal. Of the 19 listed charges, only 6 resulted in a conviction. Although unadjudicated charges could be informative if they appear indicative of a particular criminal lifestyle, they most certainly should be considered to be less important

than a conviction because they have not been tested in court. Third, the majority of Milbourne's convictions are traffic infractions. Four of his six convictions stem from what one can only assume is Milbourne's irresponsible driving practices, which have no bearing on his adequacy as a representative of the classes in this case.

JRK alleges that Milbourne's citations for contempt of court and failure to comply with a court order and his conviction for a community based program violation show "disrespect for the legal process" and argues that, "if Mr. Milbourne cannot adhere to the rules and procedures of the court in criminal actions where his own liberty is at stake, there is no reason to believe he will adequately represent thousands of other individuals unknown to him." Def.'s Opp'n to Pl.'s Mtn. for Class Cert., Docket No. 38, at 9. This is unconvincing for several reasons. First, the public records search does not indicate the facts surrounding the contempt of court or failure to comply with court order charges. Although these are serious allegations, the fact that they were not prosecuted indicate that Milbourne's disrespect of the court system was not as clear-cut as JRK alleges. Second, the acts underlying both of the charges and the conviction took place in 2004 - ten years ago. Two ten-year-old charges and one ten-year-old conviction,

23

while pertinent because they reflect Milbourne's respect for the justice system at one point in time, are not recent enough to allow this Court to determine that Milbourne would be an inadequate representative in this case.

JRK next alleges that Milbourne's 2012 conviction for possession of marijuana and two prior charges for possession of marijuana indicate that Milbourne suffers from a "drug issue" that could "impair his ability to represent the two proposed classes." Def.'s Opp'n to Pl.'s Mtn. for Class Certification, Docket No. 38, at 8.   Plaintiff relies on American Databank to make this point.   This claim is unavailing.   In American Databank, the court relied on the fact that many of the proposed representative's criminal convictions and charges stemmed directly from what could only be described as a serious alcohol problem.   The fact that the proposed representative could not refrain from engaging in alcohol-fueled criminal activity during the pendency of her case clearly indicated that she was inadequate to serve as representative.   This is not the situation here.   It is true that Milbourne has been convicted on possession of marijuana in 2012 and was charged with possession of it in 2006 and 2007.   However, three possession charges over the span of eight years do not indicate that Milbourne is an addict or is unable to control his behavior.

24

Finally, JRK argues that "the repetitive nature of Mr. Milbourne's criminal history indicates a significant probability that similar problems will arise in the future" and hinder the class' representation. Def.'s Opp'n to Pl.'s Mtn. for Class Cert., Docket No. 38, at 8.   This argument is also unavailing. As stated above, with the exception of Milbourne's recent conviction in 2012, he has had a clean record since 2008. Milbourne's criminal history does not indicate that he has a criminal disposition that would render him an ineffective class representative.

Milbourne is an adequate class representative.   He does not have interests antagonistic to those of the class, has participated with his counsel, and has been cooperative with court deadlines and proceedings to this date.   While he does have a criminal record, one would imagine that it would be difficult to find a plaintiff in this case, at least in the Adverse Action class, who did not have some sort of criminal past, because the premise of this lawsuit is that the class members suffered impermissible adverse action based on what a background check unearthed.   A criminal record is not an automatic disqualification,[6] and upon further review in this

---

[6] If a representative's convictions were of the sort that could be used to impeach him as a testifying witness, he might not be an adequate representative because that impeachment might

25

case, it does not disqualify Mr. Milbourne who otherwise satisfies Rule 23(b)'s adequacy requirement.  Thus, adequacy is satisfied.

## B.  Rule 23(b)(3)

In order to be certified as a class action, the class must satisfy at least one of the class categories defined in Rule 23(b).  Milbourne here moves for certification under Rule 23(b)(3).  Certification under Rule 23(b)(3) is appropriate where the Court finds that questions of law or fact common to the members of the class <u>predominate</u> over any questions affecting only individual members, and that a class action is <u>superior</u> to other available methods for the fair and efficient adjudication of the controversy.

### 1.  Predominance

"Rule 23(b)(3)'s predominance requirement is 'far more demanding' than Rule 23(a)'s commonality requirement . . . ." <u>Gariety v. Grant Thornton, LLP</u>, 368 F.3d 356, 362 (4th Cir. 2004) (quoting <u>Amchen</u> 521 U.S. 591, 623-24 (1997)).  "Whereas commonality requires little more than the presence of common questions of law and fact, Rule 23(b)(3) requires that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual

affect the class claims.  However, that issue is not presented here.

members.'" <u>Thorn v. Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 319 (4th Cir. 2006) (internal citation omitted) (quoting Fed. R. Civ. P. 23(b)(3)). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." <u>Gariety</u>, 368 F.3d at 362 (internal citation and quotation marks omitted).

There are two possible statutes of limitations that apply to a claim under the FCRA. 15 U.S.C. §1681p states that "an action to enforce any liability created under this title may be brought in any appropriate United States district court, without regard to the amount in controversy or in any other court of competent jurisdiction, <u>not later than the earlier of – (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs</u>." (emphasis added). Thus, whether a plaintiff receives the benefit of the 5 year statute of limitations period will depend on whether he/she learned on the violation at any point in time. If the plaintiff did so learn, the 2 year statute of limitations, if shorter, will apply.

Both the Impermissible Use Class and the Adverse Action Class, as proposed, defined the class period to reach back five years from the date that this action was filed. In pleadings

27

and at oral argument, JRK alleged that the predominance requirement was not satisfied as to either class because individualized inquiries would be required to determine the appropriate statute of limitations for all class members whose claims arose more than two years before the filing of the class complaint. Def.'s Opp'n to Pl.'s Mtn. for Class Cert., DocketNo. 38, at 10.

Milbourne initially contested JRK's predominance challenge, stating that any statute of limitations issue could be summarily dealt with in such a way that would still allow class-wide issues to predominate. See Id. However, at arguments held on September 26, 2014, counsel for Milbourne made an oral motion to amend the two class definitions from a five-year statute of limitations to a two-year statute of limitations. Thus, at this point, Milbourne seeks only to certify a class which includes all potential plaintiffs whose claims arose within a two year period prior to the filing of his complaint. At oral argument, counsel for JRK agreed that the proposed modification would eliminate JRK's predominance objections.

Nonetheless, the Court must satisfy itself that the predominance requirement is met. If Milbourne had retained the 5-year class definition, it is highly likely that individualized inquiries would have predominated over class-wide inquiries and

thus that class certification would not be proper in this case.[7] However, because the class definition as amended implicates only the two-year statute of limitations, whether predominance is satisfied will now turn on whether a class definition including only those class members whose claims arose two years or less before the filing of the complaint raises any overriding individualized inquiries.

Predominance is satisfied here with a two-year class definition. The Fourth Circuit has held that "where...the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner", predominance is satisfied. Stillmock v. Weis Markets, Inc., 385 F. App'x 267, 273 (4th Cir. 2010). See also Dreher v. Experian Info. Solutions, Inc., 2014 U.S. Dist. LEXIS 85951, at *6 (E.D. Va. 2014) ("The question of [Defendant's] liability represents the central, dominant issue before the Court, and while some questions may exist as to how to best apportion statutory damages, those questions do not preclude the common issue of

---

[7] See Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 320 (4th Cir. 2006); Gunnells v. Healthplan Services, Inc., 348 F.3d 417, 438 (4th Cir. 2003); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 342 (4th Cir. 1998); Bond v. Marriot Intern., Inc., 296 F.R.D. 403, 410 (D.Md. 2014)

liability from predominating."). Further, "common issues of law and fact predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." Stillmock, 385 Fed. App'x at 273 (internal quotation marks omitted). While potential individual issues remain for each class member (i.e. the time frame in which they received a disclosure of adverse action, if any), these issues are not such that they would predominate over the class-wide issues. Rather, the common issues such as the language of the disclosure form, JRK's notification and adverse action practices, and JRK's willfulness

## 2. Superiority

Superiority requires that use of a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority "'depends greatly on the circumstances surrounding each case,'" and "'[t]he rule requires the court to find that the objectives of the class-action procedure really will be achieved.'" Stillmock, 385 F. App'x at 274 (quoting 7A Wright, Miller & Kane, supra, § 1779). When making a "determination of whether the class action device is superior to other methods available to the court for a fair and efficient adjudication of

the controversy...[the court should] not contemplate the possibility that no action at all might be superior to a class action." <u>Brown v. Cameron-Brown Co.</u>, 92 F.R.D. 32, 49 (E.D. Va. 1981). Factors that the court should consider include, but are not limited to, "the class members' interest in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Milbourne argues that the class action format is superior to all others for both classes. First, he argues that "the reality is that class litigation is...effectively the only means" to litigate these claims because "the potential recovery is too slight to support individual suits." Pl.'s Mem. in Sup. of Mtn. for Class Cert., DocketNo. 36, at 20-21. Second, he argues that the class action conserves judicial resources and the costs of individual law suits and is much more efficient. <u>Id.</u> Finally, he argues that, even if individuals would be disposed to pursue their rights under the FCRA in their own cases, they likely would not be able to do so absent the class action mechanism because they would not be aware that their

31

rights had been violated because of the complexity of the law. Id. at 19.

JRK disputes superiority as to both classes. First, JRK argues that Milbourne's "remedial theory is based on statutory remedies that are wholly disproportionate to any harm suffered by the putative class" and thus that class certification should be denied under the court's Rule 23 discretionary powers. Def.'s Opp'n to Pl.'s Mtn. for Class Cert., DocketNo. 38, at 13. Essentially, this is an argument that the Court should refuse to certify the class as an acknowledgment that the damages made available under the FCRA exceed the real harm suffered by the plaintiffs. Id. (citing Stillmock, 485 F. App'x at 278 (Wilkinson, J. concurring)). Additionally, JRK argues that, from its own perspective, a class action is not the best way to adjudicate this case, is not necessary to serve the interests of Milbourne and all potential class members, and will not best serve the interests of the justice system.

When evaluating superiority, "the...determination involves...a comparison of the class action...as a procedural mechanism to available alternatives." Newberg on Class Actions § 4:64 (6th ed. 2014). According to the Supreme Court, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the

incentive for any individual to bring a solo action prosecuting his or her rights." Amchen, 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)). Thus, if the choice presented to the court is between "no action" and class action, rather than an "individual action" and class action, a class action will be superior.

The potential class members' claims are small when considered in comparison to the effort it would take to pursue them in court. The FCRA allows statutory damages up to $1,000 and, in the case of a willful violation, punitive damages which are limited by the due process clause of the Constitution. Additionally, a successful plaintiff can receive attorney's fees and court costs from a defendant. In comparison, initiating a FCRA action in federal court not only requires the plaintiff's time and effort (i.e. attending court dates, assisting in filings, etc.), but also necessitates finding an attorney willing to take on such a low-paying case and requires a plaintiff to accept the possibility that, if they lose, they will be responsible for their legal bills. What is more, because of the nature of the FCRA violation, many plaintiffs will not be aware that their rights were violated and thus would not be able to bring a suit at all.

JRK admits that requiring putative class members to proceed individually would result in fewer claims against being filed against it than if a class action was certified.    In its Opposition Memorandum, it states that "the conclusion that individual actions will not result in enforcement on the same scale as a class action weighs against certifying the class", thus arguing that the fact that individual actions will result in fewer claims is superior to vindicating all wronged plaintiffs.  Def.'s Opp. To Pl.'s Mtn. for Class Cert., Docket No. 38, at 20. This is clearly at odds with the Supreme Court's opinion in Amchen, which emphasized that the role of class actions was to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."  Amchen, 521 U.S. at 617 (internal citations omitted). While it may be superior in JRK's opinion to discourage plaintiffs from pursuing their rights under the FCRA, such an approach does not vindicate the plaintiffs' interests or Congress's intent in passing the FCRA.

    In addition to ensuring a full and fair adjudication of all members' cases, the class action is a superior method in this instance for several practical reasons.   First, it preserves judicial economy.   As noted earlier, putative class members hail from all over the United States.  To force several district

34

courts to confront these same issues rather than consolidating the legal and factual questions in one case would be a waste of judicial resources and the individuals' time and money.

Second, the factors listed in Rule 23 weigh in favor of a class action's superiority.  To begin, there seems to be little incentive to control individual cases, as individual class members are likely to receive the same award in class litigation as they would in individual litigation.  Of course, class members would be given the opportunity to opt out of the class if they believed that individual litigation was more beneficial for them.  There is no other related litigation pending that bears on this analysis.  And, as stated above, because potential class members are so spread out, it would be very desirable to hear the case in one forum and thus allow for a more efficient, consolidated resolution.  The last factor is satisfied because the similarity of factual and legal issues indicates that a class action would be manageable from the parties' and court's perspective.

Finally, JRK's argument that superiority is destroyed by the fact that the damages likely under an FCRA class action would outweigh the harm caused by any single violation of the law is again rejected.  See Williams v. LexisNexis Risk Mgmt. Inc., 2007 WL 2439463, at *9 (E.D. Va. 2007) (stating that the

argument was "without merit"). JRK's argument that Judge Wilkinson's concurring opinion in Stillmock provides new precedent to support this position is without merit for two reasons. First, the concurring opinion was not the holding of the Fourth Circuit. Second, the majority in Stillmock, while not speaking directly to the annihilative damages contention presented in the concurring opinion, found that the proposed class in that case did meet the superiority requirement for several reasons, including: the fact that "the low amount of statutory damages available means no big punitive damages award on the horizon [and thus that]...an individual action [is] unattractive from a plaintiff's perspective"; that "there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages...will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action"; that "there is no indication...that class members would have a strong interest in individual litigation"; and that "class certification promotes consistency of results." Stillmock, 385 F. App'x at 273-74. Thus, JRK's arguments against superiority are rejected and the Court finds that the element is satisfied in this case.

36

## CONCLUSION

For the reasons set forth above, the Plaintiff's MOTION FOR CLASS CERTIFICATION (Docket No. 35) is granted in part.  The Impermissible Use Class and Adverse Action Class are certified pursuant to a class definition that limits the class to those members who claims arose within the two years before the date for which this action was filed.

It is so ORDERED.

/s/ _____

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date:  October 31, 2014