

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

DERRICK A MILBOURNE,
On his own behalf and
On behalf of those
Similarly situated,

     Plaintiff,

v.                      Civil Action No. 3:12cv861

JRK RESIDENTIAL AMERICA, LLC,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 47), the Plaintiff's response (Docket No. 53) and the reply (Docket No. 57).  For the reasons set forth below, the motion will be denied.

## FACTUAL BACKGROUND

Derrick A. Milbourne ("Milbourne") filed a complaint on behalf of himself and all others similarly situated that alleged that Defendant JRK Residential America, Inc. ("JRK") violated two sections of the Fair Credit Reporting Act ("FCRA"). Milbourne applied for and conditionally received a job with JRK after completing application paperwork that permitted JRK to obtain a consumer report on Milbourne.  Docket No. 1 at 1. After JRK obtained Milbourne's consumer report, it rescinded its

offer to hire Milbourne. Id. In this action, Milbourne alleges that JRK did not comply with the FCRA's requirements "in that JRK did not provide [Milbourne] a copy of the report that was used as a basis for rescinding the offer of employment; that JRK did not provide him with the notice it was required to give before requesting the report; and that JRK did not provide him with a description of his rights under the FCRA." Docket No. 19 at 1-2.

### PROCEDURAL BACKGROUND

The procedural background of this case through April 7, 2014 is extensively set forth in the Court's Memorandum Opinion denying Defendant's Motion to Dismiss for Lack of Jurisdiction. Docket No. 19, at 3-5. Thereafter, the Court certified two classes, the "Impermissible Use Class" (alleging a violation of 15 U.S.C. § 1681b(b)(2)(A)[1]) and the "Adverse Action Class" (alleging a violation of 15 U.S.C. § 1681b(b)(3)(A)[2]). Both

---

[1] "**(A)** Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless— **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

[2] **(A)** Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action

classes were certified based on a 2 year statute of limitations. Docket No. 55.

## DISCUSSION

Summary judgment is proper when there is no genuine issue as to any material fact in the case such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Once the moving party properly files and supports its motion for summary judgment, the opposing party must show that a genuine issue of fact exists. See Matsushita Elex. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A material fact is the existence or non-existence of which could lead a jury to different resolutions of the case. See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). A genuine issue of material fact only exists when the opposing party has presented sufficient evidence upon which a reasonable jury could return a verdict in its favor. Id. This means that "summary judgment is only appropriate when, after discovery, the non-moving party has failed to make a 'showing sufficient to establish the existence of an element essential to that party's

---

based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates— **(i)** a copy of the report; and **(ii)** a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g (c)(3)of this title.

case, and on which that party will bear the burden of proof at trial.'" BM v. Chesterfield County School Dist., 2010 WL 145661 at *1 (E.D. Va. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). In considering motions for summary judgment, the court must consider the evidence in the light most favorable to the non-moving party. Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1985).

JRK moves for summary judgment on four issues. First, it argues that "the claims of the 'Impermissible Use Class' fail because JRK's authorization forms complied with both the letter and spirit of the FCRA." Docket No. 48 at 1. Second, it argues that, even if its authorization forms did not comply with the FCRA, "there is no triable issues that JRK acted 'willfully.'" Id. at 2. Third, it argues that "[t]he Adverse Action claim...fails because the class members have no private right of action under [the] FCRA provision" at issue. Id. Finally, it argues that "plaintiffs have...failed to show willfulness" in conjunction with the Adverse Action Class as well. Id. These arguments will be addressed in turn.

## I. JRK's Disclosure Form's FCRA Compliance

15 U.S.C. § 1681b(b)(2)(A) requires that, "[e]xcept as provided in subparagraph (B) [dealing with applications for employment by mail, telephone, or computer], a person may not

4

procure a consumer report, or cause a consumer report to be procured, for employment purposes, with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, <u>in a document that consists solely of the disclosure</u>, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the documents referred to in clause (i)) the procurement of the report by that person." (emphasis added).

When Milbourne applied for a position with JRK, he signed a document that read, in part:

> I certify that the information contained herein is true and understand that any falsification will result in the rejection of my application or termination of my employment. I also understand that the requested information is for the sole purpose of conducting a background investigation which may include a check of my identity, work and credit history, driving records, and any criminal history which may be in the files of any state or local criminal agency...[3]
>
> I hereby authorize this company, its corporate affiliates, its employees, its authorized agents, and representatives...to verify all information contained in this form or in my application and to inquire into any character, general reputation, personal characteristics, and mode of living...<u>I hereby release this company, its</u>

---

[3] Paragraph One is referred to as "The Disclosure."

> corporate affiliates, its employees, its
> authorized agents and representatives and
> all others involved in this background
> investigation from any liability in
> connection with any information they give or
> gather and any decisions made concerning my
> employment based on such information. I
> understand that any offer of employment I
> may receive is contingent upon the
> successful completion of the background
> investigation. I further understand that I
> have a right, under Section 606(B) of the
> Fair Credit Reporting Act, to make a written
> request to this company within a reasonable
> period of time for a complete and accurate
> disclosure of the nature and scope of the
> investigation requested.[4]

Docket No. 49-2 at 2 (emphasis added). Milbourne alleges that the release language (underlined above) violates § 1681b(b)(2)(A)'s "solely of the disclosure" requirement and thus violates the FCRA. JRK claims that its form is compliant with the FCRA and for that reason seeks summary judgment.

## A.   Parties' Positions

### (i)   JRK's Arguments

JRK puts forth several theories in support of its argument that the phrase "solely of the disclosure" does not mean what it says. First, JRK states that "[c]ourts in the Fourth Circuit are split as to whether the inclusion of a release violates the 'solely of the disclosure' language of § 1681b(b)(2)(A)." Docket No. 48 at 7 (comparing Smith v. Waverly Partners, 2012 WL 3645324, at *5-6 (W.D.N.C. 2012) with Singleton v. Domino's

---

[4] Paragraph Two is referred to as "The Authorization."

_Pizza_, 2012 WL 245965, at *9 (D. Md. 2012)).  In _Smith_, on which JRK relies, the court stated, in dicta, that a waiver clause resembling the one at issue here was "invalid...[but] was not so great a distraction as to discount the effectiveness of the disclosure and authorization statements [which were]...otherwise adequate."  _Smith_, 2012 WL 3645324 at *6.  Thereupon, the court held that, although the "solely" text in the FCRA rendered the waiver ineffective, but it did not otherwise cause noncompliance with the FCRA's requirements.

Second, JRK makes a policy argument based on the purpose of the FCRA. It argues that § 1681b(b)(2)(A)'s "solely" requirement "is intended to ensure consumers are not 'distracted by other information side-by-side with the disclosure.'"  Docket No. 48 at 7 (citing FTC letter dated September 9, 1998 to H. Rowan Leathers). From that premise, JRK argues that Milbourne has not alleged that the disclosure at issue had any negative effect on consumer understanding. Thus, says JRK, if the statute is read so that the disclosure at issue violates the FRCA, it would "pervert Congress's purpose...[by] mandate[ing] specific disclosure language" and would "deprive companies of fair guidance when trying to comply" with the FCRA.  Id. at 8.

Lastly, JRK makes several statutory language-based arguments for its interpretation of §1681b(b)(2)(A). It first contends that the "solely of the disclosure" language contained

in §1681b(b)(2)(A)(i) cannot mean what it says because, in §1681(b)(2)(A)(ii), the FCRA explicitly allows the authorization for the consumer report to appear on the same document as the disclosure.   Docket No. 57, at 10.   Thus, "Milbourne's proposal to define 'solely' to mean 'to the exclusion of all else' cannot be reconciled with the FCRA's explicit allowance of information besides the disclosure on the same document."   Id. at 10-11. Then, JRK finds significant that "no specific terms are required for the disclosure or the authorization" in the FCRA.   Id. at 12.   Instead, "the statute provides the disclosure need only be 'clear and conspicuous.'"   Id.   And, according to JRK, "the 'solely of the disclosure' language is specific to the disclosure and JRK's waiver provision was in its authorization, which has no such requirement."   Id.

### (ii) Milbourne's Argument

Milbourne opposes summary judgment on the issue of whether the disclosure at issue violated the FCRA.   First, Milbourne asserts that the "plain language of §1681b(b)(2)...prohibits the inclusion of a waiver of rights in the document used to disclose and obtain consent that a consumer report may be obtained for employment purposes."   Docket No. 53 at 8.   Any other interpretation would offend the canon of statutory interpretation requiring that "all words in a statute must be

given effect and no word or phrase [can be] treated as 'surplussage.'" Id. at 9.

In making his plain language argument, Milbourne relies on several district court decisions and informal FTC letters. First, in Singleton v. Domino's Pizza, LLC, the District Court of Maryland held that the "both the statutory text and the FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document." 2012 WL 245965, at *9 (2012 D. Md.) See also Reardon v. ClosetMaid Corp., 2013 WL 6231606, at *9 (W.D. Pa. 2013)("[T]he Court agrees with the analysis in Singleton, given the rather direct statutory language at issue...Although the disclosure itself is arguably 'clear and conspicuous' given that the title of the Authorization Form appears in bold capital letters and explains that the consumer report is for employment purposes, the Authorization Form simply does not comply with the FCRA's express requirement that the disclosure appear in a document that consists solely of the disclosure (or, at most, a disclosure and authorization only)"; Avila v. NOW Health Grp., Inc., 2014 WL 3537825, at *2 (N.D. Ill. 2014)(denying a motion to dismiss because "despite [Defendant's] assertion that both forms comply with the FCRA standalone disclosure requirement, each form contains information that is not the disclosure, contrary to the express language of the FCRA...").

Next, Milbourne relies on several FTC advisory opinions interpreting §1681b(b)(2)(A).[5]  In the Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trader Comm'n to Richard W. Hauxwell, CEO, Accufax Div. 1998 WL 34323756 (F.T.C. June 12, 1998), FTC staff advised that "the inclusion [in a FCRA disclosure] of [a waiver by the consumer of his or her rights under the FCRA]...violate[s] Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist 'solely' of the disclosure that a consumer report may be obtained for employment purposes only."  Further, in a Letter from William Haynes, Fed. Trade Comm'n, to Harold R. Hawkey, Employers Assoc. of New Jersey, 1997 WL 33791224 (F.T.C. December 18, 1997), FTC staff stated that "[t]he reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure.  A disclosure that is combined with many items...no matter how 'prominently' it appear - is not in 'in a document

_____
[5] The Eastern District of Virginia has recognized that "[t]he FTC provides Official Staff Commentary, as well as informal staff opinion letters guiding interpretation of the FCRA." Williams v. Telespectrum, Inc. 2006 WL 7067107 (E.D. Va. Nov. 7, 2006). The Supreme Court has determined that FTC informal advisory opinions "do not constitute 'authoritative guidance' on the FCRA." Singleton, 2012 WL 245965 at *9 (citing Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 70 & n.19 (2007)(emphasis in Singleton).  However, several courts have found FTC opinion letters to be persuasive when interpreting the FCRA. Id. (citing Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial, 537 F.3d 1184, 1192 (10th Cir. 2008); Morris v. Equifax Info. Servs. LLC, 457 F.3d 460 (5th Cir. 2006).

that consists solely of the disclosure.'" See also Letter from Clarke W. Brinckerhoff, Fed Trade Comm'n, to H. Roman Leathers, Mainer & Herod, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98 (F.T.C. Sept. 9, 1998)("Nothing else may appear on the document that detracts from the disclosure required...").

Next, Milbourne addresses JRK's Congressional intent argument by stating that "the 'clear and conspicuous' requirement is distinct from, and in addition to, the requirement that the disclosure be made in a document that consists solely of the disclosure." Docket No. 53 at 16. Thus, the inclusion of a waiver of rights would violate the FCRA, no matter how "clear and conspicuous" the disclosure may be. Milbourne also argues that allowing prospective waivers would "encourage future violations of the law" and are therefore "directly contrary to legislative intent" and thus should be prohibited. Id. at 16-17.

**B.  Legal Standard**

### (i) Reliance on FTC Letters

Before deciding whether the disclosure at issue here violated the FCRA, it is useful to determine whether the Court can, or should, rely on the FTC letters cited by Milbourne in his opposition.  In Safeco, the Supreme Court "rejected the use of an informal letter written by an FTC staff member

11

because...it 'explicitly indicated it was merely an informal staff opinion...not binding on the Commission.'" Syed v. M-I LLC, 2014 WL 5426862, at *3 (citing Safeco, 551 U.S. at 70, n. 19). The three letters cited by Milbourne (see supra) are informal staff opinions of the type discussed in Safeco. Hauxwell Letter, 1998 WL 34323756 (F.T.C.), at *3 ("The views that are expressed above are those of the Commission's staff and not the views of the Commission itself."); Hawkey Letter, 1997 WL 33791224 (F.T.C.), at *3 ("The above views constitute informal staff opinions and are advisory in nature and not binding upon the Commission; Leathers Letter ("The opinions set forth in this informal staff letter are not binding on the Commission."). JRK argues that, because the letters are informal, they "do not have the authority to support [Milbourne's] argument." Docket No. 57 at 12.

In Singleton, the court reasoned that to ignore the FTC advisory opinions would be to "overstate the Supreme Court's conclusion in Safeco" because, "while the Safeco Court concluded that the FTC advisory opinions did not constitute 'authoritative guidance' on the FCRA, numerous courts interpreting the FCRA after Safeco have found such opinion letters persuasive." Singleton, 2012 WL 245965, at *9 (emphasis in original). The approach taken in Singleton is a sound and reasonable one because it abides by the rule of Safeco while considering the

12

views of the FTC staff to be informative, but not to be entitled
to the deference that is owed to a formal Commission Opinion.

### (ii) Analysis

There are no disputed material facts bearing on the
analysis of this issue. The parties' arguments are based upon
case law, the language of the statute, and the cited FTC
letters.

JRK is correct when it states that district courts across
the country (including in the Fourth Circuit) have split as to
the meaning of the word "solely" in §1681b(b)(2)(A). Syad I,
2014 WL 4344746, at *3 (discussing the conflicting holdings);
Singeton, 2012 WL 245965, at *9; and Smith, 2012 WL 3645324, at
*5-6. Thus, the meaning of the term "solely of the disclosure"
in § 1681b(b)(2)(A)(i) has not been definitively settled.

The analysis of statutory terms begins with the text of the
statute. Caminetti v. United States, 242 U.S. 470, 485 ("It is
elementary that the meaning of a statute must, in the first
instance, be sought in the language in which the act is
framed..."). If the statutory text is clear and unambiguous,
the analysis need to go no further. Id. ("Where the language
is plain and admits of no more than one meaning, the duty of
interpretation does not arise, and the rules which are to aid
doubtful meanings need no discussion."

"In interpreting the plain language of a statute, [courts] give the terms their ordinary, contemporary, [and] common meaning, absent an indication Congress intended [them] to bear some different import." Crespo v. Holder, 631 F.3d 130, 133 (4th Cir. 2011). "Here, dictionary definitions[6] of the word 'solely' indicate that a document disclosing that an employer planned to obtain a consumer report would not 'consist solely of the disclosure' if the document also contained a liability release...These definitions define 'solely' as, inter alia, 'to the exclusion of all else.'" Singleton, 2012 WL 245965 at *8 (internal citations omitted).

The language of the FCRA does not qualify the word "solely" or otherwise limit its meaning. Thus, judging by the text of the statute alone, inclusion of a waiver within the document containing the disclosure would violate § 1681b(b)(2)(A)(i).

The decision in Waverly Partners, on which JRK relies heavily, is not text based, but instead turned on the practical consequences of using the term at issue. Waverly Partners, 2012 WL 3645324, at *6 ("[W]hile invalid, the waiver – a single

---

[6] See Merriam Webster Online Dictionary (2011) (defining "solely" as "to the exclusion of all else"), available at http://www.merriam-webster.com; Oxford English Dictionary Online (2012) (defining "solely" as "alone" or "without any other as an associate"), available at http://www.oed.com; Webster's Third New Int'l Dictionary of the English Language 2168 (3d ed.1971) (defining "solely" as "to the exclusion of alternate or competing things").

sentence within the authorization, which was kept markedly distinct from the disclosure language – was not so great a distraction as to discount the effectiveness of the disclosure and authorization statements. Accordingly, the disclosure and authorization are otherwise adequate.") That approach is contrary to the basic principle of construction that statutory terms be accorded their plain meaning. Hence, Waverly Partners is not persuasive.

The text-based interpretation of the FCRA's disclosure requirement is supported by the informal FTC opinion letters upon which Milbourne in part relies. Although the FTC has advised individuals that they "may combine the disclosure and authorization," it has cautioned that, under the statute, the disclosure may not "include a waiver by the consumer of his or her rights under the FCRA...[because] such a waiver in a disclosure form will violate...[the requirement] that a disclosure consist 'solely' of the disclosure." Hauxwell Letter, 1998 WL 34323756, at *1. Additionally, an FTC informal opinion has explained that "in a document that consists solely of the disclosure" language "is intended to ensure that [the disclosure]...appears conspicuously in a document not encumbered by any other information." Leathers Letter, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98. That construction is, of course, not

15

binding.   However, it is consistent with the plain text reading of the statutory term, and is instructive.

Apparently recognizing the force of Milbourne's plain text argument, JRK contends that a "[r]igid adherence to the 'solely of the disclosure' text, as advocated by Milbourne, would prohibit 'all other language other than the disclosure from appearing on the document...[which] runs counter to the very terms of the statute itself." Docket No. 57 at 11.   This argument is based on the fact that §1681b(b)(2)(A)(ii) explicitly permits the authorization to appear on the document.[7] The court in Singleton disposed of that rationale when it cogently explained that:

> "[t]his contention, however, ignores the significance of congressional silence on an issue where Congress has otherwise spoken. Indeed, when mandating that an employer use a document that 'consists solely of the disclosure,' Congress expressly permitted employers to include language authorizing the employer to procure the consumer report...Had Congress intended for employers to include additional information in these documents, it could easily have included language to that effect in the statute. It did not do so, however, and its 'silence is controlling.'"

---

[7] "(2)(A) Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer unless − ...(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Singleton, 2012 WL 245965 at *8 (internal citations omitted). Here, as in Singleton, the Court cannot accept the view that, because Congress explicitly allowed the authorization to appear on the disclosure document, it altered the plain meaning of the word "solely". Rather, in § 1681(b)(2)(A)(ii) Congress provided a specific exemption only for the authorization only and does not permit other extraneous language on the face of the disclosure document.

Moreover, JRK's argument ignores the text of the statute. §1861b(b)(2)(A)(i) states that the disclosure must be made "in a document that consists solely of the disclosure" Docket No. 57 at 12 (emphasis added).  There is no qualification that extraneous language can be in the same document if the disclosure is in a separate paragraph.

And, JRK's argument that "the statute provides the disclosure need only be 'clear and conspicuous'" has the effect of excising the "solely of the disclosure" language from the FCRA's text.  As explained above, the plain language of the statute imposes two requirements:  (1) that the "clear and conspicuous disclosure" be made "in writing," and (2) that it be made "in a document that consists solely of the disclosure."

It is true that some courts[8] have found that the "true" goal of the statute is to ensure a "clear and conspicuous" disclosure and that any other requirements listed are secondary to this goal. However, although the policy goal of the FCRA may have been to secure clear disclosures to consumers, it does so in part by including language that requires the disclosure to be in its own separate document. That is a clear element of §1681b(b)(2)(A)(i), and nothing in the FCRA indicates that it is to be ignored if the disclosure is otherwise "clear and conspicuous".

For the foregoing reasons, JRK's motion for summary judgment on the theory that its authorization form satisfies "the letter and spirit of the FCRA" will be denied.

## II.   JRK's Willfulness As It Pertains To § 1681b(b)(2)(A)(i)

Under the FCRA, a plaintiff can recover damages when a defendant has acted either negligently or willfully in violating the statute. See 15 U.S.C. §1681o(a)(1) (providing for actual damages in cases of negligent noncompliance); 15 U.S.C. § 1681n(a)(1)(A) (providing for statutory damages in cases of willful noncompliance). In this case, Milbourne has alleged only willful noncompliance by JRK and has not pled the existence

---

[8] See Waverly Partners, LLC, 2012 WL 3645324, at 5-6; Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689, 699-700 (S.D. Ohio 2010).

of any actual damages that would be compensated for in the case of negligent noncompliance. See Docket No. 1. JRK has moved for summary judgment on the issue.

The Agreed Class Scheduling Order in this case reserved discovery on "whether Defendant's alleged violations of the FCRA were 'willful'" for Phase II discovery, which has yet to begin. Docket No. 26 at 2. Thus, any decision on the issue of JRK's willfulness would be premature at this point. FCRA willfulness is a fact-driven inquiry that cannot be decided without proper discovery by the parties. Additionally, even at this time, it appears that there is a genuine dispute of material fact on the issue of willfulness. Therefore, JRK's motion for summary judgment as to § 1668b(b)(2)(A) willfulness is denied.

## III. Availability of a Private Right of Action under § 1681b(b)(3)

JRK argues that the 2003 amendments to the FCRA eliminated any private right of action to recover after a failure to provide notice of an adverse action under §1681b(b)(3). That, says JRK, entitles it to summary judgment on Milbourne's "Adverse Action" class claims. For the reasons set forth below, JRK's motion for summary judgment on that issue will be denied.

### A.    Parties' Positions

#### (i)   JRK's Arguments

"In 2003, Congress amended the FCRA with the Fair and Accurate Credit Transactions Act [FACTA]...As part of the FACTA amendments, Congress added 15 U.S.C. § 1681m(h)(8),[9] that eliminated private enforcement of § 1681m." Docket No. 48 at 16.  JRK argues that similarities between § 1681m and §1681b(b)(3) warrant extending the elimination of private enforcement of § 1681m to private enforcement of § 1681b(b)(3).

Section 1681m requires "users of consumer reports" who are "taking adverse actions on basis of information contained in consumer reports...[to] provide oral, written, or electronic notice of the adverse action to the consumer."  15 U.S.C. § 1681m(a).  JRK argues that this is similar to § 1681b(b)(3)'s requirement that those "furnishing and using consumer reports for employment purposes...for adverse actions" must provide "a copy of the report and a description in writing of the rights of the consumer...before taking any adverse action based in whole or in part on the report."  15 U.S.C. § 1681b(b)(3).  Because of this similarity, JRK argues that "Congress's intent to [amend

---

[9] "(8) Enforcement (A) No civil actions: Sections 1681m and 1681o of this title shall not apply to any failure by any person to comply with this section; (B) Administrative enforcement: This section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials identified in that section."

§ 1681b(b)(3)]...can be inferred from its elimination of [the right of private action]...for the nearly identical requirements imposed by § 1681m(a) - there is no reason Congress would have eliminated this form of enforcement for one violation, but not the other." Docket No. 48 at 17.  This argument fails for the most fundamental of reasons.

To begin, courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." Bourdelais v. J.P. Morgan Chase Bank, 2011 WL 1306311 (E.D. Va. 2011), at *8.  Thus, the first task of the court it to look to the plain language of the statute.  When FACTA was passed in 2003, both §1681m and §1681b(b)(3) were enforceable through a private right of action.  However, Congress only saw fit to explicitly remove the private right of action only in § 1681m.  When Congress said in § 1681m(h)(8) that "this section" was enforceable only through agency action and that "no civil action" was available, it did so in a provision that applied only to the causes of action in § 1681m.  There was no reference to the private cause of action in § 1681b(b)(3).  To read in such a reference would be to ignore what Congress actually said and instead to opine on what it might have "meant."

It is well-established that "the starting point for interpreting a statute is the language of the statute itself.

Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Product Safety Commissions et al. v. GTE Sylvania, Inc. et al., 447 U.S. 102, 108 (1980). Because there is no "clearly expressed legislative intent" to do in § 1681(b)(3) what the legislature did in § 1681m(h)(8), JRK's argument must fail. It is not the province of the Court to do what Congress could have done but did not do.

## IV.   JRK's § 1681b(b)(3) Willfulness

The last issue that JRK moves for summary judgment on is whether Milbourne has sufficiently shown willfulness for the alleged violations under § 1681b(b)(3). This is a premature motion because discovery on willfulness was reserved for later. And, in any event, there are genuine disputes of material fact that preclude summary judgment on the issue of willfulness.

### CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 47) will be denied.

It is so ORDERED.

_____    /s/    _REP_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March _10_, 2015