IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DERRICK A. MILBOURNE,
on his own behalf and on
behalf of those similarly
situated,

    Plaintiff,

v.                                  Civil Action No. 3:12cv861

JRK RESIDENTIAL AMERICA, LLC,

    Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on PLAINTIFFS' MOTION TO STRIKE THE DECLARATIONS OF MIKE MOERSCHBACHER (ECF No. 166). For the reasons set forth herein, the motion will be denied.

**BACKGROUND**

**A. Class Claims**

On October 26, 2015, Plaintiffs Derrick A. Milbourne ("Milbourne"), Timothy Robins ("Robins"), and Samantha Churcher ("Churcher") (collectively, "Named Plaintiffs") filed a First Amended Complaint ("FAC," ECF No. 147) on behalf of themselves and all others similarly situated, alleging that Defendant JRK Residential America, LLC ("JRK") violated two sections of the Fair Credit Reporting Act ("FCRA"). In Count One, the Named Plaintiffs allege that the disclosure form JRK provided to all

potential employees ("the Standard Disclosure Form") violated 15 U.S.C. § 1681b(b)(3)(A), which requires that:

> In using a consumer report[1] for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

In Count Two, the Named Plaintiffs allege that JRK's use of the Standard Disclosure Form also violated 15 U.S.C. § 1681b(b)(2)(A), which provides that:

> A person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

---

[1] The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility for:...employment purposes[.]" 15 U.S.C. § 1681a(d).

2

Count Three, filed on behalf of a putative subclass of the class represented in Count Two, alleges that a second disclosure form that JRK provided to some potential employees ("the Standalone Disclosure Form" or "the contingency form") also violated § 1681b(b)(2)(A).

## B. Factual And Procedural History

### 1. The Standard Disclosure Form

In November 2010, Milbourne applied for and conditionally received a job with JRK pending satisfactory completion of a background check. FAC ¶¶ 7-9. Before JRK obtained a consumer report on Milbourne, he signed two disclosure forms. FAC ¶¶ 15-18. The first, the Standard Disclosure Form, was also signed by Robins and Churcher, who applied for employment with JRK in April 2011 and September 2013, respectively. FAC ¶¶ 27-31.

On October 31, 2014, the Court certified two classes based on the alleged deficiencies of the Standard Disclosure form. First, the Court certified an "Impermissible Use Class," defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who applied for an employment position with Defendant or any of its subsidiaries, (b) as part of this application process were the subject of a consumer report obtained by Defendant during the two years proceeding [sic] the filing of the Complaint, (c) where Defendant used a form to make its disclosures pursuant to 15

3

> U.S.C. § 1681b(b)(2) that contained a release and/or waiver of the signing consumer's claims and/or rights.

(ECF No. 56). The Court also certified an "Adverse Action" subclass, defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who applied for an employment position with Defendant or any of its subsidiaries, (b) as part of this application process were the subject of a consumer report background check obtained by Defendant on or after the date two years proceeding [sic] the filing of the Complaint, (c) where Defendant's records show that the applicant was denied employment because of the background check, (d) and to whom Defendant did not provide a copy of the consumer report and other disclosures stated at 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the date the employment decision is first noted in Defendant's records.

Id.

### 2. The Standalone Disclosure Form

After extensive discovery, after class certification had been decided, and on the eve of trial, it became apparent that Milbourne, along with 558 other class members[2] (not including

---

[2] A total of 650 class members signed the Standalone Disclosure Form. However, JRK revealed at oral argument that 91 class members actually signed the Standalone Disclosure Form after JRK had already procured their background reports. (Transcript of February 26, 2016 Hearing ("Hrg. Tr.") at 21-22). Therefore, the Standalone Disclosure Form has no legal effect on those 91 class members.

4

Robins or Churcher), may have also signed a second disclosure form before JRK obtained their background checks ("the contingency form" or "the Standalone Disclosure form"). That form provides:

> I understand that my employment with JRK is subject to the successful clearance of my background report to acceptable company standards. The results of my background report will be reviewed and evaluated by JRK and JRK, in its sole discretion, will determine whether it is approved.

ECF No. 150, Exs. 1-650.

### 3. The Moerschbacher Declarations

On November 10, 2015, JRK moved for summary judgment on Count Three, asserting that the Standalone Disclosure Form complied with the FCRA. (ECF No. 148). On that same date, JRK also moved to compel arbitration, on the ground that 510 class members had signed binding arbitration agreements. (ECF No. 153). In support of each motion, JRK attached a declaration of Michael Moerschbacher ("Moerschbacher"), JRK's head of Human Resources. (ECF Nos. 150, 155).

The front page of both declarations states Moerschbacher's position as head of Human Resources and states that he "ha[s] access to and ha[s] reviewed JRK's business records and other documents that provide the basis for [his] statements [t]herein." Id. Finally, then is the statement that Moerschbacher "ha[s] personal knowledge of the facts stated in

5

th[ese] declaration[s]." Id. ¶¶ 2-3. The remainder of each declaration simply states that true and correct copies of the signed Standalone Disclosure Forms and Arbitration Agreements, respectively, are attached as numbered exhibits. ECF No. 150 ¶¶ 4-653; ECF No. 155 ¶¶ 4-513. That is, Moerschbacher's declarations are offered to authenticate the attached documents and to support the motion for summary judgment and the motion to compel arbitration, based on the content of the authenticated documents.

## DISCUSSION

### A. Authentication

Milbourne's primary argument is that the documents appended to Moerschbacher's declarations are insufficiently authenticated because "there is no indicia [sic] that Mike Moerschbacher has personal knowledge regarding any of the documents attached to either of his declarations." (Plaintiff's Memorandum in Support of His Motion to Strike the Declarations of Mike Moerschbacher ("Pl. Mem.," ECF No. 167) at 15). Specifically, Milbourne takes issue with the fact that Moerschbacher "had no knowledge that any documents were signed by the employees on the dates on the forms, but assumed or presumed that they were." Id. at 16. JRK hired temporary help that, under the supervision of JRK's California counsel, reviewed the employment files and extracted therefrom copies of the Standalone Disclosure Forms and the

6

Arbitration Agreements that had been signed by class members. JRK's counsel then put those documents into portable document formats (".pdfs") and sent the .pdfs to Moerschbacher. Milbourne contends that Moerschbacher's personal knowledge is insufficient because he physically examined only "50 randomly selected files" to confirm the veracity of the .pdfs that were supplied to him by his counsel.

In response, JRK contends that Moerschbacher's personal knowledge is sufficient to authenticate the documents because, in order to satisfy Fed. R. Evid. 901, Moerschbacher need only be familiar with JRK's policies and practices for maintaining personnel files. (Defendant JRK Residential America, LLC's Opposition to Plaintiff's Motion to Strike the Declarations of Mike Moerschbacher ("Def. Mem. in Opp.," ECF No. 174) at 5). Specifically, JRK states that "[t]here is no dispute Mr. Moerschbacher (1) is familiar with JRK's policies for maintaining personnel files, (2) is familiar with JRK's storage of these files, (3) oversaw the transfer of these files to his attornyes, and (4) reviewed the documents from these files in the format transferred to him by his attorneys." Id. at 1. The Court agrees that the documents have been properly authenticated.

7

### 1. Applicable Legal Framework

Federal Rule of Evidence 901 requires that before a document can be admitted into evidence, its proponent must offer sufficient evidence to support a finding that the document is what its proponent claims it to be. Fed. R. Evid. 901. Section (b) of Rule 901 provides numerous illustrations of how authenticity may be established, including: (1) testimony of a witness with knowledge that the matter is what it is claimed to be; and (2) appearance, contents, substance, internal pattern, or other distinctive characteristics taken in conjunction with other circumstances. In other words, authentication may be accomplished entirely through circumstantial evidence, and "any and all manner of circumstantial evidence may be used to establish that the document is genuine." ABN Amro Mortg. Grp., Inc. v. Maximum Mortg., Inc., 2006 WL 2598034, at *5 (N.D. Ind. Sept. 8, 2006); see also Stewart v. Warden of Lieber Correctional Inst., 701 F. Supp. 2d 785, 794 (D.S.C. 2010).

Because authentication "'is essentially a question of conditional relevancy,' the jury will ultimately resolve whether the evidence admitted for its consideration is what the proponent claims." Foreword Magazine, Inc. v. Overdrive, Inc., 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011) (quoting United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992)). Therefore, a "party seeking to admit an exhibit need only make a

8

prima facie showing that it is what he or she claims it to be. This is not a particularly high barrier to overcome." Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 542 (D. Md. 2007) (internal citation omitted). "[T]he question for the court under Rule 901 is whether the proponent of the evidence has offered a foundation from which the jury could reasonably find that the evidence is what the proponent says it is...the Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the jury ultimately might do so." Id. (citing United States v. Safavian, 435 F. Supp. 2d 36, 38 (D.D.C. 2006) (internal quotation marks omitted)). The district court has "broad discretion" to determine whether a document has been properly authenticated. See, e.g., United States v. Pluta, 176 F.3d 43, 40 (2d Cir. 1999).

## 2. The Arbitration Agreements

The content of Moerschbacher's declaration offered in support of JRK's motion to compel arbitration, coupled with his deposition testimony, reveals that Moerschbacher is qualified to authenticate the Arbitration Agreements. The declaration itself reveals that, by virtue of his position as JRK's head of Human Resources, Moerschbacher is familiar with JRK's procedures for hiring employees. (ECF No. 155 at 1). Moerschbacher also testified that he is familiar with JRK's system for maintaining

9

and storing employee files, and that all documents relating to employment are kept in a single file for each employee. (Moerschbacher Deposition Transcript ("Dep. Tr.") at 99, 101). Moerschbacher further testified that he physically retrieves and reviews employee files frequently, as often as several times a week. Id. at 96. Furthermore, although Moerschbacher did not personally participate in pulling employee files to send to JRK's lawyers, he oversaw that process. Id. Finally, Moerschbacher testified that he knew that it was JRK's standard policy to ask employees to sign Mediation and Arbitration Agreements, and that he had known about the existence of the agreements since the beginning of this litigation. (Dep. Tr. 117-118).

In sum, Moerschbacher stated under penalty of perjury that: (1) he is head of Human Resources at JRK; (2) he is familiar with the processes and documents involved in the employee hiring process; (3) the Arbitration Agreements were a regular part of that process; (4) he is familiar with JRK's system for maintaining employee files, and accesses employee files regularly; and (5) the exhibits attached to his declaration are true and correct copies of those documents. This evidence is sufficient to support a prima facie showing that the exhibits are what JRK claims. See, e.g., Byrne v. CSX Transp., Inc., 2014 WL 3511016, at *5 (N.D. Ohio July 14, 2014) (witness who

10

had no recollection of reviewing certain bills nonetheless sufficiently authenticated them where she identified them as familiar documents, she had "absolutely no reason to believe" the bills were not authentic, the bills "appeared to be" true and correct, and witness was responsible for the program to which the bills were related); Becerra v. Newpark Mall Dental Grp., Inc., 2012 WL 310973 (N.D. Cal. July 23, 2012) (defendant's signed declaration that arbitration agreements are provided to all new employees to sign in relation to their employment, that the plaintiff did sign one such agreement, and that the attached copy of the agreement was true and accurate, was sufficient authentication); Bassi Bellotti S.p.A. v. Transcontinental Granite, Inc., 2009 WL 2477546, at *3 (D. Md. Aug. 11, 2009) (affiant's statements that he was the president of the plaintiff's company, that he had personal knowledge of the records being offered, that the records were created pursuant to business dealings between plaintiff and defendant, and that the records were true and correct copies, constituted a prima facie showing of authenticity under Fed. R. Evid. 901). The fact that the documents are signed, dated, and printed on JRK stationery further corroborates their authenticity. See, e.g., Byrne, 2014 WL 3511016, at *5.

Contrary to Milbourne's argument, the Rules of Evidence do not require that Moerschbacher was present for the signing of

each Arbitration Agreement. See, e.g., United States v. Coohey, 11 F.3d 97, 100 (8th Cir. 1993) (observing that the fact that the "[company employee] was not the keeper of the records and did not prepare them, even if true, would not impede her ability to testify that the records were authentic."). Such a requirement would essentially prevent corporate defendants from introducing documents relating to a large number of identical occurrences or transactions, a necessary reality in large class actions such as these. Nor does a witness have to manually match up each sentence of a declaration with the corresponding exhibit and verify that every exhibit is properly numbered in order to qualify as a "witness with knowledge." Milbourne has simply manufactured this requirement in his efforts to discount Moerschbacher's qualifications.

Thus, JRK has shown that Moerschbacher is qualified to testify as to the authenticity of JRK's documents, and JRK has satisfied its low burden to present evidence from which a reasonable juror could find that the Arbitration Agreements are authentic.

### 3. The Standalone Disclosure Forms

Milbourne's authenticity argument also fails as to the Standalone Disclosure Forms because Milbourne's own filings and conduct are sufficient to support a finding that the Standalone Disclosure Forms are authentic. In other words, "Plaintiff has

relied on these documents in making various accusations in this case and cannot, therefore, also challenge their authenticity." Kaur v. New York City Health and Hosps. Corp., 688 F. Supp. 2d 317, 324 (S.D.N.Y. 2010) (internal citation omitted).

Milbourne's positions throughout this litigation reveal that he has conceded and, indeed, that his claims and arguments depend upon the existence and authenticity of, the Standalone Disclosure Forms. First, the Standalone Disclosure Form is the basis of Count Three of the FAC, in which Milbourne alleges that "JRK violated the FCRA by procuring consumer reports relating to Plaintiff and other Contingency Form Impermissible Use Sub-Class members without first making proper disclosures and receiving written consent in the format required by 15 U.S.C. § 1681b(b)(2)(A)." FAC ¶ 72. Second, and relatedly, Milbourne currently is seeking to certify a sub-class of consumers who signed the Standalone Disclosure Form. (ECF No. 171). Third, Milbourne's memorandum in support of his motion for summary judgment explicitly avers, under the heading "Statements of Undisputed Material Fact," that "JRK also had some class members sign a second form, which its employees referred to as a 'contingency form.'" (ECF No. 163 at 3). That is, Milbourne not only bases his motion for summary judgment in part on the existence of the Standalone Disclosure Form and the fact that some class members signed it, but refers to that reality as an

undisputed material fact. Id. at 3; 11-13. Fourth, Class Counsel acknowledged at the hearing on this motion that Milbourne's pleadings relied on the Standalone Disclosure Forms and that several hundred class members had received and signed the forms.

In sum, Milbourne's claims under § 1681b(b)(2)(A) necessarily depend on the fact all members of the putative "Impermissible Use Sub-Class" received and signed the Standalone Disclosure Form. "[T]he basis of these accusations, therefore, is the existence of such [Standalone Disclosure Forms]." Kaur, 688 F. Supp. 2d at 324. And, it is well-settled that a party "cannot contradict the allegations of her own complaint in order to create a genuine issue of material fact and therefore avoid summary judgment." Ramos v. Am. Airlines, Inc., 2011 WL 5075674, at *3 (W.D.N.C. Oct. 25, 2011) (citing Lucas v. Burnley, 879 F.2d 1240, 1242 (4th Cir. 1989)). Here, Milbourne has gone even further: not only do the arguments advanced in support of his motion to strike contradict the FAC, but they also fatally undermine Milbourne's own motion for summary judgment as well as his motion to amend the class definition. Milbourne cannot possibly claim a violation of the FCRA based on the Standalone Disclosure Form, move for summary judgment on the ground that that form does not comply with the FCRA, ask the Court to certify a sub-class of consumers who signed that form,

14

and admit the existence and authenticity of the form at oral argument, and in the same breath ask the Court to exclude the form for lack of proper authentication.[3]

Therefore, the Court finds that there is sufficient circumstantial evidence to authenticate the Standalone Disclosure Forms.

**B. Hearsay**

Milbourne also contends that the documents appended to Moerschbacher's declarations are inadmissible hearsay, because "whether, when, how and by whom the purported [documents] were obtained and signed, especially as to specific class members, are all out of court statements being offered for the truth of the matter asserted."[4] Id. at 17. Milbourne also adds that the declarations cannot satisfy the business records exception to

---

[3] At one point, it appeared that Milbourne wished to dispute that he signed the Standalone Disclosure Form. See FAC ¶ 19 ("Milbourne does not recognize the signature or recall signing the contingency form..."). However, it appears that Milbourne has since abandoned this argument. See ECF No. 169 at 16 ("Plaintiff does not contest that JRK has a form that contains his signature because the point supports his claim rather than subverting it because he is not attempting to avoid anything based on his inability to recall signing the form.")

[4] Initially, Milbourne also contended that JRK never properly disclosed its intention to rely on the Arbitration Agreements and Standalone Disclosure Forms as required by Fed. R. Civ. P. 26(a)(1). (Pl. Mem. at 19). Milbourne admits that he did receive the documents, but takes issue with JRK's failure to specifically draw Milbourne's attention to them in its discovery responses. However, Class Counsel indicated at oral argument that Milbourne no longer wished to pursue this argument. Therefore, it is not addressed further herein.

15

the hearsay rule because the declarations were prepared by JRK's lawyers, who are "outside participants." Id. at 18-19.

JRK responds that the documents are not hearsay because both the Arbitration Agreements and the Standalone Disclosure Forms "possess independent legal significance," and therefore are not offered "for the truth of the matter asserted." (Def. Mem. in Opp. at 9). That is clearly correct.

### 1. Legal Framework

The hearsay rule prohibits the admission of out of court statements offered for the truth of the matter asserted. However, excepted from the definition of hearsay are communications that have "independent legal significance." See Lorraine, 241 F.R.D. at 566. Such a communication is not offered for the truth of the matter asserted; instead, "the significance of an offered statement lies solely in the fact that it was made." Fed. R. Evid. 801 Advisory Committee's Note. In other words, the hearsay rule is inapplicable "where the out-of-court statement actually 'affects the legal rights of the parties, or where legal consequences flow from the fact that the words were said.'" Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001); see also Bauscher v. Brookstone Sec., Inc., 2012 WL 3100383, at *3 (D. Idaho July 30, 2012) (observing that "a document which itself affects the legal rights of the parties is not introduced

16

for the truth of the matter asserted because the significance of the offered statement lies solely in the fact that it was made") (internal citations and alterations omitted). The Seventh Circuit has framed this distinction as one between "performative and illocutionary utterances[:] [t]he latter narrate, describe, or otherwise convey information, and so are judged by their truth value (information is useful only if true—indeed is information only if it is true); the former—illustrated by a promise, offer, or demand—commit the speaker to a course of action." United States v. Montana, 199 F.3d 947, 950 (7th Cir. 1999).

"In the most general terms, statements of independent legal significance form 'a part of the details of the issue under the substantive law and the pleadings.'...The most common examples are words of contract, marriage promise, notice, insurance proofs and defamation." Jude v. Health Mgmt. Assoc. of W. Virginia, Inc., 187 F.3d 629, 1999 WL 595352, at *2 (4th Cir. Aug. 9, 1999) (citing Wigmore on Evidence § 1770 (3d ed. 1940)). Therefore, "the rule against hearsay does not exclude relevant evidence as to what the contracting parties said or wrote with respect to the making of the terms of an agreement." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 801.11[13] (Joseph M. Mclaughlin, ed., Matthew Bender 2d ed. 2015). Similarly, "the fact of sending a notice is often

essential as a part of the issue, for example, a notice to an indorser, a notice of recission, a notice of rejection of defective goods...in such cases the terms of the notice are receivable under the present principle, without regard to the truth of any assertion that may be contained in it[.]" Wigmore on Evidence § 1770 (3d ed. 1940).

### 2. Analysis

Here, because the Arbitration Agreements and Standalone Disclosure Forms are offered only to show that the class members who signed the documents entered the Arbitration Agreements and received the Standalone Disclosure Forms, respectively, the significance of the documents "lies solely in the fact that [they] were made," and the documents are not hearsay. Fed. R. Evid. 801 Advisory Committee's Note; see also Berkley v. Deutsche Bank Nat'l Trust Co., 2014 WL 1795828, at *8 (W.D. Tenn. May 6, 2014) (holding that notice of default was a "verbal act" and not hearsay); Bauscher, 2012 WL 3100383, at *3 (finding that arbitration agreement was not hearsay because its significance "lies solely in the fact that it was made"); Lorraine, 241 F.R.D. at 566 (noting that evidence concerning making of arbitration agreements is not hearsay when offered to show that the agreement was made).

The Arbitration Agreements are contracts just like any other, to which this rule clearly applies. The only

significance of the Arbitration Agreements, and the sole purpose for which they are offered, is to show that the class members entered the agreements, which specify the forum and manner in which they are permitted to bring claims against JRK. As noted above, "signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance and are not hearsay." Kepner-Tregoe, Inc. v. Leadership Software, Inc., 12 F.3d 527, 540 (5th Cir. 1994). This is because "a contract is a verbal act. It has legal reality independent of the truth of any statement contained in it." Id.

The same is true of the Standalone Disclosure Form. As noted above, the Standalone Disclosure Form is the foundation of Milbourne's claim under § 1681b(b)(2) as set forth in Count Three of the FAC--in fact, the form's only significance in this case is its legal significance. Thus, the Standalone Disclosure Form by nature "affect[s] the rights and liabilities of the parties in this case." Stuart v. UNUM Life Ins. Co. of Am., 217 F.3d 1145, 1154 (9th Cir. 2000). Indeed, Milbourne conceded as much at oral argument. Therefore, the documents appended to Moerschbacher's declarations are not offered to prove their substantive truth and are not hearsay.

## CONCLUSION

For the reasons set forth above, PLAINTIFFS' MOTION TO STRIKE THE DECLARATIONS OF MIKE MOERSCHBACHER (ECF No. 166) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 14, 2016