IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DERRICK A. MILBOURNE,
et al.,

    Plaintiffs,

v.                      Civil Case No. 3:12cv861

JRK RESIDENTIAL AMERICA, LLC,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO COMPEL ARBITRATION OF THE CLAIMS OF CERTAIN PUTATIVE CLASS MEMBERS (ECF No. 153). For the reasons set forth below, the motion will be denied.

## I.  BACKGROUND

On November 30, 2012, Plaintiff Derrick Milbourne ("Milbourne") filed a class action complaint on behalf of himself and all others similarly situated, alleging that Defendant JRK Residential America, LLC ("JRK") had violated the Fair Credit Reporting Act ("FCRA"). (Complaint ("Compl.") (ECF No. 1)). JRK was served with a summons and Complaint on December 2, 2012 (ECF No. 3) but failed to answer or otherwise plead to the Complaint.

The case sat unattended until August 1, 2013 when Milbourne's counsel, having finally observed the default, moved for entry of an order scheduling motions for default, for class certification, and for default judgment (ECF No. 5). The previously somnolent JRK somehow learned of that motion and subsequently secured agreement to be allowed to file a late Answer, pleading excusable neglect for its default. CONSENT MOTION FOR LEAVE TO FILE RESPONSIVE PLEADING (ECF No. 7).

After obtaining leave to file a late response, JRK filed its Answer on August 28, 2013. (ECF No. 12). JRK served two offers of judgment on Milbourne, then filed a motion to dismiss on a theory of mootness (ECF No. 13), which the Court denied after full briefing. (ECF No. 19).

On August 1, 2014, Milbourne filed a motion to certify two classes. (ECF No. 35). After full briefing and a hearing on the matter, the Court ordered the parties to file a stipulation of a proposed revised class definition, (ECF No. 46), and subsequently certified two classes of plaintiffs on October 31, 2014. (ECF No. 56). In its Order certifying these classes, the Court defined the "Impermissible Use Class" as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who applied for an employment position with Defendant or any of its subsidiaries, (b) as part of this application process were the subject of a

2

> consumer report obtained by Defendant during
> the two years proceeding [sic] the filing of
> the Complaint, (c) where Defendant used a
> form to make its disclosures pursuant to 15
> U.S.C. § 1681b(b)(2) that contained a
> release and/or waiver of the signing
> consumer's claims and/or rights.

Id.   The Court also certified an "Adverse Action" subclass, defined as follows:

> All natural persons residing in the
> United States (including all territories and
> other political subdivisions of the United
> States), (a) who applied for an employment
> position with Defendant or any of its
> subsidiaries, (b) as part of this
> application process were the subject of a
> consumer report background check obtained by
> Defendant on or after the date two years
> proceeding [sic] the filing of the
> Complaint, (c) where Defendant's records
> show that the applicant was denied
> employment because of the background check,
> (d) and to whom Defendant did not provide a
> copy of the consumer report and other
> disclosures stated at 15 U.S.C. §
> 1681b(b)(3)(A)(ii) at least five business
> days before the date the employment decision
> is first noted in Defendant's records.

Id.

Meanwhile, JRK filed a motion for summary judgment (ECF No. 47), which the Court denied after full briefing. (ECF No. 68). Millbourne also moved for summary judgment, which was opposed by JRK and ultimately denied. (ECF No. 83). After several weeks of negotiations following the Court's Order granting class certification, the parties agreed on a proposed class notice and

notice plan, which were approved by the Court on March 17, 2015. (ECF No. 70).

The case was set for a jury trial in July 2015. Both parties filed motions in limine, witness lists, exhibit lists, discovery designations, proposed jury instructions, and proposed voir dire questions, as well as oppositions and objections thereto. (ECF Nos. 88-115). On the eve of trial, JRK moved for leave to file a second motion for summary judgment, which was denied after full briefing. (ECF Nos. 86, 118, 127). Shortly thereafter, the Court ordered that discovery be re-opened based on JRK's argument that it had, in fact, provided an FCRA-compliant disclosure and authorization form ("the Standalone Disclosure Form") to some class members. (ECF No. 132). The Court accordingly continued the trial and re-opened discovery for the specific purpose of developing the factual record concerning the Standalone Disclosure Form. (ECF Nos. 132, 138). After several weeks of additional discovery, Milbourne filed a First Amended Complaint on October 26, 2015, alleging a new sub-class definition and adding new class representatives (collectively, "the Named Plaintiffs"). (ECF No. 147).

On November 10, 2015, JRK filed the instant motion, seeking to compel arbitration on the ground that 510 class members had signed binding Mediation and Arbitration Agreements ("Arbitration Agreements" or "the Agreements"). (ECF No. 153).

4

Plaintiffs have opposed the motion, and JRK has replied. (ECF Nos. 165, 168). The matter is therefore now ripe for decision.

## II. DISCUSSION

The Federal Arbitration Act ("FAA") declares that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-a-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010). Like other contracts, therefore, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

The FAA reflects a strong congressional preference for enforcing arbitration. Under the FAA, courts must refer disputes to arbitration where: (1) a valid agreement to arbitrate exists; and (2) the dispute falls within the scope of the agreement to arbitrate. Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 563 (4th Cir. 2015), petition for cert. filed, -- U.S.L.W. -- (U.S. Dec. 2, 2015) (No. 15-719). Moreover, "any doubts concerning the scope of

5

arbitrable issues should be resolved in favor of arbitration." Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006).

However, the presumption in favor of arbitrability is not applied "to resolve questions of the arbitrability of arbitrability issues themselves." Carson v. Giant Food, Inc., 175 F.3d 325, 328-29 (4th Cir. 1999) (internal citation and quotation marks omitted). "[B]ecause the legal predicate of compulsory arbitration is contractual consent, courts can require arbitration only of those disputes which the parties have agreed to arbitrate." Hendrick v. Brown & Root, Inc., 50 F. Supp. 2d 527, 532 (E.D. Va. 1999) (citing Gateway Coal Co. v. United Mine Workers of Am., 414 U.S. 368, 374 (1974)). A court resolving an arbitrability dispute must engage in a two-step inquiry. See Peabody Holding Co., LLC v. United Mine Workers of Am., Intern. Union, 665 F.3d 96, 102 (4th Cir. 2012). First, the court must "determine who decides whether a particular dispute is arbitrable: the arbitrator or the court." Id. Second, only if the court determines that it "is the proper forum in which to adjudicate arbitrability" does the court "then decide whether the dispute is, in fact, arbitrable." Id.

Thus, the threshold question of whether a particular dispute falls within the scope of an arbitration agreement is presumptively a matter for "judicial determination," and "[c]ourts should not assume that the parties agreed to arbitrate

arbitrability unless there is 'clear and unmistakable' evidence that they did so." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (quoting AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 648 (1986) (internal alteration omitted)).   The Fourth Circuit has explained that "the 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." Peabody Holding Co., 665 F.3d at 102.

On those basic principles, the parties agree.   Furthermore, there is no dispute that the FAA applies to the Arbitration Agreement proffered by JRK, nor that the Arbitration Agreement substantively encompasses the FCRA claims at issue here.[1]   The Arbitration Agreement provides, in pertinent part:

> As a condition of your employment at JRK, you agree that any dispute or claim covered by this Agreement and arising out of or relating to your employment relationship with JRK or the termination of that relationship shall first be brought to the JRK Human Resources Management

---

[1] Although the record is incomplete on this issue, the Court notes that the enforceability of the Arbitration Agreements is questionable, because all of the 510 Arbitration Agreements provided by JRK (ECF Nos. 155-161) are dated at least several months after the filing of the original Complaint, and many are dated in 2014, well over a year after the commencement of this action.   See ECF No. 155, Declaration of Michael Moerschbacher. Moreover, it is well-settled that an arbitration agreement will not operate retroactively to cover pre-existing disputes in the absence of a clear intent to do so.   Hendrick, 50 F. Supp. 2d at 537-539.   However, the Court need not reach that issue, because even assuming, arguendo, that the Agreements are enforceable, the Court finds that the issue of waiver is dispositive.

7

> channels...And then, if not resolved, must be submitted for non-binding mediation before a third-party neutral and (if necessary) for final and binding resolution by a private and impartial arbitrator, to be jointly selected by you and JRK.
>
> a. <u>Covered Claims.</u> This Agreement to submit to mediation and (if necessary) binding arbitration covers:
> i.   Any dispute as to whether a matter is covered by this agreement;
> ii.  Any claim that could be asserted in court or before an administrative agency for which the employee has an alleged cause of action, including without limitation...violation of any federal, state or other governmental law, statute, regulation, or ordinance, and whether based on statute or common law...
>
> ***
>
> Waiver of Class and Representative Actions: Arbitration shall proceed solely on an individual basis without the right for any claims to be arbitrated on a class action basis or on basis involving claims brought in a purported representative capacity on behalf of others. This means that the Employee is waiving any right to bring a class or representative action against the Employer.

(ECF No. 155-1, at 3-4).[2]

However, the parties disagree on the application of the governing principles to this case. Plaintiffs contend that JRK

---

[2] Plaintiffs have moved to strike Michael Moerschbacher's ("Moerschbacher") declaration, to which the 510 signed arbitration agreements are appended, on the ground that Moerschbacher does not have personal knowledge sufficient to authenticate the Arbitration Agreements. (ECF No. 166). For reasons set forth in a separate Memorandum Opinion, the declaration and the attached Arbitration Agreements will be considered.

has effectively waived its right to compel arbitration by vigorously pursuing litigation in this Court for almost three years before raising the issue. (Plaintiffs' Memorandum in Opposition to Defendant's Motion to Compel Arbitration ("Pl. Mem. in Opp.," ECF No. 165)). JRK responds that, regardless of whether JRK has waived its right to arbitrate, the issue of waiver should be decided by the arbitrator. (Defendant's Reply Memorandum in Support of its Motion to Compel Arbitration of the Claims of Certain Putative Class Members ("Def. Reply," ECF No. 168) at 4-7). Second, JRK argues that, because none of the named Plaintiffs signed an arbitration agreement, they do not have standing to contest JRK's motion. Id. at 7-8. Third, JRK contends that it has not waived its right to compel arbitration because: (1) JRK could not have sought to compel arbitration until the class was certified; and (2) Plaintiffs have suffered no prejudice, because many class members, including Milbourne himself, did not sign an arbitration agreement, and therefore "[n]one of the litigation that has occurred to date could have been avoided by JRK having invoked the arbitration agreement earlier." Id. at 9-10.

For the following reasons, the Court concludes that waiver is an issue to be decided by the Court, that the Named Plaintiffs have standing to oppose JRK's motion, and that JRK has waived its right to arbitration.

## A. **Waiver Is An Issue For The Court**

First, JRK argues that the issue of whether JRK has waived its right to arbitration should be decided by an arbitrator, because the Arbitration Agreements clearly evince an intent to commit questions of "arbitrability" to arbitration. (Defendant's Memorandum of Law in Support of Defendant's Motion to Compel Arbitration of the Claims of Certain Putative Class Members ("Def. Mem.," ECF No. 154) at 4-7; Def. Reply at 4-6). In support of this argument, JRK points to the following language in the Arbitration Agreement: "This Agreement to submit to mediation and (if necessary) binding arbitration covers: i. Any dispute as to whether a matter is covered by this Agrmeent." (Def. Mem. at 6 (quoting Moerschbacher Decl. ¶ 4, Ex. 1)). JRK also notes that the Arbitration Agreement contemplates that "arbitration will be conducted under the Employment Dispute Resolution Rules of the AAA [American Arbitration Association]," which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (Def. Mem. at 6). Although the Fourth Circuit has not addressed the issue, several courts, including this one, have held that incorporation of the AAA rules "clearly and unmistakably" delegates issues of arbitrability to the arbitrator. See United States ex rel.

Beauchamp v. Academi Training Ctr., Inc., 2013 WL 1332028, at
*4-5 (E.D. Va. Mar. 28, 2013).

JRK does not dispute that waiver is presumptively an issue
for the court, absent "clear and unmistakable" evidence to the
contrary.   See, e.g., Robinson v. Taboo Gentlemen's Club, LLC,
2015 WL 3868531, at *5 (N.D.W. Va. June 23, 2015); Karnette v.
Wolpoff & Abramson, LLP, 444 F. Supp. 2d 640, 644 (E.D. Va.
2006).   Therefore, the Court turns to whether JRK's Arbitration
Agreements contain "clear and unmistakable" evidence that the
parties intended the issue of waiver to be decided by an
arbitrator.

The analysis will assume, without deciding, that the above-
quoted language in the Agreements satisfies the "exacting"
standard necessary to delegate questions of arbitrability to
arbitration.   However, it does not follow, as JRK posits, that
the arbitrator also must decide the issue of waiver.   JRK's
conclusion rests on the flawed assumption that waiver is
necessarily an issue of "arbitrability."   To the contrary, the
Fourth Circuit has clearly stated that "[w]hen deciding
arbitrability, the court only determines whether, as a matter of
contract between the parties, the underlying dispute should be
resolved in court or by arbitration."   Whiteside v. Teltech
Corp., 940 F.2d 99, 102 (4th Cir. 1991) (emphasis added).   The
authority cited by JRK uniformly applies this substantive

11

definition.   See, e.g., Carson, 175 F.3d at 329 (interpreting "arbitrability" to mean "which claims are arbitrable").

The Court of Appeals for the First Circuit, in a persuasive rejection of the position urged by JRK here, explained the importance of this distinction:

> Arbitrability itself encompasses a variety of possible meanings, but the most obvious meaning focuses on certain substantive issues, and particularly the question of whether a particular kind of dispute at issue falls within the scope of the arbitration clause.  Most cases that discuss arbitrability focus on these substantive issues...The context of the agreement suggests that this sort of substantive meaning is intended for the term 'arbitrability' here; the reference to 'arbitrability' is surrounded by references to which types of claims should be arbitrated and which should not be.  We cannot say that the use of the term here evinces a clear and unmistakable intent to have waiver issues decided by the arbitrator.  There are no references to waiver or similar terms anywhere in the arbitration agreement.  Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so.

Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15 (1st Cir. 2005).

The same is true here.  The provision in the Arbitration Agreement committing to arbitration "[a]ny dispute as to whether a matter is covered by this Agreement" demonstrates, at most, the parties' intent to arbitrate disputes concerning the

substantive scope of the Agreement. This provision is found immediately beneath the heading "Claims Covered," and is "surrounded by references to which types of claims should be arbitrated and which should not be," Marie, 402 F.3d at 15.

Here, the question is not whether the "underlying dispute" is within the scope of the Arbitration Agreement, but rather, whether JRK has foregone its right to invoke the Agreement at all, a point on which the Agreement is silent. The Agreement's silence on this issue falls far short of the "clear and unmistakable" intent necessary to refer the determination of waiver to an arbitrator. See, e.g., Hendrick, 50 F. Supp. 2d at 538 (noting that "'[t]he presumption in favor of arbitration i[s] not a mindless mantra,' which may be invoked to set at naught well-established rules of contract construction such as the fundamental precept that courts may not read into a contract that to which the parties clearly did not agree." (internal citation omitted; alteration in original)).

This conclusion is further supported by Section 3 of the FAA, which provides that a party seeking to pursue arbitration is only entitled to a stay if the party is not "in default in proceeding with such arbitration." 9 U.S.C. § 3 (emphasis added). That language teaches that courts, not arbitrators, will decide whether the party seeking arbitration is "in default," (i.e., whether the party has waived its contractual

13

right) because default bars the door to arbitration *ab initio*. Thus, the threshold issue of default must be decided by the court, not an arbitrator.[3]

Finally, the "exceptional[] inefficien[cy]" that will necessarily result from sending this question to arbitration supports the conclusion that the parties intended the court, not the arbitrator, to decide the issue of waiver. See Marie, 402 F.3d at 13-14 (observing that "[i]f the arbitrator were to find that the defendant had waived its rights to arbitrate, then the case would inevitably end up back before the district court with the plaintiff again pressing his claims. The case would have bounced back and forth between the tribunals without making any progress."). Allowing an arbitrator to decide the issue of waiver, and thereby further delaying the resolution of this action, which has already been pending in this Court for over three years, contravenes the key purpose of the FAA, which is to permit speedy and efficient resolution of disputes. See, e.g., Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218-220 (1985). Therefore, the issue of waiver will be decided by the Court.

---

[3] It is true that JRK is seeking to compel arbitration, pursuant to § 4, rather than seeking a stay under § 3, but the Supreme Court has long cautioned courts to interpret sections 3 and 4 of the FAA together. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967).

### B. Milbourne Has Standing To Litigate This Motion On Behalf Of The Class

Next, JRK contends that Milbourne does not have standing to contest JRK's motion, because Milbourne himself did not sign an Arbitration Agreement. (Def. Reply at 7).[4]  In other words, JRK argues, "Milbourne is not representative of the 510 individuals who signed these agreements because he did not sign one." Id.

Although it appears that no court has confronted this question in the post-certification context, Newburg on Class Actions is instructive on this point.  Newberg points out that, although the constitutional requirement of standing and the statutory prerequisites of Rule 23(a) "appear related as they both aim to measure whether the proper party is before the court to tender the issues for litigation," "whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions."  Alba Conte & Herbert Newberg, Newberg on Class Actions § 2.6 (5th ed. 2013) (hereafter "Newberg § ___"); see also 7B C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 1785.1, p. 141 (noting that "whether [a class

---

[4] JRK failed to raise this point in its opening brief.  However, because standing is a jurisdictional issue, the Court addresses this argument nonetheless.

representative] may be allowed to present claims on behalf of others...depends not on standing, but on an assessment of typicality and adequacy of representation.").

In other words, where the named plaintiff has shown that there is an actual, justiciable controversy between himself and the defendant, differences between the claims and defenses available to the named plaintiff and to the class bear on the questions of typicality[5] and adequacy of representation[6] under Fed. R. Civ. P. 23, rather than standing. See, e.g., Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000); Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998); Renton v. Kaiser Found. Health Plan, Inc., 2001 WL 1218773, at *7 (W.D. Wash. Sept. 24, 2001). Rule 23(a), rather than Article III, is the appropriate rubric for

---

[5] The requirement of "typicality" mandates that "the representative party may proceed to represent the class only if the plaintiff establishes that his claims or defenses are typical of the claims or defenses of the class." Deiter v. Microsoft Corp., 436 F.3d 461, 467 (4th Cir. 2006) (emphasis in original). Typicality does not require "that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned. But when the variation in claims strikes at the heart of the respective causes of action, [courts] have readily denied class certification." Id.

[6] The adequacy of representation prerequisite requires the Court to be satisfied that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This standard is met if "the named plaintiff has interests common with, and not antagonistic to, the [c]lass' interests; and...the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." In re Se. Hotel Props. Ltd. P'ship Investor Litig., 151 F.R.D. 597, 606-07 (W.D.N.C. 1993).

evaluating these differences because, "while standing doctrine is primarily concerned with ensuring that a real case or controversy exists, Rule 23(a)'s requirements are designed precisely to address concerns about the relationship between the class representative and the class." Newberg § 2.6.

Accordingly, the majority of federal courts have treated the issue of whether arbitration may be available as to some class members (whether named or not) as relevant to the class certification analysis under Fed. R. Civ. P. 23, rather than standing. See, e.g., Waller v. Hewlett-Pckard Co., 295 F.R.D. 472, 479 (S.D. Cal. 2013); Coleman v. General Motors Acceptance Corp., 220 F.R.D. 64, 90-92 (M.D. Tenn. 2004); Collins v. Int'l Dairy Queen, Inc., 168 F.R.D. 668 (M.D. Ga. 1996). That approach is clearly correct, because the issue of whether some class members may be subject to the defense of mandatory arbitration does not alter the fact that there is an actual controversy between the defendant and the class members--it merely determines the forum in which that controversy will be decided.

The fact that none of the three Named Plaintiffs signed an arbitration agreement to which some class members may be subject admittedly affects the typicality of the Named Plaintiffs' claims and their ability to adequately and fairly represent the class as a whole. However, that fact does not deprive the Named

17

Plaintiffs of standing to litigate on behalf of absent class members, because JRK does not (and cannot) dispute that each class member, including the Named Plaintiffs, has an actual, justiciable claim against JRK under the FCRA. JRK cannot sidestep its failure to raise this issue at the class certification stage by belatedly attempting to frame the issue as one of standing.[7] Thus, the fact that Milbourne did not sign an Arbitration Agreement bears on the typicality of his claims and his adequacy as class representative, not whether he has standing to contest this motion on behalf of absent class members. Therefore, the Court proceeds to the issue of whether JRK has waived its right to arbitration.

### C. JRK Has Waived Its Right To Arbitration

"The right to arbitration, like any other contract right, can be waived." Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo., 614 F.2d 698, 702 (10th Cir. 1980); see also Maxum Founds., Inc. v. Salus Corp., 779 F.2d 974, 981 (4th

---

[7] More fundamentally, this position is contrary to the axiomatic tenet of the adversarial system that a party has the right to oppose motions properly served upon it. As JRK would have it, JRK is free to compel hundreds of class members to arbitrate their claims by serving a motion to compel arbitration on the class representative, but no member of the class may contest the motion because its representative did not sign an arbitration agreement. The Court cannot accept such a result. This argument is particularly disingenuous in light of the fact that JRK apparently did not begin requiring its employees to sign Arbitration Agreements until several months after Milbourne's original Complaint was filed.

Cir. 1985).  "A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."  Maxum Founds., 779 F.2d at 981.

However, in light of the strong federal policy favoring arbitration, the Fourth Circuit "will not lightly infer the circumstances constituting waiver."  Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996).  "The movant's participation in litigation activity alone will not suffice [to constitute waiver], as the dispositive question is whether the plaintiffs have suffered any actual prejudice."  Patten, 380 F.3d at 206.  Specifically, neither delay alone, nor "the filing of an answer, counterclaim, or a declaratory judgment action, nor responding to motions filed by the non-movant, nor pursuing discovery that does not prejudice the non-movant, nor decisions on non-dispositive motions such as unrelated state-law claims or discovery challenges, will, without a greater showing of prejudice, constitute a waiver." Karnette, 444 F. Supp. 2d at 648 (internal citations omitted).

Nonetheless, "delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice."  MicroStrategy, Inc. v. Lauricia, 268 F.3d 244, 249 (4th Cir. 2001).  In other words, "where a party fails to

demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc., 817 F.2d 250, 252 (4th Cir. 1987) (quoting Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1161 (5th Cir. 1986)). In Fraser, the Fourth Circuit found that the plaintiff was prejudiced where he "had to respond to a number of potentially damaging motions, including a motion for partial summary judgment and three motions to dismiss." Id. The district court had granted in part Merrill Lynch's motion for summary judgment and, due to delays in pre-trial proceedings, had reset trial dates twice before Merrill Lynch filed the motion to compel arbitration. Id. On those grounds, the Court of Appeals held that Fraser had been prejudiced and, therefore, Merrill Lynch had waived its right to move to compel arbitration. Id.

Here, JRK filed a motion to dismiss and a motion for summary judgment and requested leave to file a second motion summary judgment, which was denied after full briefing, in addition to vigorously opposing Plaintiffs' motion for summary judgment. JRK also filed yet another motion for summary judgment contemporaneously with the instant motion. Thus, JRK

20

has repeatedly sought rulings on the merits of Plaintiffs' claims and repeatedly forced Plaintiffs to respond to a full gamut of potentially dispositive motions. "While responding to and prevailing on a dispositive motion on the merits is not necessarily dispositive of the prejudice question, it also strongly leans in favor of a finding of actual prejudice." Barbagallo v. Niagara Credit Sol., Inc., 2012 WL 6478956, at *3 (D. Md. Dec. 4, 2012); see also Fraser, 817 F.2d at 252; Karnette, 444 F. Supp. 2d at 649.

Furthermore, both parties have conducted extensive discovery, both before and after Plaintiffs' motion for class certification was granted, at great expense to both sides. JRK agreed to a proposed class notice, which was mailed to over a thousand class members. JRK also engaged in extensive preparation for trial, including filing proposed jury instructions, voir dire questions, and numerous motions in limine, in addition to various objections and oppositions to Plaintiffs' pretrial documents. JRK thus enjoyed a comprehensive preview of Plaintiffs' trial strategy.

Most tellingly, JRK knowingly failed to mention the arbitration issue in its opposition to Plaintiffs' motion for class certification.[8] It is well-settled that "the class

---

[8] There is no dispute that JRK has been aware of the existence of the Arbitration Agreements since the beginning of this

21

certification decision is generally the most important aspect of a class action case. If a court certifies the case to proceed as a class action, the case's dynamics change dramatically[.]" Newberg § 7.18. "As Newberg makes clear, the class certification decision is, as a practical matter, of dispositive consequence, notwithstanding that it is not dispositive in the same way as is a summary judgment motion." Soutter v. Equifax Info. Servs., 299 F.R.D. 126, 130-131 (E.D. Va. 2014).

Although JRK vehemently contested predominance and Milbourne's adequacy as class representative in its opposition to Plaintiffs' motion to certify the class, not once did JRK mention the existence of the Arbitration Agreements or Milbourne's failure to sign one. (ECF No. 38). Therefore, Plaintiffs were significantly prejudiced by not being able to appropriately address the issue at that time. See In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig., 790 F.3d 1112, 1118 (10th Cir. 2015) ("Cox II"), cert. denied sub nom. Cox Commc'ns v. Healy, -- S. Ct. --, 2016 WL 100386 (Jan. 11, 2016).

Now, after briefing and discovery are complete, and after Plaintiffs have successfully prevailed on several potentially

---

litigation. See ECF No. 165-1, Deposition of Michael Moerschbacher, at 118:16-119:11 ("Q: Why didn't you pull out the mediation and arbitration agreements earlier in this case? A: I wasn't asked to. Q: But you've known about it the whole time, right, your company has? A: Yes.").

dispositive motions, including their motion for class certification, JRK seeks to exert additional leverage on Plaintiffs by obtaining a redo on the merits, based on information that it has known throughout the litigation, but has not disclosed to the Plaintiffs or to the Court, and without a shadow of justification for the delay in raising the issue. Courts have unanimously denounced this "heads I win, tails you lose" strategy, whereby a party, having learned that the district court is not receptive to its arguments, attempts to overpower the opposing party by forcing it to re-litigate the issue in arbitration. See, e.g., Cox II, 790 F.3d at 118-1119; In re Mirant Corp., 613 F.3d 584, 590 (5th Cir. 2010); Hooper v. Advance Am., Cash Advance Ctrs. Of Missouri, Inc., 589 F.3d 917, 922 (8th Cir. 2009); Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 3931 (7th Cir. 1995). Thus, taken together with JRK's three-year delay in asserting its right to arbitrate, the cumulative extent of JRK's trial-oriented activity demonstrates that Plaintiffs have carried the "heavy burden" of showing actual prejudice in this case.[9]

---

[9] JRK implies that because some class members, including Milbourne, did not sign Arbitration Agreements and therefore must bring their claims in federal court, Milbourne cannot demonstrate actual prejudice. (Def. Reply at 9-10). This is simply not the standard. No court has ever held or even implied that a finding of actual prejudice requires a showing that some part of the litigation could otherwise have been avoided. The circumstances of this litigation are more than sufficient to

Moreover, as the United States Court of Appeals for the Tenth Circuit aptly pointed out in affirming the district court's denial of a motion to compel arbitration under essentially identical circumstances:

> Perhaps the greater prejudice from [the defendant's] actions, however, flows to the court and the integrity of the judicial process. As discussed supra, the district court engaged in extensive Rule 23 analysis, resolved numerous motions, and adjudicated discovery disputes. It invested a copious amount of judicial resources in this analysis at great expense to the public...Nothing in the FAA requires a district court to stand idly by while a party misleads that court through its material omissions and delays and needlessly extends the litigation process through a willful attempt to play 'hide the ball.'

Cox II, 790 F.3d at 1118. As the district court found in that case, and the Court of Appeals agreed, "[t]o argue for arbitration at this stage is without question inefficient. Indeed, Defendant's delay runs afoul of the Supreme Court's holding that '[a] prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" In re Cox. Enters., Inc. Set-Top Cable Television Box Antitrust Litig., 2014 WL 3567629, at *3 (W.D. Okla. July 18, 2014) ("Cox I") (quoting Preston v. Ferrer, 552 U.S. 346, 357 (2008)).

---

demonstrate actual prejudice, regardless of the extent to which the litigation might have proceeded in a parallel manner had JRK moved to compel arbitration in a timely fashion.

JRK, like the defendant in Cox, argues that, "because Milbourne did not sign an arbitration agreement, JRK could not have sought to compel arbitration until--at the earliest--after the Court certified the classes at the end of 2014." (Def. Reply at 9). JRK correctly points out that a variety of authorities (although none binding on this Court) have held that a court may not compel putative class members, not yet within the court's jurisdiction, to arbitrate their claims. See, e.g., In re Checking Account Overdraft Litig., 780 F.3d 1031, 1036 (11th Cir. 2015).

However, in every such case, it was clear that "the defendant was raising the issue early in the case. It is this distinction that is critical." Cox I, 2014 WL 3567629, at *3. "The court may not have been able to compel arbitration of absent class members at that time, but [the defendant's] assertion or mention of its right at that point would have fundamentally changed the course of the litigation, ensured a more expedient and efficient resolution of the trial, and prevented [the defendant's] improper gamesmanship." Cox II, 790 F.3d at 1119 (emphasis in original).

The Court agrees that, although putative class members, not yet within the Court's jurisdiction, could not have been compelled to arbitrate prior to the certification decision, that fact does not excuse JRK's three-year delay in bringing the

25

issue to Plaintiffs' and the Court's attention.   Indeed, not only did JRK decline to raise the arbitration issue "early in the case," but it allowed over a year to go by after Plaintiffs prevailed on their motion for class certification before moving to compel arbitration, during which time Plaintiffs incurred substantial expense conducting additional discovery, preparing an Amended Complaint, and responding to JRK's latest round of pre-trial motions.   JRK's timely assertion of its right to arbitration would have significantly changed both Plaintiffs' and the Court's approach to this litigation before, during, and after the class certification process.

Therefore, the record establishes that JRK has waived any right it may have to arbitration of Plaintiffs' dispute against it for violations of the FCRA.

**CONCLUSION**

For the reasons set forth above, DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 153) will be denied.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March _14_, 2016