IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DERRICK A. MILBOURNE,
on his own behalf and on
behalf of those similarly
situated,

     Plaintiff,

v.                         Civil Action No. 3:12cv861

JRK RESIDENTIAL AMERICA, LLC,

     Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT (ECF No. 148). For the reasons set forth herein, the motion will be granted in part and denied in part.

**BACKGROUND**

**A.   Class Claims**

On October 26, 2015, Plaintiffs Derrick A. Milbourne ("Milbourne"), Timothy Robins ("Robins"), and Samantha Churcher ("Churcher") (collectively, "Named Plaintiffs") filed a First Amended Complaint ("FAC", ECF No. 147) on behalf of themselves and all others similarly situated, alleging that Defendant JRK Residential America, LLC ("JRK") violated two sections of the Fair Credit Reporting Act ("FCRA"). In Count One, the Named

Plaintiffs allege that the disclosure form JRK provided to all potential employees ("the Standard Disclosure Form") violated 15 U.S.C. § 1681b(b)(3)(A), which requires that:

> In using a consumer report[1] for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

In Count Two, the Named Plaintiffs allege that JRK's use of the Standard Disclosure Form also violated 15 U.S.C. § 1681b(b)(2)(A), which provides that:

> A person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

---

[1] The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility for:...employment purposes[.]"  15 U.S.C. § 1681a(d).

Count Three, filed on behalf of a putative subclass of the class represented in Count Two, alleges that a second disclosure form that JRK provided to some potential employees ("the Standalone Disclosure Form" or "the contingency form") also violated § 1681b(b)(2)(A).

**B.   Factual And Procedural History**

**1.   The Standard Disclosure Form**

In November 2010, Milbourne applied for and conditionally received a job with JRK pending satisfactory completion of a background check.   FAC ¶¶ 7-9.   Before JRK obtained a consumer report on Milbourne, he signed two disclosure forms.   FAC ¶¶ 15-18.   The first form, the "Standard Disclosure Form," provides in part:

> I certify that the information contained herein is true and understand that any falsification will result in the rejection of my application or termination of my employment.   I also understand that the requested information is for the sole purpose of conducting a background investigation which may include a check of my identity, work and credit history, driving records, and any criminal history which may be in the files of any state or local criminal agency...
>
> <u>I hereby authorize this company, its corporate affiliates, its employees, its authorized agents, and representatives...to verify all information contained in this form or in my application and to inquire into any character, general reputation, personal characteristics, and mode of living...I hereby release this company, its</u>

> corporate affiliates, its employees, its
> authorized agents and representatives and
> all others involved in this background
> investigation from any liability in
> connection with any information they give or
> gather and any decisions made concerning my
> employment based on such information. I
> understand that any offer of employment I
> may receive is contingent upon the
> successful completion of the background
> investigation. I further understand that I
> have a right, under Section 606(B) of the
> Fair Credit Reporting Act, to make a written
> request to this company within a reasonable
> period of time for a complete and accurate
> disclosure of the nature and scope of the
> investigation requested.

ECF No. 49-2 at 2 (emphasis added). Robins and Churcher also signed the Standard Disclosure Form when they applied for employment with JRK in April 2011 and September 2013, respectively. FAC ¶¶ 27-31.

On October 31, 2014, the Court certified two classes based on the alleged deficiencies of the Standard Disclosure form. First, the Court certified an "Impermissible Use Class," defined as follows:

> All natural persons residing in the United
> States (including all territories and other
> political subdivisions of the United
> States), (a) who applied for an employment
> position with Defendant or any of its
> subsidiaries, (b) as part of this
> application process were the subject of a
> consumer report obtained by Defendant during
> the two years proceeding [sic] the filing of
> the Complaint, (c) where Defendant used a
> form to make its disclosures pursuant to 15
> U.S.C. § 1681b(b)(2) that contained a

4

> release and/or waiver of the signing
> consumer's claims and/or rights.

(ECF No. 56). The Court also certified an "Adverse Action"

subclass, defined as follows:

> All natural persons residing in the United
> States (including all territories and other
> political subdivisions of the United
> States), (a) who applied for an employment
> position with Defendant or any of its
> subsidiaries, (b) as part of this
> application process were the subject of a
> consumer report background check obtained by
> Defendant on or after the date two years
> proceeding [sic] the filing of the
> Complaint, (c) where Defendant's records
> show that the applicant was denied
> employment because of the background check,
> (d) and to whom Defendant did not provide a
> copy of the consumer report and other
> disclosures stated at 15 U.S.C. §
> 1681b(b)(3)(A)(ii) at least five business
> days before the date the employment decision
> is first noted in Defendant's records.

Id.

On March 11, 2015, the Court denied JRK's motion for

summary judgment on Milbourne's claims with respect to the

Standard Disclosure Form. (ECF No. 68). JRK does not now seek

summary judgment on the Standard Disclosure Form.

**2.   The Standalone Disclosure Form**

After extensive discovery, it became apparent that

Milbourne, along with 558 other class members[2] (not including

---

[2] A total of 650 class members signed the Standalone Disclosure
Form. However, JRK revealed at oral argument that 91 class
members actually signed the Standalone Disclosure Form after JRK

Robins or Churcher), also signed a second disclosure form before JRK obtained their background checks ("the contingency form" or "the Standalone Disclosure form"). That form provides:

> I understand that my employment with JRK is subject to the successful clearance of my background report to acceptable company standards. The results of my background report will be reviewed and evaluated by JRK and JRK, in its sole discretion, will determine whether it is approved.

ECF No. 150, Exs. 1–650.[3]

Milbourne now alleges that this form also failed to provide the notice required by 15 U.S.C. § 1681b(b)(2)(A). JRK has moved for summary judgment on Count III, which challenges the sufficiency of the Standalone Disclosure Form.[4] For the reasons set forth below, JRK's motion will be granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine issue as to any material fact in the case such that the moving party

---

had already procured their background reports. (Transcript of February 26, 2016 Hearing ("Hrg. Tr.") at 21–22). JRK concedes that it is not entitled to summary judgment as to those 91 class members. Id. Therefore, JRK's motion will be denied as to those 91 class members.

[3] Milbourne has filed a motion to strike these documents and the declaration to which they are attached. (ECF No. 166). For reasons set forth in a separate Memorandum Opinion, the declaration and documents are admissible and will be considered.

[4] Milbourne has also filed a second summary judgment motion, seeking summary judgment on all counts of the FAC. (ECF No. 162). Milbourne's motion will be addressed in more detail in a separate Memorandum Opinion.

is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  Once the moving party properly files and supports its motion for summary judgment, the opposing party must show that a genuine issue of fact exists.  See Matsushita Elec. Indus. Co v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case.  See Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  A genuine issue of material fact only exists when the opposing party has presented sufficient evidence upon which a reasonable jury could return a verdict in its favor.  Id.  This means that "summary judgment is only appropriate when, after discovery, the non-moving party has failed to make a 'showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  BM v. Chesterfield County School Dist., 2010 WL 145661, at *1 (E.D. Va. 2010) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  In considering motions for summary judgment, the court must consider the evidence in the light most favorable to the non-moving party.  Smith v. Virginia Commonwealth Univ., 84 F.3d 672, 675 (4th Cir. 1985).

## DISCUSSION

JRK argues that it is entitled to summary judgment on Count Three of the FAC for three reasons.  First, JRK argues that the

7

disclosure in the Standalone Disclosure Form satisfies §
1681b(b)(2) as a matter of law:  that is, the disclosure is
"clear and conspicuous," the document "consists solely of the
disclosure," and the form "clearly revealed that a background
report--a type of consumer report--would be obtained for
employment purposes."  (Memorandum of Law in Support of
Defendant's Second Motion for Summary Judgment ("Def. Mem.", ECF
No. 149) at 4).  Second, JRK argues that, even if the Standalone
Disclosure Form did not comply with the FCRA, there is no
evidence that the violation was "willful."  Id. at 8-9.
Finally, JRK argues that Milbourne has no standing to bring any
of his claims because he has suffered no cognizable injury, and
therefore, his claims should be dismissed.  Id. at 10-12.  These
arguments will be addressed in turn.

**A.  Milbourne Has Standing To Pursue His Claims.**

As a threshold matter, JRK contends that Milbourne lacks
standing to pursue his claims because he has failed to allege a
cognizable injury.  (Def. Mem. at 10-12).[5]  JRK points out that
Milbourne "admitted in his deposition that he knew JRK would
obtain his background report" and that he had no objection to

---

[5] JRK places this argument at the end of its brief, but because
standing is a jurisdictional issue, the Court addresses standing
before proceeding to the merits of the motion.  And, because the
issue is a jurisdictional one, the Court must address it,
notwithstanding the previous denial of JRK's motion for summary
judgment on the Standard Disclosure Form.

the procurement of the background report, and therefore, Milbourne suffered no actual injury. Rather, says JRK, Milbourne's FCRA claims allege no more than "the mere 'deprivation of [a] statutory right,'" which is constitutionally insufficient to confer standing. (Def. Mem. at 11 (quoting David v. Alphin, 704 F.3d 327, 338-39 (4th Cir. 2013)).

Plaintiffs respond that "every member of the Impermissible Use Class, by definition, is alleged to have suffered the same concrete and particularized injury: the denial of specific information to which they were entitled under the FCRA." (Plaintiff's Memorandum in Opposition to Defendant's Second Motion for Summary Judgment ("Pl. Mem. in Opp.", ECF No. 170) at 4). Plaintiffs add that this "doctrine of informational injury is well established" within the Fourth Circuit and by the Supreme Court and point out that, in fact, this Court recently rejected the same argument that JRK now urges in Manuel v. Wells Fargo Bank, Nat'l Ass'n, 2015 WL 4994538, at *5 (E.D. Va. Aug. 19, 2015). Plaintiffs are correct.

The standing requirement is met only where three conditions are satisfied: "(1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury." Miller v. Brown, 462 F.3d 312, 316 (4th

Cir. 2006) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-561 (1992)).   As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements. <u>Lujan</u>, 504 U.S. at 560.

Milbourne has sufficiently alleged an injury-in-fact and thus has standing to pursue his § 1681b claims in federal court. JRK does not distinguish (nor could it) the Court's recent rejection of an identical argument by a defendant contesting identical FCRA claims:

> § 1681b(b)(2)(A) guarantees consumers a certain kind of disclosure before a person procures a consumer report containing their information. Specifically, it promises a consumer "a clear a[nd] conspicuous disclosure...made in writing...before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes."
>
> In this case, Manuel is alleging that the disclosure that Wells Fargo provided to him was not "clear and conspicuous".... Thus, Manuel is clearly alleging an informational injury – while he did receive a type of information, it was not the type of information that he was entitled to under the FCRA. "Under the [FCRA], consumers have the right to receive certain information from consumer reporting agencies," including a clear and conspicuous disclosure. <u>Dreher</u> [v. Experian Info. Sol., Inc., 71 F. Supp. 3d 572, 577 (E.D. Va. 2014)]. Manuel is alleging that Wells Fargo failed to provide such a disclosure.
>
> Those allegations are sufficient to allege an injury-in-fact and create standing to sue in federal court for two reasons. First, as explained in <u>Dreher</u>, "Congress created a

> legal right under the [FCRA], the violation
> of which constituted an injury sufficient
> for constitutional standing purposes."
> [Id. at 578.]  It is well-established that
> "Congress may create a statutory right or
> entitlement the alleged deprivation of which
> can confer standing to sue even where the
> plaintiff would have suffered no judicially
> cognizable injury in the absence of the
> statute."  Warth [v. Seldin], 422 U.S.
> [490,] 514 (1975).  Congress has clearly
> created rights on the individual consumer
> level through the FCRA and has also created
> a private right of action through which
> individual consumers can enforce their
> rights.  See 15 U.S.C. § 1681n(a) ("Any
> person who willfully fails to comply with
> any requirement imposed under this
> subchapter with respect to any consumer is
> liable to that consumer...").
>
> Second, contrary to Wells Fargo's view,
> David does not control this case because its
> holding speaks only to the particularities
> of the ERISA statute and the facts presented
> in that decision...

Manuel, 2015 WL 4994538, at *6-7.

Milbourne, like Manuel, has asserted an informational injury pursuant to § 1681b(b), which is constitutionally sufficient for the same reasons set forth in Manuel. Moreover, it is irrelevant in assessing that injury whether Milbourne actually knew that a background check would be procured:

> Under the FCRA, [Milbourne] and other
> consumers have the right to specific
> information at specific times. The
> allegations that [JRK] failed to provide
> that information, or that [it] provided the
> information after it was required are
> sufficient to posit 'an invasion of a
> legally protected interest which is (a)
> accurate and particularized and (b) actual

11

> or imminent, not conjectural or
> hypothetical.'

Id. (quoting Lujan, 504 U.S. at 560-61).  Therefore, Milbourne

has standing to pursue his FCRA claims.

## B.   The Standalone Disclosure Form:  Facts

JRK argues that the Standalone Disclosure Form "clearly and

conspicuously" discloses that a consumer report will be obtained

for employment purposes, and that the form consists "solely" of

that disclosure.  Milbourne does not dispute that the Standalone

Disclosure Form consists "solely" of the disclosure, but argues

that the disclosure is insufficiently "clear and conspicuous."

Specifically, Milbourne argues that the Standalone Disclosure

Form does not constitute a "reasonably understandable and

readily noticeable disclosure to the consumer" of JRK's

intention to obtain a consumer report because "[n]othing in the

text would have advised a comprehending reader, let alone an

average one, that the referenced 'background report' was a FCRA

governed 'consumer report.'   Similarly, [the Standalone

Disclosure Form] never mentions, informs, or suggests the

involvement of a federally regulated consumer reporting agency

anywhere in the process." (Pl. Mem. in Opp. at 14).[6]

_____

[6] Milbourne also argues that JRK's summary judgment motion must
fail because JRK "has already taken, and lost, one shot at
summary judgment based on its defective disclosure form[,]" and
therefore the law of the case applies to defeat JRK's second
summary judgment motion.  (Pl. Mem. in Opp. at 8-9).  However,

Essentially, Milbourne's primary quarrel with the Standalone Disclosure Form is that it does not contain the phrase "consumer report," or any mention of a "consumer reporting agency," which, according to Milbourne, are necessary for a disclosure to be adequate under § 1681b(b)(2)(A)(i) because "[c]onsumer reports are a unique species of personal information."[7]  Id. at 15.  At the hearing on this motion, Milbourne's counsel also raised the argument that the Standalone Disclosure Form is an inadequate "authorization" under § 1681b(b)(2)(A)(ii) because the form uses the phrase "I understand" rather than "I authorize" or "I give permission." (Hrg. Tr. at 26:19-25).  It is Milbourne's position that the language of the form does not convey to the consumer that he or she has a choice to refuse to allow JRK to obtain her background check.  Id.  Each of these arguments will be addressed in turn.

The entire text of the Standalone Disclosure Form consists of the following:

---

that argument overlooks that JRK's previous motion for summary judgment pertained to a separate disclosure form ("the Standard Disclosure Form") that presented entirely different issues. Indeed, at that time, neither Plaintiffs nor the Court were even aware of the existence of the Standalone Disclosure Form, which is the only document at issue in the current motion. Thus, the law of the case doctrine does not apply to this motion.

[7] Milbourne does not appear to dispute that the Standalone Disclosure Form clearly and conspicuously discloses that the background check will be used "for employment purposes."

> I understand that my employment with JRK is subject to the successful clearance of my background report to acceptable company standards. The results of my background report will be reviewed and evaluated by JRK and JRK, in its sole discretion, will determine whether it is approved.

(ECF No. 150). At the top of the Standalone Disclosure Form, "JRK" is printed in large, bold type, and a space is provided for the employee to print his or her name. Beneath the excerpted text, there are two lines designated "employee signature" and "date." There is no other text on the form. Section 1681b(b)(2)(A) requires that:

**C.   The Standalone Disclosure Form:  Applicable Legal Framework**

Section 1681(b)(2)(A) requires that:

> Except as provided in subparagraph (B) [dealing with applications for employment by mail, telephone, or computer], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless[:] (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the documents referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

Although § 1681b(b)(2)(A) and several other provisions of the FCRA require that the consumer receive a "clear and

14

conspicuous" disclosure of certain information, the statute does not define "clear and conspicuous" as it appears in any provision.    Furthermore, there is relatively little judicial authority interpreting this requirement.    Therefore, courts have looked to FTC commentary, as well as decisions applying the Uniform Commercial Code ("UCC") and Truth in Lending Act ("TILA"), both of which contain the same language, to determine the meaning of "clear and conspicuous" under the FCRA.    See, e.g., Cole v. U.S. Capital, 389 F.3d 719, 729 (7th Cir. 2004) (citing Stevenson v. TRW Inc., 987 F.2d 288, 295 (5th Cir. 1993)).

### 1.    Conspicuousness

It is well-settled that "conspicuousness" is a question of law for the court.    See, e.g., Burghy v. Dayton Racquet Club, Inc., 695 F. Supp. 2d 689, 696 (S.D. Ohio 2010) (collecting cases to show that conspicuousness of § 1681b(b)(2) disclosure is a question of law); Harper v. Lindsay Chevrolet Oldsmobile, LLC, 212 F. Supp. 2d 582, 588 (E.D. Va. 2002) (conspicuousness is a question of law).

The vast majority of decisions under the FCRA, TILA, and the UCC focus primarily on whether disclosures are "conspicuous."    The FRCA does not define the term "conspicuous." In ordinary usage, "conspicuous" means "obvious to the eye" or "plainly visible."    Webster's Third New International Dictionary

485 (2002). Similarly, the UCC states that a term is "conspicuous" when it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Uniform Commercial Code § 1-201(10); see also Cole, 389 F.3d at 731 (finding that for a disclosure to be conspicuous, "there must be something about the way that the notice is presented in the document such that the consumer's attention will be drawn to it."); Rossman v. Fleet Bank (R.I.) Nat'l Ass'n, 280 F.3d 384, 390 (3d Cir. 2002) (finding that "conspicuous" in the TILA context means "readily noticeable"); Murr v. Capital One Bank (USA) N.A., 28 F. Supp. 3d 575, 591 (E.D. Va. 2014) (same). In the context of § 1681b(b)(2)(A), the requirement of conspicuousness is also underscored by the requirement that the relevant document "consist solely of the disclosure." When analyzing conspicuousness, courts typically look to factors such as the typeface, placement, and prominence of the disclosure, and whether some other part of the document distracts from the disclosure. See, e.g., Murray v. GMAC Mortg. Corp., 274 F. App'x 489, 490-91 (7th Cir. 2008); Cole, 389 F.3d at 731; Burghy, 695 F. Supp. 2d at 697.

Here, there can be no real dispute that the disclosure in the Standalone Disclosure Form satisfies any definition of "conspicuousness." The disclosure consists of three lines of easily legible text in the center of the page, and there is no

16

other text on the form except the heading "JRK" and spaces for the consumer to sign and date the document. There is no text on the back of the form. Any consumer who conducted even the most cursory examination of the form would immediately notice the disclosure.

### 2. Clarity

There appears to be a circuit split on whether clarity is a question of law under TILA. See Rubio v. Capital One Bank, 613 F.3d 1195 (9th Cir. 2010), cert. denied, 131 S. Ct. 1817 (2011) (holding that clarity of TILA disclosures is a question of law); Hamm v. Ameriquest Mortg. Co., 506 F.3d 525, 529 (7th Cir. 2007) (citing Handy v. Anchor Mortg. Corp., 464 F.3d 760 (7th Cir. 2006) ("Whether a particular disclosure is clear for purposes of TILA is a question of law that 'depends on the contents of the form, not on how it affects any particular reader'")); but see Roberts v. Fleet Bank (R.I.) Nat'l Ass'n, 342 F.3d 260, 263 (3d Cir. 2003) (clarity of a disclosure is a question of fact); see also Brandon Mohr, Who Decides Whether Clarity is Clear?: An Analysis of TILA'S Clarity of Disclosure Requirement in Actions by Consumers Against Creditor Card Companies, 32 Pace L. Rev. 188 (2012) (summarizing Rubio and Roberts, and concluding that, "[w]hile a court might very well be equipped to determine whether relevant information is noticeable within the solicitation information, it is not as capable of determining

whether the reasonable person would understand the terms of the agreement as they are disclosed in the solicitation materials.").

Unfortunately, the parties have not briefed the clarity issue, and the Fourth Circuit has not yet weighed in on this question under either the FCRA or TILA.  However, many courts have decided the adequacy of § 1681b(b)(2)(A) disclosures as a matter of law without devoting any discussion to the issue of clarity.  See, e.g., Coleman v. Kohl's Dept. Stores, 2015 WL 5782352 (N.D. Cal. Oct. 5, 2015); Goldberg v. Uber Techs., 2015 WL 1530875 (D. Mass. Apr. 6, 2015); Reardon v. ClosetMaid Corp., 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013); Kelchner v. Sycamore Manor Health Ctr., 305 F. Supp. 2d 429 (M.D. Pa. 2004).  This Court, citing the Seventh Circuit's opinion in Hamm, has held that a TILA disclosure can be clear and conspicuous as a matter of law.  Larrabee v. Bank of Am., N.A., 2010 WL 4853382, at *4 (E.D. Va. Nov. 19, 2010) (Hudson, J.) (finding that a reasonable person would not be confused by the disclosure provided to the plaintiff, and therefore that TILA's clear and conspicuous disclosure requirement was satisfied).  However, a sister district court within the Fourth Circuit has held that both clarity and conspicuousness of TILA disclosures are questions for the jury.  Puryear v. Capital One Bank, N.A., 2014 WL 103506, at *3 (D. Md. Jan. 10, 2014).

18

As will be further explained below, however, the real dispute in this case is actually more narrow than whether the disclosure is "clear." The heart of the matter is not merely whether JRK's disclosure is comprehensible to the reasonable consumer; but rather, _what_, exactly, must the reasonable consumer understand, in order for the disclosure to meet the requirements of § 1681b(b)(2)? The latter is clearly a question for the Court. Therefore, considering the decisions of the Seventh Circuit and this Court, and the analysis below, it is appropriate in this case to decide clarity as a matter of law.

The dispositive question is whether the Standalone Disclosure Form clearly discloses "that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A). FTC commentary and judicial authority interpreting the FCRA and TILA teach that "clear" disclosures to consumers must be "reasonably understandable." See 16 C.F.R. § 680.3; Murr, 28 F. Supp. 3d at 591; Reardon, 2013 WL 6231606, at *6 (holding that § 1681b(b)(2)(A) disclosure was satisfactory because it was "in a reasonably understandable form, the amount of text on the page [was] minimal, and the disclosure appear[ed] in the opening sentence of the document such that it [was] readily noticeable to the consumer."). Recently, describing required disclosures in the context of digital advertising, the FTC further elaborated that "understandable" disclosures should "use clear

language and syntax and avoid legalese or technical jargon. Disclosures should be as simple and straightforward as possible." FED. TRADE COMM'N, DOT COM DISCLOSURES: HOW TO MAKE EFFECTIVE DISCLOSURES IN DIGITAL ADVERTISING 21 (2013). However, as the Third Circuit has noted, whether a disclosure is "reasonably understandable" must be assessed "in light of the difficulty of the matter being disclosed. The benchmark is the nature of the matter discussed." Applebaum v. Nissan Motor Acceptance Corp., 226 F.3d 214, 220 (3d Cir. 2000).

Plaintiffs do not dispute that the language in the Standalone Disclosure Form is simple, straightforward, and avoids legalese and technical jargon. In that sense, the Standalone Disclosure Form is "reasonably understandable."

However, the disputed question must be narrowed even further: what, exactly, must the consumer understand from a § 1681b(b)(2) disclosure? JRK's position is that the consumer need only understand exactly what the Standalone Disclosure Form plainly says: that JRK will be obtaining a background report (a type of consumer report), and that the results of that background report will be used to determine whether the consumer is eligible and suitable for employment with JRK. Plaintiffs, on the other hand, urge that the disclosure must explicitly state that the background report being procured is a "consumer report" involving a "consumer reporting agency," so that the

20

consumer is alerted to the legal ramifications attendant to that process. Reference to the statute on this point is of limited usefulness; telling a consumer that "a consumer report will be obtained for employment purposes," practically speaking, tells the average consumer very little.

Although this issue is a close one, and there is a lack of judicial and administrative guidance on this point, the Court finds that JRK has the better of this argument. The purpose of requiring an employer to obtain a consumer's knowing authorization before procuring a consumer report is to protect the confidentiality of the consumer's information by alerting the consumer to what is being sought. In other words, the disclosure and authorization should make the consumer aware of, and give the consumer some control over, the use and dissemination of the information contained in the consumer report. Therefore, an adequate disclosure must inform the consumer that the employer wishes to obtain personal information and must allow the consumer to make an informed decision on this point; a decision that, naturally, any consumer is better equipped to make with an understanding of the nature of the information that is being disseminated.

Here, the Standalone Disclosure Form's use of the phrase "background report" is more easily understandable and communicates more information to the average consumer than does

the phrase "consumer report," which is a legal term of art encompassing a wide range of communications of information, including background checks.  See, e.g., Wada v. Aloha King, LLC, -- F. Supp. 3d --, 2015 WL 9459898, at *8 (D. Haw. Dec. 23, 2015) (noting that "employee background checks are another main type of 'consumer report' under the Fair Credit Reporting Act"); Freckleton v. Target Corp., 81 F. Supp. 3d 473 (D. Md. 2015) (holding that background checks procured by defendant were consumer reports); Solimen v. Morton Coll., 2013 WL 4805004, at *2 (N.D. Ill. Sept. 9, 2013) (same); Beverly v. Wal-Mart Stores, Inc., 2008 WL 149032, at *1 n.3 (E.D. Va. Jan. 11, 2008) (noting that "the parties agree that a criminal background check is a 'consumer report' within the meaning of the cited provisions of the FCRA").  A reasonable consumer, based on the text of the Standalone Disclosure Form, would understand the nature and content of the report being procured, and would understand that the report was being procured "for the purpose of evaluating [the] consumer for employment[.]"  15 U.S.C. § 1681a(h) (defining "employment purposes").

Moreover, contrary to Milbourne's suggestion, Congress did not intend the § 1681b(b)(2) disclosure to alert the consumer to the applicability of the FCRA and the consequences thereof or to include contact information for the consumer reporting agency that provided the information because the statute specifically

provides for the communication of that exact information in other sections.  See, e.g., §§ 1681b(b)(3)(B);  1681g(c); 1681d(a)(1)(B).  Thus, Congress recognized the need for consumers to know where their background report came from and to understand the protections and consequences of the FCRA, and specifically provided for the disclosure of that information where it thought necessary.  Had Congress wished to require that information to be placed in a § 1681b(b)(2) disclosure, it clearly could have done so.[8]  It did not.

Furthermore, several courts have held that disclosures that do not contain the words "consumer report" or "consumer reporting agency" may satisfy the stand-alone disclosure requirement.  See, e.g., Maiteki v. Marten Transport Ltd., 2015 WL 5996760, at *16 (D. Colo. Oct. 15, 2015) (finding, as a matter of law, that the defendant's "Fair Credit Reporting Act Disclosure Statement" informing the applicant that "reports verifying your previous employment, previous drug and alcohol test results, and your driving record may be obtained on you for employment purposes" satisfied the "clear and conspicuous" disclosure requirement); Goldberg, 2015 WL 1530875 (upholding

---

[8] See, e.g., Soliman v. Gonzales, 419 F.3d 276, 283 (4th Cir. 2008) (noting that, "where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion") (internal citation omitted).

disclosure that stated that "a third-party vendor" would conduct a "criminal background check, motor vehicle record check, and other checks"); Mattiaccio v. DHA Grp. Inc., 21 F. Supp. 3d 15, 20 (D.D.C. 2014) (stating that content of form satisfied the "clear and conspicuous" disclosure requirement where the form stated that the employee authorized defendant "to thoroughly investigate [his] background, references, employment record and other matters related to [his] suitability for employment"). Conversely, Milbourne has not cited, nor has the Court found, any decision holding that the words "consumer report" and "consumer reporting agency" must necessarily be included in a stand-alone disclosure for the disclosure to satisfy § 1681b(b)(2)(A).[9]    It is also noteworthy that the FTC's

---

[9] However, at least one district court has strongly suggested that the absence of these phrases is fatal to a § 1681b(b)(2) disclosure. See Alame v. Norred & Assoc., Inc., 2014 WL 2574418, at *4 (W.D. Mo. June 9, 2014). Denying the defendant's motion to dismiss, the Alame court noted that because

> the FCRA is principally concerned with the increased role of consumer reporting agencies in the modern economy, see § 1681, as opposed to background checks in general, there is little basis for concluding that a general authorization to collect background information is sufficient to satisfy the obligation to specifically disclose that a consumer report may be obtained.

Id. It is true that the FCRA reflects congressional concern with the role of consumer reporting agencies. However, as set forth above, the Court must look more specifically to the purpose of § 1681b(b)(2), and how that subsection interacts with

24

explanation of this particular section does not contain the phrases "consumer report," "consumer reporting agency," or "FCRA." See FED. TRADE COMM'N, BACKGROUND CHECKS: TIPS FOR JOB APPLICANTS AND EMPLOYEES 2 (November 2014), available at http://www.consumer.ftc.gov/articles/0157-employment-background-checks#background.

Additionally, as JRK points out, courts, including this Court, frequently use the terms "background check," "background report," and "consumer report" interchangeably. See, e.g., Ryals v. Strategic Screening Sol., Inc., -- F. Supp. 3d --, 2015 WL 4606168 (E.D. Va. July 30, 2015); Smith v. e-Backgroundchecks.com, Inc., 81 F. Supp. 3d 1342 (N.D. Ga. 2015); Harris v. Home Depot. U.S.A., Inc., 114 F. Supp. 3d 868 (N.D. Cal. 2015); Adams v. Nat'l Eng'g Serv. Corp., 620 F. Supp. 2d 319 (D. Conn. 2009)). So too does the FTC. See, e.g., FED. TRADE COMM'N, BACKGROUND CHECKS: TIPS FOR JOB APPLICANTS AND EMPLOYEES (November 2014), available at http://www.consumer.ftc.gov/articles/0157-employment-background-checks#background ("Some employers try to find out about your background by hiring someone to do a 'background report' on you. Among the most common are criminal background reports and credit reports...")). Even Milbourne has freely and consistently used all three phrases (often within the

---

the surrounding statutory provisions and the protections they provide. Having done so, and for the reasons set forth herein, the Court declines to follow the reasoning in Alame.

same document, and occasionally even side by side) to refer to "consumer reports" in his filings throughout this litigation. See, e.g., ECF No. 36 at 1 (stating that JRK "violated 15 U.S.C. § 1681b(b) because it obtains and uses <u>consumer reports (background checks)</u> without providing the strict disclosures required by the FCRA"); <u>id.</u> at 3; ECF Nos. 63-1, 63-2 (proposed class notices)[10]; ECF No. 74 at 9 ("JRK did absolutely nothing to ensure that it complied with the FCRA prior to obtaining and using the <u>background check consumer reports</u> of Mr. Milbourne..."); <u>id.</u> at 10 (JRK's "actions were in reckless disregard of the rights of the consumers...about whom it was obtaining a <u>background report</u>..."); <u>id.</u> at 14, 15, 22 (JRK failed to provide the requisite "notice, summary of rights and copy of the <u>background check</u> as specifically provided in the FCRA"); <u>id.</u> at 23 ("When JRK terminated Mr. Milbourne and other class members based on information it obtained from an a [sic] <u>background report</u>, it violated § 1681b(b)(3)..."); ECF No. 169, at 15 (JRK procured Milbourne's "<u>consumer background report</u>")

---

[10] It is particularly telling that even the agreed-upon class notice forms, the purpose of which is to inform class members of the existence, nature, and consequences of this litigation, repeatedly refer to "background checks" in lieu of using the phrase "consumer reports."  This fact underscores the reality that Milbourne now tries so hard to avoid:  the phrase "background check" is more understandable and communicates more about the nature of the information at issue to the reasonable consumer than does the term of art "consumer report."

(emphases added).  Even Milbourne's proposed class definition used the terms "background check" and "consumer report" interchangeably:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who applied for an employment position with Defendant or any of its subsidiaries, (b) as part of this application process were the subject of a consumer report background check obtained by Defendant on or after the date two years proceeding [sic] the filing of the Complaint, (c) where Defendant's records show that the applicant was denied employment because of the background check, (d) and to whom Defendant did not provide a copy of the consumer report and other disclosures stated at 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the date the employment decision is first noted in Defendant's records.

ECF No. 36 at 9 (emphases added).  Thus, the umbrage that Milbourne now takes at the wording of the Standalone Disclosure Form is directly contradicted by judicial and administrative usage, as well as by his own position throughout this litigation.

Therefore, it is clear that the Standalone Disclosure Form communicates the information that is required by § 1681b(b)(2)(A) in a reasonably understandable way, and thus satisfies the "clear and conspicuous" disclosure requirement of § 1681b(b)(2)(A).

### 3.  Authorization

Class counsel raised, for the first time, in oral argument, the argument that the Standalone Disclosure Form is an inadequate authorization under § 1681b(b)(2)(A)(ii) because the form's use of the verb "understand," rather than "authorize" or "give permission," does not make clear to the consumer that she has the right to prevent JRK from obtaining her background report. (Hrg. Tr. at 26). The Court rejects this argument, for three reasons.

First, the Court declines to entertain an argument that was not included in Plaintiffs' opposition to the motion for summary judgment where it should have been. The rule is clear that a party should not be allowed to rely on arguments first made in oral argument. Onan v. Cty. of Roanoke, Case No. 94-1770, 1995 WL 234290, at *3 n.7 (4th Cir. Apr. 21, 1995) (internal citations omitted). The argument can be rejected for this reason alone. However, because this is a class action, it is preferable to outline the substantive reasons for rejecting the argument as well.

Second, the Standalone Disclosure Form authorizes JRK to procure its potential employees' consumer reports. The applicant's signature on the Standalone Disclosure Form indicates that the signer has received, acknowledged, and understood the terms of the form. Even in the absence of the

28

words "authorize" or "permit," the reasonable consumer is aware that absent duress or coercion, he or she is free to refuse to sign the document, and is aware that the absence of signature constitutes a rejection of the document's terms, i.e., a refusal to authorize the transaction detailed in the document.  That, of course, is the converse of the principle that we are all charged with knowledge that we are bound by those documents that we signed.  See, e.g., Barlow v. N.Y. Life Ins. Co., Case No. 94-1930, 1995 WL 318597, at *5 (4th Cir. May 23, 1995).

The Standalone Disclosure Form is no different.  As discussed above, the form made clear that JRK planned to obtain a specific type of information on the consumer for a specific purpose.  Applicants who received the form were free to express their objection to its terms by refusing to sign it, in which case their application process would have come to a halt:  JRK could not have procured their background reports, and JRK would have been free to refuse to hire the applicants or terminate their conditional employment.  See Kelchner v. Sycamore Manor Health Ctr., 135 F. App'x 499, 502 (3d Cir. 2005) (citing Oct. 1, 1999, FTC Opinion Letter) (observing that the FCRA does not prohibit an employer from taking adverse employment action against an employee or applicant who refuses to authorize the employer to procure a consumer report).

Decisional law interpreting § 1681b(b)(2) reflects this understanding. Milbourne has not cited, nor has the Court found, any judicial authority supporting his position. To the contrary, two district courts have found that an applicant's signature on a § 1681b(b)(2)(A)(i) disclosure adequate to satisfy the authorization requirement. See Maiteki, 2015 WL 5996760, at *20; Reardon, 2013 WL 6231606, at *6.

Therefore, the Standalone Disclosure Form properly obtained applicants' written authorization for JRK to procure their consumer reports.

Third, even assuming, arguendo, that the Standalone Disclosure Form itself fails to satisfy § 1681b(b)(2)(A)(ii), the Standard Disclosure Form provides the explicit grant of permission that Plaintiffs seek.[11]

Section 1681b(b)(2)(A) has two basic requirements: the consumer must receive a disclosure that her employer intends to obtain her consumer report, see § 1681b(b)(2)(A)(i), and the consumer must authorize for the dissemination of that report, see § 1681b(b)(2)(A)(ii). Section 1681b(b)(2)(A) requires that

---

[11] Ordinarily, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings. Karsten v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc., 36 F.3d 8, 11 (4th Cir. 1994); Amato v. City of Richmond, 875 F. Supp. 1124, 1139 (E.D. Va. 1994). However, given the dearth of judicial and administrative guidance in this area, it is in the interest of judicial economy and fairness to the parties for the Court to address this alternative argument.

the disclosure be provided "in a document consisting solely of the disclosure," with the sole caveat that the consumer's written authorization "may be made on" that same document.  Id. Thus, the use of the permissive "may" indicates that, although it is permissible to obtain the consumer's authorization in the disclosure document, the authorization may also appear in a separate document.  Moreover, in the event that the authorization is found in a separate document, the statute does not limit the information that may appear in that document in addition to the authorization.

JRK's Standard Disclosure Form states, in pertinent part, "I hereby authorize this company, its corporate affiliates, its employees, its authorized agents, and representatives...to verify all information contained in this form or in my application and to inquire into any character, general reputation, personal characteristics, and mode of living..." (FAC ¶ 15).  Further, the Standard Disclosure Form alerts the applicant that "the requested information is for the sole purpose of conducting a background investigation which may include a check of my identity, work and credit history, driving records, and any criminal history which may be in the files of any state or local criminal agency..."  Id.

Thus, the Standard Disclosure Form clearly explains that JRK wishes to obtain the applicant's consumer report, details

the nature of the information that JRK wishes to obtain, and explicitly states that the consumer's signature "authorize[s]" JRK to inquire into "any character, general reputation, personal characteristics, and mode of living[.]"  Id.  For reasons to be set forth in a separate Memorandum Opinion, the Standard Disclosure Form does not "consist solely of the disclosure," and therefore does not satisfy § 1681b(b)(2)(A)(i).  However, the Standard Disclosure Form nonetheless clearly communicates to the applicant that consumer reports will be procured for employment purposes, and explicitly obtains the applicant's permission for the dissemination of those reports.  Thus, the Standard Disclosure Form contains a clear and adequate written authorization and satisfies § 1681b(b)(2)(A)(ii).

Therefore, JRK has both provided a proper disclosure pursuant to § 1681b(b)(2)(A)(i) and obtained the consumer's written authorization as required by § 1681b(b)(2)(A)(ii).

**CONCLUSION**

For the reasons set forth above, DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT (ECF No. 148) will be granted as to the 559 class members who signed the Standalone Disclosure Form before JRK obtained their consumer reports, and denied as to the 91 class members whose consumer reports had already been obtained at the time they signed the Standalone Disclosure Form.

It is so ORDERED.

                                    /s/    REP
                         _____
                         Robert E. Payne
                         Senior United States District Judge


Richmond, Virginia
Date:  March 14, 2016