IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DERRICK A. MILBOURNE,
On his own behalf and on
Behalf of those similarly
Situated,

     Plaintiff,

v.                                    Civil Action No. 3:12cv861

JRK RESIDENTIAL AMERICA, LLC,

     Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO DECERTIFY THE IMPERMISSIBLE USE AND ADVERSE ACTION CLASSES (ECF No. 151), PLAINTIFFS' CROSS-MOTION TO AMEND ORDER CERTIFYING CLASS (ECF No. 171), and PLAINTIFFS' UNOPPOSED MOTION TO AMEND PLAINTIFFS' CROSS-MOTION TO AMEND ORDER CERTIFYING CLASS (ECF No. 190). For the reasons set forth herein, Defendant's motion will be denied, Plaintiffs' cross-motion will be granted in part and denied in part, and Plaintiffs' unopposed motion will be granted.

## BACKGROUND

### A.   Class Claims

On October 26, 2015, Plaintiffs Derrick A. Milbourne ("Milbourne"), Timothy Robins ("Robins"), and Samantha Churcher

1

("Churcher") (collectively, "Named Plaintiffs") filed a First Amended Complaint ("FAC," ECF No. 147) on behalf of themselves and all others similarly situated, alleging that Defendant JRK Residential America, LLC ("JRK") violated two sections of the Fair Credit Reporting Act ("FCRA"). In Count One, the Named Plaintiffs allege that the disclosure form JRK provided to all potential employees ("the Standard Disclosure Form") violated 15 U.S.C. § 1681b(b)(3)(A), which requires that:

> In using a consumer report[1] for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates: (i) a copy of the report; and (ii) a description in writing of the rights of the consumer under this subchapter, as presented by the Bureau under Section 1681g(c)(3) of this title.

On March 15, 2016, for the reasons set forth in a separate Memorandum Opinion, the Court granted Plaintiffs' Second Motion for Partial Summary Judgment (ECF No. 162) on the issue of JRK's violation of § 1681b(b)(3) as alleged in Count One. (ECF No. 198).

---

[1] The FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used in whole or in part for the purposes of serving as a factor in establishing the consumer's eligibility for:...employment purposes[.]" 15 U.S.C. § 1681a(d).

2

In Count Two, the Named Plaintiffs allege that JRK's use of the Standard Disclosure Form also violated 15 U.S.C. § 1681b(b)(2)(A), which provides that:

> A person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless: (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

The Court also granted Plaintiffs' motion for partial summary judgment as to Count Two, holding that the Standard Disclosure Form does not comply with § 1681b(b)(2)(A) as a matter of law. (ECF No. 198).

Count Three, filed on behalf of a putative subclass of the class represented in Count Two, alleges that a second disclosure form that JRK provided to some potential employees ("the Standalone Disclosure Form" or "the contingency form") also violated § 1681b(b)(2)(A).

On March 15, 2016, for the reasons set forth in a separate Memorandum Opinion, the Court granted JRK's Second Motion for Summary Judgment (ECF No. 148) on Count Three, holding that the Standalone Disclosure Form satisfies § 1681b(b)(2)(A) as a

3

matter of law.   (ECF No. 200).   For the same reasons, the Court denied Plaintiffs' motion for partial summary judgment as to Count Three.   (ECF No. 198).

**B.   Factual History**

**1.   The Standard Disclosure Form**

In November 2010, Milbourne applied for and conditionally received a job with JRK pending satisfactory completion of a background check.   FAC ¶¶ 7-9.   Before JRK obtained a consumer report on Milbourne, he signed two disclosure forms.   FAC ¶¶ 15-18.   The first form, the "Standard Disclosure Form," provides in part:

> I certify that the information contained herein is true and understand that any falsification will result in the rejection of my application or termination of my employment.   I also understand that the requested information is for the sole purpose of conducting a background investigation which may include a check of my identity, work and credit history, driving records, and any criminal history which may be in the files of any state or local criminal agency...
>
> I hereby authorize this company, its corporate affiliates, its employees, its authorized agents, and representatives...to verify all information contained in this form or in my application and to inquire into any character, general reputation, personal characteristics, and mode of living...<u>I hereby release this company, its corporate affiliates, its employees, its authorized agents and representatives and all others involved in this background investigation from any liability in</u>

> connection with any information they give or
> gather and any decisions made concerning my
> employment based on such information.   I
> understand that any offer of employment I
> may   receive   is   contingent   upon   the
> successful   completion   of   the   background
> investigation.   I further understand that I
> have a right, under Section 606(B) of the
> Fair Credit Reporting Act, to make a written
> request to this company within a reasonable
> period of time for a complete and accurate
> disclosure of the nature and scope of the
> investigation requested.

ECF No. 49-2 at 2 (emphasis added).   Robins and Churcher also

signed the Standard Disclosure Form when they applied for

employment   with   JRK   in   April   2011   and   September   2013,

respectively.   FAC ¶¶ 27-31.

On October 31, 2014, the Court certified two classes based

on the alleged deficiencies of the Standard Disclosure form.

First, the Court certified an "Impermissible Use Class," defined

as follows:

> All natural persons residing in the United
> States (including all territories and other
> political   subdivisions   of   the   United
> States), (a) who applied for an employment
> position with Defendant or any of its
> subsidiaries,   (b)   as   part   of   this
> application process were the subject of a
> consumer report obtained by Defendant during
> the two years proceeding [sic] the filing of
> the Complaint, (c) where Defendant used a
> form to make its disclosures pursuant to 15
> U.S.C.   §   1681b(b)(2)   that   contained   a
> release   and/or   waiver   of   the   signing
> consumer's claims and/or rights.

(ECF No. 56). The Court also certified an "Adverse Action" subclass, defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who applied for an employment position with Defendant or any of its subsidiaries, (b) as part of this application process were the subject of a consumer report background check obtained by Defendant on or after the date two years proceeding [sic] the filing of the Complaint, (c) where Defendant's records show that the applicant was denied employment because of the background check, (d) and to whom Defendant did not provide a copy of the consumer report and other disclosures stated at 15 U.S.C. § 1681b(b)(3)(A)(ii) at least five business days before the date the employment decision is first noted in Defendant's records.

Id.

### 2.   The Standalone Disclosure Form

After extensive discovery, after class certification, and on the eve of trial, it became apparent that Milbourne, along with 558 other class members[2] (not including Robins or Churcher), also signed a second disclosure form before JRK obtained their

---

[2] A total of 650 class members signed the Standalone Disclosure Form. However, JRK revealed at oral argument that 91 class members actually signed the Standalone Disclosure Form after JRK had already procured their background reports. (Transcript of February 26, 2016 Hearing ("Hrg. Tr.") at 21-22). Therefore, the Standalone Disclosure Form has no legal effect on those 91 class members.

background checks ("the contingency form" or "the Standalone Disclosure form"). That form provides:

> I understand that my employment with JRK is subject to the successful clearance of my background report to acceptable company standards. The results of my background report will be reviewed and evaluated by JRK and JRK, in its sole discretion, will determine whether it is approved.

ECF No. 150, Exs. 1-650.

The Named Plaintiffs allege that this form also failed to provide the notice required by 15 U.S.C. § 1681b(b)(2)(A). Accordingly, Milbourne seeks to amend the class definition to add a sub-class of consumers to the Impermissible Use Class, representing the 559 consumers who signed the Standalone Disclosure Form before JRK obtained their consumer reports. Plaintiffs also seek to amend the class definition to add Churcher as a class representative of the Impermissible Use Class. JRK contends that both the Impermissible Use Class and the Adverse Action Subclass should be decertified.

### LEGAL STANDARD

Fed. R. Civ. P. 23(c)(1)(C) explicitly authorizes a court to alter or amend a certification order at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C). If it becomes apparent after the certification of the class that individualized issues predominate or class treatment "render[s] the case unmanageable," the court has a "responsibility to decertify the

7

class." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 433 (4th Cir. 2003). In considering a motion to decertify the class, the Court looks to the legal standard required for class certification. Chisholm v. TranSouth Fin. Corp., 194 F.R.D. 538, 544 (E.D. Va. 2000). Importantly, however, "if after the class has been certified and its claims heard and the representatives are found to be inadequate for some reason during the course of the class claims...the appropriate step is appointment of new representatives from the existing class, not decertification." Carpenter v. Stephen F. Austin State Univ., 706 F.2d 608, 617-18 (5th Cir. 1983) (internal citation omitted).

To obtain class certification, a plaintiff must satisfy the four requirements of Fed. R. Civ. P. 23(a). Additionally, the proposed class must be consistent with at least one of the types of class actions delineated in Fed. R. Civ. P. 23(b), and must meet the corresponding prerequisites for certification. Because the requirements of Rule 23 are set forth at length in the Court's previous Memorandum Opinion granting Plaintiffs' class certification motion (ECF No. 55), those requirements are reiterated only briefly here. See Milbourne v. JRK Residential Am., LLC, 2014 WL 5529731 (E.D. Va. Oct. 31, 2014).

The four Rule 23(a) requirements are that: (1) the class is so numerous that joinder of all members is impracticable; (2)

8

there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 337 (4th Cir. 1998); Milbourne, 2014 WL 5529731. The plaintiff bears the burden of proving all requirements of Rule 23. Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001).

As the Fourth Circuit has explained, courts are not required "to accept plaintiffs' pleadings when assessing whether a class should be certified." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 365 (4th Cir. 2004). Rather, "the district court must take a 'close look' at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 319 (4th Cir. 2006) (quoting Gariety, 368 F.3d at 365). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case," but "[t]he likelihood of the plaintiffs' success on the merits...is not relevant to the issue of whether certification is proper." Id. (internal citations omitted).

In order to be certified as a class action, the class must also satisfy at least one of the class categories defined in Rule 23(b). The class here is certified under Rule 23(b)(3).

Certification under Rule 23(b)(3) is appropriate where the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**DISCUSSION**

## I.   Decertification

### A. The Impermissible Use Class

JRK proffers several arguments in support of its motion for decertification, the vast majority of which are weak and well-worn.   First, with respect to the Impermissible Use Class, JRK argues that the 510 individuals who signed arbitration agreements cannot be part of this action.   (Memorandum of Law in Support of Defendant's Motion to Decertify the Impermissible Use Class and Adverse Action Classes ("Def. Mem.", ECF No. 152) at 7).   Second, JRK argues that "individual inquiries will be necessary to determine whether the class members suffered any injury as a result of JRK's purported violation of § 1681b(b)(2) and what--if any--amount of statutory damages are appropriate to compensate class members if they are able to prove any injury[,]" and that these "individual inquiries" predominate over questions that are common to the class.   Id. at 8.   Third, JRK argues that because some class members signed the Standalone

Disclosure Form in addition to signing the Standard Disclosure Form, commonality is no longer satisfied.   Id. at 12.   Id. Fourth, JRK asserts that Milbourne's claims are not typical, because:   (1) Milbourne is not actually a member of the Impermissible Use Class; (2) Milbourne did sign a Standalone Disclosure Form, and did not sign an Arbitration Agreement, and therefore is not typical of those class members whose circumstances differ in those respects; and (3) Milbourne has disputed the validity of his signature, which is atypical. Id. at 15-16.   Each of these arguments will be addressed in turn.

First, for the reasons set forth in the Court's previous Memorandum Opinion denying JRK's motion to compel arbitration, the fact that 510 Impermissible Use Class members signed Arbitration Agreements is irrelevant.   JRK has waived its right to compel class members to arbitrate, and Class Counsel has submitted that no class member wishes to invoke that right. (Transcript of February 25, 2016 Hearing ("Hrg. Tr.") at 61). Thus, the Arbitration Agreements have no bearing on the viability or manageability of the class action.

Second, for the reasons set forth in the Court's recent opinion in Manuel v. Wells Fargo, 2015 WL 4994538 (E.D. Va. Aug. 19, 2015), all class members who signed the Standard Disclosure Form have suffered an identical cognizable injury-in-fact:   the

11

denial of specific information to which they were entitled under the FCRA. JRK raised this same issue in support of its second motion for summary judgment; accordingly, a more complete analysis and rejection of JRK's position can be found in the Memorandum Opinion addressing that motion.

Third, JRK's argument concerning the individualized nature of statutory damages is contrary to well-settled law, and has been repeatedly rejected by this Court. As most recently set forth in Thomas v. FTS USA, LLC, "the question of statutory damages may be individualized but is minimally influential in the predominance analysis." -- F.R.D. --, 2016 WL 94136, at *15 (E.D. Va. Jan. 7, 2016) (citing Dreher v. Experian Info. Sol., Inc., 2014 WL 2800766 (E.D. Va. June 19, 2014) (holding that, "while some questions may exist as to how to best apportion statutory damages, those questions do not preclude the common question of liability from predominating.")); see also Manuel v. Wells Fargo Bank, Nat'l Ass'n, 2015 WL 4994549, at *17 (E.D. Va. Aug. 19, 2015); Edelen v. Am. Residential Servs., LLC, 2013 WL 3816986, at *7 (D. Md. July 22, 2013). Therefore, for the same reasons that variation in statutory damages does not prevent class certification in the first instance, it similarly is not a proper ground for decertification.

Fourth, the fact that some class members signed the Standalone Disclosure Form by no means defeats either

12

commonality or predominance. As set forth in the Court's original Memorandum Opinion certifying the Impermissible Use Class, "JRK has admitted that it has used a standardized waiver and disclosure form for all class members," and the legality of the Standard Disclosure form remains "of 'such a nature that it is capable of classwide resolution' and satisfies the commonality requirement for the Impermissible Use Class." Milbourne v. JRK Residential Am., LLC, 2014 WL 5529731, at *5 (E.D. Va. Oct. 31, 2014) (quoting Wal-Mart Stores, Inc. v. Dukes, 131 S. ct. 2541, 2551 (2011)). The Standalone Disclosure Form does not change this analysis for the majority of class members who did not sign it.

However, JRK is entitled to summary judgment on the claims of class members who signed the Standalone Disclosure Form before JRK procured their background reports, those consumers' claims will be dismissed, and therefore, those consumers are simply no longer members of the Impermissible Use Class.[3] Although the dismissal of some class members' claims does not warrant decertification, the Court finds that it is appropriate

---

[3] However, the Court notes that, even if these class members had meritorious claims, the existence of the Standalone Disclosure Form could be adequately addressed by the addition of a sub-class and would not be grounds for decertification. No "individualized inquiry" is required; rather, this is merely a simple, binary determination: did a class member sign the Standalone Disclosure Form before JRK procured his or her consumer report or not?

13

to amend the definition of the Impermissible Use Class to clarify this change.

Furthermore, after the Court noted that Churcher's claim did not arise within the class period (as defined in the original Order certifying the class), counsel for both parties have agreed that (subject to JRK's remaining arguments in support of decertification), it is appropriate to extend the class period. Accordingly, as set forth in PLAINTIFFS' UNOPPOSED MOTION TO AMEND PLAINTIFFS' CROSS-MOTION TO AMEND ORDER CERTIFYING CLASS (ECF No. 191), the Impermissible Use Class will further be amended to include consumers who were the subject of a consumer report obtained by Defendant from November 30, 2010, two years preceding the filing of the Complaint, through the date of the entry of the Order accompanying this Memorandum Opinion.

Therefore, the Impermissible Use Class definition will be accordingly modified to read as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a) who applied for an employment position with Defendant or any of its subsidiaries, (b) as part of this application process were the subject of a consumer report obtained by Defendant (c) on or after November 30, 2010 (two years preceding the filing of the Complaint) and before March 15, 2016 (the date of the Court's Order amending this definition) (d) where Defendant used a form to make its

> disclosures pursuant to 15 U.S.C. §
> 1681b(b)(2) that contained a release and/or
> waiver of the signing consumer's claims
> and/or rights, and (e) Defendant did not
> provide the applicant with any other
> disclosure form prior to obtaining the
> applicant's consumer report.

Because Milbourne signed the Standalone Disclosure Form before JRK procured his background report, his claim pursuant to § 1681b(b)(2)(A), pursued on behalf of the Impermissible Use Class, will be dismissed. For that reason, the Court need not reach the question whether he remains a typical representative of the Impermissible Use Class. Importantly, however, a grant of summary judgment against the class representative does not affect the viability of the claims of other class members. See Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp., 659 F.2d 1259, 1270 (4th Cir. 1981). Rather, as discussed in more detail below, the appropriate remedy is the appointment of a new class representative for the Impermissible Use Class who satisfies the typicality and adequacy requirements. Therefore, JRK's motion to decertify the Impermissible Use Class will be denied.

## B. The Adverse Action Subclass

With respect to the Adverse Action Subclass, JRK again asserts that "individualized inquiries predominate" as to whether class members suffered injury, and for those who did, individualized inquiries predominate as to statutory damages.

15

Id. at 17.   JRK also claims that Milbourne is not a typical representative of the Adverse Action Subclass because:   (1) he is not actually a member of the Adverse Action Subclass, because JRK procured his consumer report prior to November 30, 2010, two years before the filing of the Complaint; and (2) Milbourne's claim that he did not receive an adverse action letter in the mail is atypical.   JRK admits that no class member received a timely pre-adverse action notice as required by § 1681b(b)(3), and therefore concedes that Milbourne's claim that he never received an adverse action notice has no bearing on whether JRK violated § 1681b(b)(3), but posits that whether class members received their adverse action letters late, as opposed to never receiving any letter at all, bears on the issue of willfulness, and therefore Milbourne is an atypical representative as to that issue.   (Hrg. Tr. at 75).

For the same reasons set forth in part I.A above, JRK has failed to demonstrate the existence of any individualized inquiries warranting class decertification concerning either injury-in-fact or statutory damages.   Therefore, neither of these grounds is sufficient to warrant decertification of the Adverse Action Subclass.

Second, Milbourne remains a typical representative of the
Adverse Action Subclass.[4] As a threshold matter, Milbourne is a
member of the Adverse Action Subclass, because JRK received a
second consumer report on Milbourne from United States
Background Screening ("USBS"), a consumer reporting agency, on
December 6, 2010, within the class time period. (ECF No. 36, at
8). Specifically, JRK received a confirmation of records in the
previous report from USBS on that date. Id. Because this
information bore on Milbourne's character, general reputation,
and personal characteristics, and was expected to be used for
the purpose of establishing Milbourne's eligibility for
employment with JRK, the communication qualifies as a "consumer
report" under 15 U.S.C. § 1681a(d). Therefore, JRK obtained a
consumer report on Milbourne within the two-year period
preceding the filing of the Complaint on November 30, 2012, and
accordingly, Milbourne fits the definition of the Adverse Action
Subclass.

Therefore, the Court turns to whether Milbourne's claim
that he never received any adverse action letter renders him an

---

[4] As noted above, even if the Court were to conclude that
Milbourne is no longer a typical or adequate representative,
decertification is not the appropriate remedy. Carpenter, 706
F.2d at 617-18. Rather, Plaintiffs would have the opportunity
to propose a new representative from the Adverse Action
Subclass.

atypical representative.   The Fourth Circuit has described the typicality requirement as follows:

> The typicality requirement goes to the heart of a representative [party's] ability to represent a class, particularly as it tends to merge with the commonality and adequacy-of-representation requirements.   The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members.   For that essential reason, plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim.   That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned.   But when the variation in claims strikes at the heart of the respective causes of actions, we have readily denied class certification.   In the language of the Rule, therefore, the representative party may proceed to represent the class only if the plaintiff establishes that his claims or defenses are typical of the claims or defenses of the class.

Deiter v. Microsoft Corp., 436 F.3d 461, 466-67 (4th Cir. 2006) (emphasis added) (internal citations and quotation marks omitted).

Thus, the appropriate analysis of typicality "involves[s] a comparison of the plaintiffs' claims or defenses with those of the absent class members."   Id. at 467.   "To conduct that analysis, [the district court] begin[s] with a review of the elements of [the plaintiff's] prima facie case and the facts on

18

which the plaintiff would necessarily rely to prove it." *Id.* Then, the district court must determine "the extent to which those facts would also prove the claims of the absent class members." *Id.*

Here, there is no dispute that Milbourne, like every other Adverse Action Subclass member, did not receive the information required by § 1681b(b)(3) before JRK took adverse employment action against him. The elements that Milbourne must prove--and has proven as a matter of law, as further discussed in the Court's previous Memorandum Opinion granting Milbourne's motion for summary judgment on this point--in order to prove this violation are simple. Like every other Subclass member, Milbourne need only show that: (1) JRK obtained his consumer report within the relevant time period; (2) JRK took adverse employment action against him; and (3) he did not receive an adverse action notice, copy of his consumer report, and summary of his rights under the FCRA at least five days prior to the adverse employment action.

Given the alignment between Milbourne's claims and the claims of every other Adverse Action Subclass member, the difference between providing the relevant information late and not providing it at all is not so "fundamental" that it "strikes at the heart of" the Adverse Action Subclass' claims. Rather, as JRK conceded at argument, this difference goes only to the

19

issue of whether JRK's admitted violation was negligent or willful, a fact question that is relevant only to the determination of statutory and punitive damages. (Hrg. Tr. at 75-76). Therefore, Milbourne remains a typical representative of the Adverse Action Subclass.

## II. Plaintiffs' Cross-Motion to Amend

In their cross-motion to amend the Order certifying the class, Plaintiffs move the Court to: "(i) add a sub-class of consumers [who signed the Standalone Disclosure Form] to the § 1681b(b)(2) Impermissible Use Class; and (ii) approve Plaintiff Samantha Churcher as a Class Representative of the § 1681b(b)(2) Impermissible Use Class." (ECF No. 171). Plaintiffs also ask the Court to appoint Milbourne as the representative of the so-called "Contingency Form Impermissible Use Sub-Class." Id.

### A. Addition of a Sub-Class

As noted above, and as set forth in more detail in the Court's previous Memorandum Opinion granting JRK's second motion for summary judgment, the Court finds that JRK's use of the Standalone Disclosure Form (referred to by Plaintiffs as the "contingency form") satisfies 15 U.S.C. § 1681b(b)(2)(A) as a matter of law. Therefore, there is no need to add a sub-class of consumers who signed that form, because those class members are no longer parties to this action. Accordingly, Plaintiffs'

motion will be denied as to the request for certification of a "Contingency Form Sub-Class."

### B. Appointment of a New Impermissible Use Class Representative

The Court finds that Samantha Churcher is a typical and adequate representative of the amended Impermissible Use Class as defined above, and therefore will be substituted as representative of the Impermissible Use Class in Milbourne's stead.  Class Counsel have submitted, without opposition or contradiction from JRK, that Churcher signed the Standard Disclosure Form and did not sign the Standalone Disclosure Form, and therefore is a typical and adequate representative.  See ECF No. 171-1, Declaration of Susan M. Rotkis (stating that Churcher signed the Standard Disclosure Form, does not have any interests adverse to the remainder of the class, has cooperated fully in the prosecution of this case, and has already been deposed by defense counsel).  Additionally, Churcher is adequate to represent the remaining class members because she did not sign the Standalone Disclosure Form.  Indeed, JRK agreed at oral argument that Churcher is a typical and adequate representative of those class members who signed only the Standard Disclosure Form.  Tr. at 55:23-25.

21

Thus, the undisputed record shows that Churcher satisfies the typicality and adequacy prongs of Rule 23, and will be appointed as class representative of the re-defined Impermissible Use Class.[5]

## CONCLUSION

For the reasons set forth herein, DEFENDANT'S MOTION TO DECERTIFY THE IMPERMISSIBLE USE AND ADVERSE ACTION CLASSES (ECF No. 151) will be denied. For the reasons, and to the extent, set forth above, PLAINTIFFS' CROSS-MOTION TO AMEND ORDER CERTIFYING CLASS (ECF No. 171) will be granted in part and denied in part. PLAINTIFFS' UNOPPOSED MOTION TO AMEND PLAINTIFFS' CROSS-MOTION TO AMEND ORDER CERTIFYING CLASS (ECF No. 190) will be granted.

It is so ORDERED.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 15, 2016

---

[5] Because summary judgment has been granted against Milbourne, as set forth in the Court's previous Memorandum Opinion, going forward Churcher will be the only representative of the re-defined Impermissible Use Class.

22